1  MARIA K. PUM (State Bar No. 120987)
   KRISTEN E. CAVERLY (State Bar No. 175070)
2  HENDERSON & CAVERLY LLP
   P.O. Box 9144 (all U.S. Mail)
3  16236 San Dieguito Road, Suite 4-13
   Rancho Santa Fe, CA 92067-9144
4  Telephone:    (858) 756-6342
   Facsimile:    (858) 756-4732
5  E-mail: mpum@hcesq.com

6  Attorneys for Plaintiff
   McKESSON CORPORATION
7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 McKESSON CORPORATION, a Delaware      Case No. 4:07-cv-05715 WDB
   corporation,
12                                       **REPLY OF McKESSON CORPORATION
                  Plaintiff,             TO OPPOSITION TO MOTION
13    v.                                 SEEKING TO DISMISS:**

14 FAMILYMEDS GROUP, INC.,               (1) COUNTERCLAIM FOR SPECIFIC
     f/k/a Drugmax, Inc., a Connecticut corporation,    PERFORMANCE OF CONTRACT
15                                           AND ACCOUNTING; AND
                  Defendant.
16                                       (2) CROSS-COMPLAINT FOR
   FAMILYMEDS GROUP, INC.,                   ACCOUNTING
17   f/k/a Drugmax, Inc., a Connecticut corporation,

18                Counterclaimant,       Complaint Filed: November 9, 2007
                                         Cross-Complaint Filed: December 17, 2007
19    v.
                                         Date: March 12, 2008
20 McKESSON CORPORATION, a Delaware      Time: 3:00 pm
   corporation,                          Place: Ctrm 4
21                                              1301 Clay St., 3d Floor
                  Counterdefendant.             Oakland, CA
22
   FAMILYMEDS, INC.,
23 a Connecticut corporation,

24                Cross-Complainant,
      v.
25
   McKESSON CORPORATION, a Delaware
26 corporation,

27                Cross-Defendant.

28

---

Reply of McKesson Corporation to Opposition to Motion Seeking to Dismiss: (1) Counterclaim for Specific
Performance of Contract and Accounting; and (2) Cross-Complaint for Accounting

Defendant FAMILYMEDS GROUP, INC. ("FM Group") and Cross-Complainant FAMILYMEDS, INC. ("FM Inc.") have opposed the pending motion to dismiss (the "Motion") filed by McKESSON CORPORATION ("McKesson"), claiming that McKesson's demands that FM Group and FM Inc. (together, "Familymeds") comply with the Federal Rules of Civil Procedure are "improper delay tactics" that should "neither be tolerated nor condoned."[1] McKesson neither seeks delay nor has it unnecessarily delayed these proceedings in any way. In fact, McKesson has on at least three separate occasions invited FM Group to amend the "Counterclaim for Specific Performance of Contract and Accounting; Cross-Complaint for Accounting" (the "Cross-Complaint & Counterclaim") which it filed with FM Inc. to correct the defects in that pleading without the need to respond to the Motion. FM Group declined that invitation, asserting that the Cross-Complaint & Counterclaim was properly pled. No legal authority or justification was given for that view during those discussions. Nor has any legal authority or justification been provided in the Opposition Memorandum. McKesson hereby replies to the Opposition Memorandum.

## REPLY

Though it may seem "circular and inefficient"[2] to Familymeds that FM Inc. cannot insert itself into McKesson's breach of contract action against FM Group by dubbing itself a "Cross-Complainant" and adding itself to the caption of the pleadings, and that Familymeds cannot bring an action seeking to enforce a contract without naming the counter-party to that contract as a party in that action, that is nevertheless what the law provides. FM Group and FM Inc., like scores of litigants before them, are not free to circumvent the Federal Rules of Civil Procedure (the "Rules") merely because *they* deem it efficient for them to do so. Under the Rules and other applicable law, the Cross-Complaint & Counterclaim must be dismissed.

---

[1] *See* the "Memorandum of Points and Authorities of Defendant and Counterclaimant Familymeds Group, Inc. and Cross-Complainant Familymeds, Inc. in Opposition to Motion of McKesson Corporation Seeking to Dismiss: (1) Counterclaim for Specific Performance of Contract and Accounting; and (2) Cross-Complaint for Accounting" filed in this case on or about February 20, 2008 (the "Opposition Memorandum") at p. 1; lls. 15-16.

