1  MARIA K. PUM (State Bar No. 120987)
   KRISTEN E. CAVERLY (State Bar No. 175070)
2  HENDERSON & CAVERLY LLP
   P.O. Box 9144 (all U.S. Mail)
3  16236 San Dieguito Road, Suite 4-13
   Rancho Santa Fe, CA 92067-9144
4  Telephone:    (858) 756-6342
   Facsimile:    (858) 756-4732
5  Email:  mpum@hcesq.com

6  Attorneys for Plaintiff
   McKESSON CORPORATION
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10
   McKESSON CORPORATION, a Delaware          Case No. 4:07-cv-05715 WDB
11 corporation,

12              Plaintiff,                    **SECOND JOINT CASE MANAGEMENT
        v.                                    STATEMENT**
13
   FAMILYMEDS GROUP, INC.,                    Complaint Filed:  November 9, 2007
14 f/k/a Drugmax, Inc., a Connecticut corporation,
                                              Counterclaim & Cross-Complaint Filed:
15              Defendant.                         December 17, 2007

16 ───────────────────────────────────       CMC Date: May 5, 2008
   FAMILYMEDS GROUP, INC.,                    Time:         1:30 p.m.
17 f/k/a Drugmax, Inc., a Connecticut corporation,   Place:    Ctrm 4

18              Counterclaimant,

19      v.

20 McKESSON CORPORATION, a Delaware
   corporation,
21
                Counterdefendant.
22
   ───────────────────────────────────
23 FAMILYMEDS, INC.,
   a Connecticut corporation,
24
                Cross-Complainant,
25      v.

26 McKESSON CORPORATION, a Delaware
   corporation,
27
                Cross-Defendant.
28

1   Pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern

2   District of California, Plaintiff (the "Standing CMC Order"), that certain Order re March 12, 2008

3   Hearing signed by the Court on March 13, 2008 (the "March 12 Order"), and that certain Notice

4   Rescheduling Follow Up Case Management Conference signed on April 11, 2008, Plaintiff,

5   Counterdefendant and Cross-Defendant McKESSON CORPORATION ("McKesson") and

6   Defendant and Counterclaimant FAMILYMEDS GROUP, INC., f/k/a Drugmax, Inc. ("FM

7   Group"), together with Cross-Complainant FAMILYMEDS, INC. ("FM Inc.") hereby submit this

8   Joint Case Management Statement to the Court.  FM Group and FM Inc. are hereinafter

9   collectively referred to as "Familymeds."

10   **I.      McKesson's Position Regarding The Parties' Compliance With This Court's March 12 Order**

11

12   At the initial case management conference that took place on March 12, 2008, this Court

13   directed that the parties meet between March 12, 2008 and April 30, 2008 to "try (really) to resolve

14   these accounting matters."  See, March 12 Order at p. 2; lls. 22.

15   The parties met on April 22, 2008 commencing at 10:00 am at the law offices of Jeffer,

16   Mangels, Butler & Marmaro LLP.

17   Present on behalf of Familymeds were:  Christian Tregillis, CPA, a Managing Director of

18   LECG, Nadia Brannon, a Senior Managing Consultant with LECG, Robert C. Gebhardt, a Partner

19   with Jeffer, Mangels, Butler & Marmaro LLP, Matthew Kenefick, an associate with Jeffer,

20   Mangels, Butler & Marmaro LLP, and Mr. Ed Mercadante, the CEO of Familymeds.

21   Attending on behalf of McKesson were:  Maria K. Pum, a partner with Henderson &

22   Caverly LLP, Kristen E. Caverly, a partner with Henderson & Caverly LLP, and Leslie Morgan, a

23   Senior Manager, Contract Compliance for McKesson.

24   On Friday, April 18, 2008, a compact disk (the "CD") containing detailed information on a

25   line-item basis for literally thousands of items purchased by FM Group over the period spanning

26   December 2006, up to and including December 2007 had been provided to Familymeds through its

27   counsel.  At the meeting, the contents of the CD were discussed in detail.  In addition the parties

28   discussed pricing relating to merchandise purchased by Familymeds.  The experts hired by

1

1  Familymeds asked questions, as did counsel for Familymeds and Mr. Mercadante. The meeting

2  ended when the experts hired by Familymeds indicated they had no more questions for Ms.