[2] Opposition Memorandum at p. 1; lls. 12.

1

### A. No Rule or Authority Allows FM Inc. to Insert Itself into this Action.

The Motion to dismiss the Cross-Complaint & Counterclaim was based in part on McKesson's assumption that it was **FM Group** that took the initiative to add its wholly-owned subsidiary to this action. The Motion therefore points out that a defendant such as FM Group cannot recruit a stranger to the action, that is, FM Inc., to sue McKesson and label that new party as a Cross-Complainant. As McKesson pointed out in the Motion, FM Group may have been permitted under Rule 14 to add a new *third-party defendant* to this action, but not a new "Cross-Complainant." FM Group and FM Inc. do not dispute that interpretation of Rule 14, arguing that "Rule 14 has no application in these circumstances."[3] Instead, Familymeds asserts that FM Inc. may join in this action under Rule 20(a).[4] Familymeds is mistaken. Rule 20(a) provides in part:

> (a) Persons Who May Join or Be Joined.
> 
> (1) Plaintiffs.
> 
> Persons may join in one action as plaintiffs if:
> 
> > (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> > 
> > (B) any question of law or fact common to all plaintiffs will arise in the action.
> 
> (2) Defendants.
> 
> Persons . . . may be joined in one action as defendants if:
> 
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> > 
> > (B) any question of law or fact common to all defendants will arise in the action.

The plain language of Rule 20(a) demonstrates that a *plaintiff* may elect to have another *plaintiff* join in its suit against a defendant, and that a *plaintiff* may choose to sue more than one *defendant*. It does not permit a non-party to insert itself into pending litigation as a purported Cross-Complainant. FM Inc. is neither a "plaintiff" nor a "defendant" in this action. Consequently, Rule 20(a) has no relevance to FM Inc.'s desire to insert itself into this action. In

---

[3] Opposition Memorandum at p. 1; lls. 24-25.

[4] Opposition Memorandum at p. 1; lls. 23-24 ("FM Inc. can join as a party pursuant to Federal Rule of Civil Procedure 20(a).")

2

fact, no Rule gives FM Inc. that power. If FM inc. believes it should become a parting in this action, it may move to intervene under Rule 24. *See*, WILLIM W. SCHWARTZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL (The Rutter Group 2004) at 7-45, ¶7:162 ("Intervention is a procedure by which someone not a party to a pending lawsuit can gain party states without the consent of the original parties.") But otherwise, there is no means by which FM Inc. can elect on its own initiative to become a party in this case. It certainly cannot do so by adding its name to a caption and pronouncing itself to be a "Cross-Complainant."

In support of their contention that FM Inc. may join in this action as a Cross-Complainant under Rule 20(a), Familymeds cites *Moore v. Comfed Sav. Bank*, 908 F2. 834, 839 (11th Cir. 1990). But that case has no application here. *Moore* involved a class action where a group of plaintiffs was suing a group of defendant banks and the Court *sua sponte* joined several additional banks to the action as parties defendant, rather than certifying a defendant class. *Id.* at 837. That situation has no relevance here. The fact is there is no case where a stranger to an action has successfully added itself to litigation against an existing plaintiff by styling itself as a new "Cross-Complainant." The procedure is not sanctioned by the Rules, nor is it permitted even under the most liberal reading of Rule 20(a).

Familymeds also seeks to justify the ability of FM Inc. to bring a cross-complaint against McKesson by reliance on Rule 13(g). But Familymeds misquotes and misapplies that Rule. In the Opposition Memorandum, Familymeds states, citing Rule 13(g) that a "cross-complaint is a claim against a co-party which arises out of the transaction or occurrence that is the subject matter of the action or counterclaim."[5] In fact, Rule 13(g) reads, in part:

> A pleading may state as *a crossclaim* any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.

Familymeds' substitution of the word "cross-complaint" for "crossclaim" in Rule 13(g) is not without import and it reveals the fundamental problem with the Cross-Complaint &

---

[5] Opposition Memorandum at p. 5; lls. 16-17.