3  Morgan at approximately 12:30 pm. No settlement was reached.

### II.    Familymeds' Position Regarding The Parties' Compliance With This Court's March 12 Order

6  Familymeds has attempted to verify the accuracy and integrity of McKesson's invoices, as

7  well as who owes who what, using this Court's common sense and practical approach. Familymeds

8  and McKesson have met once; however, McKesson needs to produce further information and

9  another meeting of the parties is required to finish what they have started.

10  **Information Requested for the Conference**. On April 4, 2008, Familymeds requested

11  from McKesson information to evaluate the integrity of McKesson's invoices. On April 18, 2008,

12  McKesson provided several spreadsheets pertaining to invoices for the time period of December

13  2006 through December 2007. These spreadsheets, however, fail to provide to Familymeds the

14  information necessary to verify the integrity and accuracy of McKesson's invoices. These

15  spreadsheets, rather, provide, for the most part, invoice dates and amounts - *something*

16  *Familymeds already had*.

17  **The Conference**. On April 22, 2008, the parties held an informal accounting conference

18  pursuant to the Court's March 13, 2008 order (the "**Order**") (the "**Conference**"). The following

19  persons were present at the Conference:

### For McKesson
20  &bull; Kristen Caverly - attorney for McKesson;
21  &bull; Maria K. Pum - attorney for McKesson; and
   &bull; Leslie Morgan - McKesson Representative.

### For Familymeds
23  &bull; Robert C. Gebhardt - attorney for Familymeds;
   &bull; Matthew S. Kenefick - attorney for Familymeds;
24  &bull; Ed Mercadante - CEO of Familymeds who flew in from Connecticut;
25  &bull; Chris Tregillis - Los Angeles based accounting expert with significant experience in pharmaceutical industry; and
26  &bull; Nadia Brannon - accounting database expert with significant experience in pharmaceutical industry.

28  Familymeds made several requests that a Court reporter be present at the Conference to

2

1    transcribe the proceedings and document compliance with this Court's Order. McKesson refused to

2    allow a reporter to be present.

3    　　　At the Conference, Familymeds' and McKesson's representatives worked well together.

4    The Conference was productive. Because the documentation provided by McKesson was

5    incomplete, however, another conference is required to finish what the parties have started.

6    　　　**Deficiencies in the Materials Provided by McKesson**. The materials McKesson

7    produced were incomplete. Ms. Morgan, McKesson's representative, conceded that several

8    categories of key information had not been produced. Ms. Morgan also stated that McKesson

9    could readily access and produce this information. More importantly, Ms. Morgan stated that she

10    had prepared key reports and had given those to McKesson's attorneys to be provided to

11    Familymeds - McKesson's attorneys intentionally withheld those reports. Additionally,

12    McKesson's attorneys refused to produce any information for time periods prior to December 2006

13    - a date which does not correspond with any other date or event in this case.

14    　　　When asked about why a significant amount of information was being withheld,

15    McKesson's attorneys responded that the Conference was not a mechanism to provide "free

16    discovery." It is Familymeds' position that this is not in keeping with the spirit of this Court's

17    Order. McKesson's representative appeared willing to produce this information and worked well

18    with Familmeds' representatives. Whether or not the exchange of information constitutes "free

19    discovery" should not impede the progress that Familymeds and McKesson are making in

    determining who owes who what.

20    　　　**Request by Familymeds for Outstanding Information**. On April 23, 2008, Familymeds

21    requested further information, as well as another meeting, from McKesson. A copy of this Request

22    is attached hereto. In this Request, Familymeds seeks information which Ms. Morgan stated she

23    had already produced to McKesson's lawyers, or could readily produce. This information will

24    allow Familymeds' representatives to examine the integrity of McKesson's invoices to determine

25    who owes who what. The parties made progress at the Conference - there is no reason why it

26    should end there. As of the date of this statement, McKesson has not agreed to produce this

27    information or to hold another conference.