3

Counterclaim which obliged McKesson to bring its Motion to dismiss. Rule 13(g) allows crossclaims, not cross-complaints. As an initial consideration, it is important to recognize that in Federal practice, there is no "cross-complaint" *per se*. Rule 7(a) limits the pleadings that may be filed as follows:

> **Rule 7. Pleadings Allowed; Form of Motions and Other Papers**
> (a) Pleadings.
> Only these pleadings are allowed:
> (1) a complaint;
> (2) an answer to a complaint;
> (3) an answer to a counterclaim designated as a counterclaim;
> (4) an answer to a crossclaim;
> (5) a third-party complaint;
> (6) an answer to a third-party complaint; and
> (7) if the court orders one, a reply to an answer.

So when Familymeds states that a "cross-*complaint*" is a claim against a co-party, Familymeds is cloaking itself with authority it does not have. This would not be so critical, if Familymeds merely used the wrong terminology, and used the term "cross-complaint" as a synonym for "crossclaim." But that is not what Familymeds has done. Instead, Familymeds ignores what a "crossclaim" is under applicable law and compounds that error by mischaracterizing its relationship to McKesson.

First, a "crossclaim" is a claim brought "by one *party* against a *co-party*." *See* Rule 13(g)(emphasis added). Yet, until it inserted itself into this case, FM Inc. was not a party at all in this action. Second, and more importantly, the term "co-party" refers to "any party that is not an opposing party." *Mauney v. Boyle*, 865 F. Supp. 142, 153 (S.D.N.Y. 1994)(quoting from to *Earle M. Jorgenson Co. v. T.I. United States, Ltd.*, 133 F.R.D. 472, 474 (E.D. Pa. 1991)). This means, that in order to bring a crossclaim against McKesson, FM Inc. would have to have been a party in this action that was not opposed to McKesson. But FM Inc. has never at any time not been an "opposing party" to McKesson. Crossclaims are reserved for situations where, for example, one defendant wishes to make claims against another defendant in the action. FM Inc. does not fall

4

within that category. In no sense is FM Inc. a "co-party" with McKesson. Rule 13(g) therefore provides FM Inc. with no authority to bring a crossclaim, let alone a "cross-complaint" against McKesson. Indeed, the Rules do not contemplate cross-complaints at all. *See* Rule 7(a), *supra*.

Even apart from the defects described above, FM Inc.'s attempt to insert itself in this action by naming itself a "Cross-Complainant" could not succeed under any reading of Rule 20 (or Rule 13(g)) because FM Inc. is not asserting claims that arise "out of the same transaction, occurrence, or series of transactions or occurrences" as do the claims made by McKesson in the Complaint against FM Group. FM Inc. by its own admission was not a party to the contract upon which McKesson is suing FM Group.[6] It was a party to a contract (defined in the Cross-Complaint & Counterclaim as the "First Agreement"[7]) with D&K Healthcare Resources, Inc. ("D&K"), but that contract is not the subject of the Complaint. FM Inc. is proceeding (and can only proceed) to enforce the First Agreement inasmuch as it is not a party to the Second Agreement. Consequently, the claims of FM Inc. do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." And if FM Inc. believes it has claims against McKesson under the First Agreement even though McKesson is not a party to that contract, it is free to sue McKesson. But it cannot invite itself into this litigation relating to a different contract by the expedient of adding its name to the caption of the Cross-Complaint & Counterclaim. To do so only creates confusion and delay in what otherwise is a simple collection action on a contract for the sale of goods to FM Group. In fact, it is completely disingenuous for Familymeds to contend that its use of the Cross-Complaint & Counterclaim will "conserve resources and avoid duplicative and unnecessary proceedings."[8] The opposite is true. McKesson's complaint asserts a single cause of action under a single contract against a single defendant for damages for failure to pay for purchased merchandise. The Cross-Complaint & Counterclaim creates not only procedural pitfalls, but it adds a new party, a new contract and conduct predating the contract that McKesson is seeking to

---

[6] Cross-Complaint & Counterclaim at ¶14. The contract at issue in the Complaint is defined by Familymeds as the "Second Agreement." *Id.*
[7] Cross-Complaint & Counterclaim at ¶11.
[8] Opposition Memorandum at p. 7; lls. 17-18.