28    　　　**Further Conference**. Familymeds seeks to use this Court's common sense approach to

3

1  determine the integrity of McKesson's invoices and who owes who what. For this, Familymeds

2  needs further information - all of which McKesson stated was readily accessible. Thus far,

3  McKesson has only produced information which Familymeds already had and Counsel for

4  McKesson has withheld reports McKesson sought to give to Familymeds. Familymeds requests

5  that McKesson produce this information and that shortly thereafter another conference be held.

6  Familymeds and McKesson's representatives work well together - there is no reason why this

7  should stop. Familymeds requests this further conference be held at the Court to encourage good

8  faith and cooperation.

9  DATED: April 28, 2008.                          HENDERSON & CAVERLY LLP

10

11                                                 By: _____ for

12                                                      Maria K. Pum
                                                        Attorneys for McKesson Corporation

13

14

15  DATED: April 28, 2008.                         JEFFER, MANGELS, BUTLER & MARMARO LLP

16

17                                                 By: _____ for

18                                                      Robert C. Gebhardt
                                                        Attorneys for Familymeds Group, Inc. and
19                                                      Familymeds, Inc.

20

21

22

23

24

25

26

27

28

                                              4



Robert C. Gebhardt
Direct: (415) 984-9655
Fax: (866) 558-6777
RGebhardt@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080 (415) 398-5584 Fax
www.jmbm.com

59956-0006

April 23, 2008

<u>VIA ELECTRONIC AND FIRST CLASS MAIL</u>

Maria K. Pum, Esq.
Kristen Caverly, Esq.
Henderson & Caverly LLP
P.O. Box 9144
Rancho Santa Fe, CA  92067

Re:   *McKesson etc. v. Familymeds etc.* (and related cross and counter actions)
      <u>Northern District of California Case No. CV 07-5715 WDB</u>

Dear Maria/Kristen:

Thank you for producing Leslie Morgan from McKesson at our April 22, 2008 conference. I thought the meeting was productive. However, during the meeting it became apparent that we would require more documentation in order to figure out what is owed, and who owes it. Therefore, in accordance with the spirit and letter of Judge Brazil's order, we request production of the following material and your agreement to another meeting after we look over the additional data.

**Missing Data Fields**. The reports which you provided to us contain, for the most part, information Familymeds already possessed. Many crucial fields were missing. Ms. Morgan stated that she had all of the missing information readily available on McKesson's electronic database. The omitted data fields include the pricing category for each product, *e.g.*, Cost of Goods, bid/contract, bid/OneStop, SPM/fixed/list/net-billed, NSP, an explanation of standard controlling the placement of each product within a certain category and whether the product is generic, brand name, OTC and/or Rx. Please provide to us this missing information.

**Missing Reports**. Ms. Morgan explained that she had prepared a report for the products purchased by Familymeds under the OneStop Generic program. She also stated that she had provided this report to you. She had also downloaded reports indicating monthly volume discount pricing adjustments. You conceded that you intentionally withheld these reports from us. These are important for verification of the integrity of McKesson's invoices to Familymeds. Please produce them.

Ms. Morgan also stated that she could produce reports from McKesson's electronic database which show monthly adjustments for volume discount above/below 2.71%

Mary K. Pum, Esq.
Kristen Caverly, Esq.
April 23, 2008
Page 2

for Rx purchases, as well as reports which show all quarterly rebates for generic drug purchases that were given to Familymeds. Please produce these reports.

**Missing Time Periods**. The reports you provided to us start in December 2006. This cut-off date appears arbitrary and does not correspond to any other dates or events. You told us that you chose this cut-off date because D&K is a completely separate and distinct entity from McKesson, and therefore McKesson is unable to provide any information pertaining to time periods in which Familymeds was under contract with D&K.

We do not understand your position. Our research indicates that McKesson acquired D&K in August 2005, and in doing so, assumed all of D&K's liabilities. We base this on McKesson's September 2005 10-Q SEC filing. Enclosed is a copy of the pertinent portions of this filing. Further, the Familymeds contract with McKesson is dated as of February 2, 2007 — yet you were able to seamlessly provide to us reports including information dating back to December 2006. Finally, Ms. Morgan told us that she could provide to us information for time periods prior to December 2006.

Familymeds requests information for time periods prior to December 2006 to verify the integrity of all McKesson's invoices. Please produce this information.