5

Case No. 4:07-cv-05715 WDB
Reply of McKesson Corporation to Opposition to Motion Seeking to Dismiss: (1) Counterclaim for Specific Performance of Contract and Accounting; and (2) Cross-Complaint for Accounting

enforce that have nothing to do with the issues raised in the Complaint, but which McKesson will be forced to address in its simple breach of contract suit if the Cross-Complaint & Counterclaim is not dismissed. At a minimum, the Cross-Complaint & Counterclaim should be amended (as McKesson invited Familymeds to do) to delete FM Inc. and its claims from the action.

     **B.    The Cross-Complaint & Counterclaim Should be Dismissed for Failure to Name D&K as a Party.**

Familymeds' persistent refusal to name D&K as a party in this action is inexplicable. In the Opposition Memorandum, Familymeds argues that "McKesson simply has not carried its burden to establish that D&K is indispensable, and therefore, McKesson's Motion should be denied." [9] But lack of "indispensability" does not excuse Familymeds from joining D&K in this action. Rule 19 requires that D&K be joined. That Rule provides, in pertinent part:

    (a) Persons Required to Be Joined if Feasible.

        (1) Required Party.

            A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction ***must be joined as a party*** if:

                (A) in that person's absence, the court cannot accord complete relief among existing parties; or

                (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

                    (i) as a practical matter impair or impede the person's ability to protect the interest; or

                    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(Emphasis added.) Thus, contrary to what the Opposition Memorandum implies, Familymeds cannot simply elect to leave D&K out of this action as is clear from the face of the allegations in the Cross-Complaint & Counterclaim.

---

[9] Opposition Memorandum at p. 8; lls. 23-24.

6

Pursuant to the Cross-Complaint & Counterclaim as it has been presented to this Court, FM Inc.[10] asserts that the First Agreement was breached. It also asserts that it has an implied right to an accounting under that agreement. However, the signatory to the First Agreement was D&K, and not McKesson. As such, case law has recognized that D&K *at a minimum* is a necessary party in any action brought to enforce the First Agreement, if not an indispensable one. *See, e.g., Rojas v. Loewen Group Int'l*, 178 F.R.D. 356, 361 (D.C. Puerto Rico 1998) ("Generally, in breach of contract actions, all parties to the contract are necessary ones.") and *Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994)("joint obligees are indispensable parties to action for enforcement of that obligation")(citing *Harrell & Sumner Contracting v. Peabody Petersen*, 546 F.2d 1227, 1229 (5th Cir. 1977)). Given its role as the sole counterparty to the First Agreement, if D&K remains absent from this proceeding, the Court will be unable to accord complete relief either to FM Inc. (because its claims, if any, lie against D&K) or to McKesson (because McKesson has no obligations to anyone under the First Agreement). In addition, the absence of D&K may cause a jury to hold McKesson liable for improper actions (if any) taken by D&K. Thus, both prongs of Rule 19, D&K must be joined in any action brought by FM inc. to enforce the First Agreement. Furthermore, Familymeds concedes[11] that D&K is subject to service or process and *can* be named as a party. And adding D&K as a party[12] will not deprive this Court of subject matter (or diversity) jurisdiction in this case because D&K is a Delaware corporation and FM Group is a Connecticut corporation (as is FM Inc.).[13] So the question is: Why is Familymeds refusing to name D&K as a party in its action to enforce the First

---

[10] It appears from the Opposition Memorandum that only FM Inc. and not FM Group is asserting claims against McKesson under the First Agreement because each reference in Section B of the Opposition Memorandum to one of the Familymeds parties is to FM Inc. and not to FM Group. *See, e.g.*, Opposition Memorandum at p. 8; lls.19 ("This is what FM Inc. properly alleges.").

[11] Opposition Memorandum at p. 9; lls 8.

[12] Tellingly, the "Factual Background" section of the Opposition Memorandum lists four entities as "The Parties" in this action: FM Group, FM Inc., McKesson, and D&K. Opposition Memorandum at p. 2; lls 11-15. This is peculiar because D&K is not a party in this action and that is one of the objections McKesson has to the Counterclaim & Cross-Complaint.

[13] See Cross-Complaint & Counterclaim at p. 1; lls. 2-3.