**Additional Time to Gather Information**. Please provide to us the requested information so that we can, using a common sense approach, verify the integrity of McKesson's invoices to Familymeds. Ms. Morgan stated that all of this information is readily available. If you need additional time from Judge Brazil to gather this information, we will cooperate with you.

Very truly yours,

ROBERT C. GEBHARDT of
Jeffer, Mangels, Butler & Marmaro LLP

Encl.
RCG:msk

716731v1

Table of Contents

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-Q

*(Mark One)*

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For quarter ended September 30, 2005

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to_____

Commission file number 1-13252

# McKESSON CORPORATION
### (Exact name of Registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **94-3207296** |
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |
| **One Post Street, San Francisco, California** | **94104** |
| (Address of principal executive offices) | (Zip Code) |

### (415) 983-8300
### (Registrant's telephone number, including area code)

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☑

Indicate by check mark whether the registrant is an accelerated filer. Yes ☑ No ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date.

| Class | Outstanding at September 30, 2005 |
|---|---|
| Common stock, $0.01 par value | 307,671,158 shares |

Table of Contents

McKESSON CORPORATION
FINANCIAL NOTES (CONTINUED)
(UNAUDITED)

as well as the compensation expense associated with the 2005 and 2006 stock options, which either fully vested by March 31, 2005 or will fully vest by March 31, 2006, will not be recognized in our earnings after SFAS 123(R) is adopted.

## 2. Acquisitions

In August 2005, we acquired substantially all of the issued and outstanding stock of D&K Healthcare Resources, Inc. ("D&K") of St. Louis, Missouri, for an aggregate cash purchase price of $478 million, including the assumption of D&K's debt. D&K is primarily a wholesale distributor of branded and generic pharmaceuticals and over-the-counter health and beauty products to independent and regional pharmacies, primarily in the Midwest. The results of D&K's operations have been included in the condensed consolidated financial statements within our Pharmaceutical Solutions segment since the August acquisition date.

The following table summarizes the estimated fair values of the assets acquired and liabilities assumed at the date of acquisition:

| (In millions) | |
| --- | --- |
| Assets: | |
| Accounts receivable | $ 138 |
| Inventory | 328 |
| Goodwill and intangibles | 209 |
| Other assets | 77 |
| Liabilities: | |
| Accounts payable | (193) |
| Other liabilities | (81) |
| Net assets acquired, less cash and equivalents | $ 478 |

Acquired identifiable intangibles of $43 million primarily represent customer lists and not-to-compete covenants and have a weighted-average useful life of nine years. None of the amount assigned to goodwill is expected to be deductible for tax purposes.

In connection with the D&K acquisition, we have recorded $27 million of liabilities relating to facility exit costs as part of the purchase price allocation. Additional restructuring costs are anticipated to be incurred as the business integration plans are finalized. These restructuring costs are anticipated to be paid by mid-2007.

Also in August 2005, we acquired all of the issued and outstanding shares of Medcon, Ltd. ("Medcon"), an Israeli company, for an aggregate purchase price of $82 million. Medcon provides web-based cardiac image and information management services. Approximately $60 million of the purchase price has been assigned to goodwill, none of which is deductible for tax purposes and $20 million has been assigned to intangibles which represent technology assets and customer lists which have an estimated weighted-average useful life of four years. The results of Medcon's operations have been included in the condensed consolidated financial statements within our Provider Technologies segment since the acquisition date.

In the first quarter of 2005, we acquired all of the issued and outstanding shares of Moore Medical Corp. ("MMC"), of New Britain, Connecticut, for an aggregate cash purchase price of $37 million. MMC is an Internet-enabled, multi-channel marketer and distributor of medical-surgical and pharmaceutical products to non-hospital provider settings. Approximately $19 million of the purchase price has been assigned to goodwill, none of which is deductible for tax purposes. The results of MMC's operations have been included in the condensed consolidated financial statements within our Medical-Surgical Solutions segment since the acquisition date.

During the last two years we also completed a number of smaller acquisitions and investments. Purchase prices for our acquisitions have been allocated based on estimated fair values at the date of acquisition and may be subject to change. Pro forma results of operations for our business acquisitions have not been presented because the effects were not material to the condensed consolidated financial statements on either an individual or aggregate basis.

7