7

Agreement, notwithstanding McKesson's invitation to allow it to do so? Familymeds' arguments to the contrary based on the contention that D&K has not been shown to be "indispensable" do not solve the riddle and are completely ineffective. Under the clear language of Rule 19—which is completely ignored in the Opposition Memorandum—Familymeds is required to join D&K in this action, assuming it is not dismissed because FM Inc. cannot bring a "cross-complaint" against McKesson.

Familymeds attempts to side-step the requirement that D&K be joined as a party by arguing that McKesson "is the successor-in-interest to D&K under the First Agreement." Somehow, this is thought to avoid the need to sue D&K directly. Of course, Familymeds cites no authority for that proposition, and, in fact, similar arguments made by litigants seeking to avoid naming a subsidiary as a party to preserve diversity jurisdiction have been unsuccessful. In *Freeman v. Northwest Acceptance Corporation*, 754 F.2d 553 (5th Cir. 1985), for example, the Fifth Circuit concluded that a subsidiary had to be named as a party *even if diversity would be defeated* on the circumstances before it which it summarized as follows:

> First Commercial is clearly a person "to be joined if feasible" under Rule 19(a). Its "presence is critical to the disposition of the important issues in the litigation. [Its] evidence will either support the complaint or bolster the defense." *Haas v. Jefferson National Bank*, 442 F.2d 394, 398 (5th Cir.1971). The Freemans seek to impose liability on Northwest not for its own acts, but for those of First Commercial; thus, as in Haas, First Commercial "becomes more than a key witness whose testimony would be of inestimable value. Instead [it] emerges as an active participant in the alleged conversion." *Id*. 442 F.2d at 398. First Commercial was more than an active participant in the conversion alleged by the Freemans; it was the primary participant. Case law in this and other circuits uniformly supports the proposition that joinder of the subsidiary is required in such a situation. [Citations omitted.]

754 F.2d at 559. One can only presume that if diversity were not in jeopardy, the subsidiary would still have been found to be an indispensable party—and certainly a necessary one. Here, Familymeds is asserting claims in the Cross-Complaint & Counterclaim based on a contract to which D&K, not McKesson, was a party. Any misconduct as may have occurred under that contract was that of D&K, not McKesson. D&K should be named as a party in any action seeking redress with respect to the First Agreement. This was essentially the conclusion of the court in

8

*Schweyer Import-Schnittholz v. Genesis Capital Fund, L.P.*, 220 F.R.D. 582, 588 (S.D. Iowa 2004). In that case, the court rejected the contention of the plaintiff "Schweyer," that the corporation ("GADC") that signed the contract at issue was not an indispensable party in the action because, according to Schweyer, "the real parties in interest, the shareholders, are named as Defendants." *Id.* The court continued:

> However, Schweyer does not explain how, ***as signatory to the settlement agreement***, GADC is not indispensable in this action. As in *Nike*, the Iowa Defendants may also have an interest in this action, but that does not dilute the importance of GADC's role.

*Id.* (emphasis added). Similarly, here, it is possible that McKesson as the current shareholder of D&K has an interest in the action that Familymeds seeks to bring based on the First Agreement, but that does not "dilute the importance" of D&K as the actual signatory of the First Agreement. And here, joining D&K does not even threaten diversity. *See also Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) (holding that a parent corporation that signed a purchase agreement to buy a business was a necessary and indispensable party in a breach of contract action brought by the seller entity against the subsidiary of the parent corporation, even though that ruling destroyed diversity). Familymeds' contention that McKesson is a successor in interest or alter ego of D&K does not eliminate the requirement that D&K be formally named as a party if Familymeds seeks to enforce the First Agreement against anyone.

Familymeds' insistence that it need not add D&K to this litigation is nothing more than a ploy designed to confuse the jury in this litigation. FM Group is seeking to establish a claim for set off against its obligation to pay for merchandise that it received from McKesson pursuant to the terms of the Second Agreement—the sole agreement at issue in the Complaint. By refusing to name D&K as the party that is called to defend itself from the enforcement efforts relating to the First Agreement, FM Group hopes to create the impression that D&K and McKesson are one and the same and that any claims FM Inc. may have under the First Agreement may be aggregated with the claims of FM Group and set off against McKesson's claims against FM Group. In other words, they are trying to obscure the lines of responsibility and the lines of corporate separateness. This is unfair, and certainly not calculated to lead to an efficient and expeditious resolution of this matter.

9

Case No. 4:07-cv-05715 WDB
Reply of McKesson Corporation to Opposition to Motion Seeking to Dismiss: (1) Counterclaim for Specific Performance of Contract and Accounting; and (2) Cross-Complaint for Accounting

If Familymeds wishes to assert claims based on purported breaches of the First Agreement, it must name D&K as a party. And if Familymeds refuses to add D&K, then any allegations in the Cross-Complaint & Counterclaim relating obligations under the First Agreement should be dismissed.

### C. The Third Claim for Relief in the Cross-Complaint & Counterclaim Should be Dismissed or Stricken Pursuant to Rule 12(b)(6).

Finally, the Motion requests that the Third Claim for Relief in the Cross-Complaint & Counterclaim be stricken or dismissed if the Cross-Complaint & Counterclaim is not dismissed in its entirety because the Third Claim for Relief asserts claims on behalf of FM Inc. against McKesson, yet McKesson and FM Inc. were never in privity of contract with one another. In response, the Opposition Memorandum reinforces the conclusion that the Third Claim for Relief is brought solely by FM Inc. As was discussed above, FM Inc. is not free to insert itself into this case nor to assert claims against a non-party to the First Agreement. The Third Claim for Relief should be stricken or dismissed from this action.

## IV. CONCLUSION.

If FM Inc. would like to sue McKesson, it can bring a lawsuit or move to intervene in this action. Those are the alternative available to FM Inc. It cannot bring a cross-complaint against McKesson. Similarly, Familymeds cannot seek to enforce claims under the First Agreement without naming D&K as a party. These points are not raised as dilatory tactics of McKesson. They are raised to avoid confusion and prejudice to McKesson. McKesson offered to permit Familymeds to correct the defects identified in the Motion prior to Familymeds' need to respond, but that offer was refused. As written, the Cross-Complaint & Counterclaim must be dismissed.

DATED: February 27, 2008.

HENDERSON & CAVERLY LLP

By: _____
Maria K. Pum
Attorneys for McKesson Corporation

10

Case No. 4:07-cv-05715 WDB
Reply of McKesson Corporation to Opposition to Motion Seeking to Dismiss: (1) Counterclaim for Specific Performance of Contract and Accounting; and (2) Cross-Complaint for Accounting

# PROOF OF SERVICE

I am employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is Henderson & Caverly LLP, P.O. Box 9144, 16236 San Dieguito Road, Suite 4-13, Rancho Santa Fe, California 92067.

On February 27, 2008, I served the foregoing:

**REPLY OF McKESSON CORPORATION TO OPPOSITION TO MOTION SEEKING TO DISMISS:**

**(1) COUNTERCLAIM FOR SPECIFIC PERFORMANCE OF CONTRACT AND ACCOUNTING; AND**

**(2) CROSS-COMPLAINT FOR ACCOUNTING**

on the following parties in this action in the manner set forth below:

> Robert C. Gebhardt, Esq.
> Jeffer, Mangels, Butler & Marmaro LLP
> Two Embarcadero Center, Fifth Floor
> San Francisco, California 94111-3824

☐ (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Henderson & Caverly LLP, Rancho Santa Fe, California, following ordinary business practices. I am familiar with the practice of Henderson & Caverly LLP for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal service the same day as it is placed for collection.

☑ (BY EMAIL) I electronically filed such document using the ("CM/ECF") system which will send a Notice Of Electronic Filing to CM/ECF participants.

☐ (BY FACSIMILE) I transmitted the above-listed document to the party listed above via facsimile. The transmission was reported complete and without error. The telephone number of the facsimile machine I used was (858) 756-4732.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at Rancho Santa Fe, California on February 27, 2008.

*/s/ Quynh N. Nguyen*
Quynh N. Nguyen

---

11

Case No. 4:07-cv-05715 WDB
Reply of McKesson Corporation to Opposition to Motion Seeking to Dismiss: (1) Counterclaim for Specific Performance of Contract and Accounting; and (2) Cross-Complaint for Accounting