1  MARIA K. PUM (State Bar No. 120987)
   KRISTEN E. CAVERLY (State Bar No. 175070)
2  HENDERSON & CAVERLY LLP
   P.O. Box 9144 (all U.S. Mail)
3  16236 San Dieguito Road, Suite 4-13
   Rancho Santa Fe, CA 92067-9144
4  Telephone:   (858) 756-6342
   Facsimile:    (858) 756-4732
5  Email: mpum@hcesq.com

6  Attorneys for Plaintiff
   McKESSON CORPORATION
7

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| McKESSON CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br>v.<br><br>FAMILYMEDS GROUP, INC.,<br>f/k/a Drugmax, Inc., a Connecticut corporation,<br><br>Defendant. | Case No. 4:07-cv-05715 WDB<br><br>**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF McKESSON CORPORATION'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Complaint filed: November 9, 2007<br>Cross-Complaint Filed: December 17, 2007<br><br>Date: August 6, 2008<br>Time: 1:30 p.m.<br>Place: Ctrm 4<br>        1301 Clay St., 3d Floor<br>        Oakland, CA |
| FAMILYMEDS GROUP, INC.,<br>f/k/a Drugmax, Inc., a Connecticut corporation,<br><br>Counter-Claimant,<br>v.<br><br>McKESSON CORPORATION, a Delaware corporation,<br><br>Counter-defendant. | |
| FAMILYMEDS, INC.,<br>a Connecticut corporation,<br><br>Cross-Complainant,<br>v.<br><br>McKESSON CORPORATION, a Delaware corporation,<br><br>Cross-Defendant. | |

Pursuant to paragraph 11 of the Court's "Standing Order" and Civil Local Rule 56-2(b), Plaintiff and Counter-defendant McKESSON CORPORATION ("McKesson") and Defendant and Counterclaimant FAMILYMEDS GROUP, INC., f/k/a Drugmax, Inc. ("FM Group") have conferred regarding the list of undisputed facts set forth below, but FM Group has not stipulated to any of the facts. [Declaration of Kristen E. Caverly, dated June 4, 2008 at ¶¶ 3-8.] McKesson has advised FM Group that it will continue to be available to discuss stipulation to these facts as the time for FM Group's opposition nears.

## MCKESSON'S UNDISPUTED MATERIAL FACTS

| UNDISPUTED FACTS | EVIDENCE |
| --- | --- |
| 1. On February 2, 2007, for fair and valuable consideration, McKesson and FM Group entered into a written contract entitled "Supply Agreement." | Supply Agreement at p.1 (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl.[1] at ¶3a). |
| 2. Under the Supply Agreement, McKesson agreed to sell to FM Group, and FM Group agreed to buy, certain "Merchandise" described therein, including prescription drugs, so called "caps" and "vials" used in the sale of prescription drugs, and other health and beauty care products. | Supply Agreement at p. 1 at ¶1A (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |
| 3. The Supply Agreement provides a term of three years commencing on December 28, 2006. | Supply Agreement at p. 1 at ¶2 (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |

---

[1] Declaration of Ana Schrank, dated June 4, 2008 and filed herewith.

1

| | |
|---|---|
| 4.  The Agreement was signed and executed by duly authorized representatives of both FM Group and McKesson. | Supply Agreement at p. 25 (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |
| 5.  Under the Supply Agreement, FM Group was required to make payment for Merchandise delivered to FM Group's retail pharmacies within seven days from the invoice date via Electronic Fund Transfer or Automated Clearing House. | Supply Agreement at p. 2 at ¶4A (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |
| 6.  Under the Supply Agreement, any payments made after the due date incurred a two percent (2%) (or the maximum amount permissible under applicable law, if lower) increase in the purchase price of the Merchandise. | Supply Agreement at p. 3 at ¶4E (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |
| 7.  Under the Supply Agreement, a one percent (1%) service charge (or the maximum amount permissible under applicable law, if lower) is imposed semi-monthly on all balances delinquent more than fifteen (15) days. | Supply Agreement at p. 3 at ¶4E (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |
| 8.  Under the Supply Agreement, FM Group agreed to render payment in full to McKesson on the applicable due date as specified in the Agreement without (i) making any deductions, short payments, or other accounts payable | Supply Agreement at p. 3 at ¶4F (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |

2

Case No. 4:07-cv-05715 WDB
STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF McKESSON CORPORATION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| adjustments to such obligation; or (ii) seeking to condition such remittance on any demand for or receipt of proofs of delivery. | |
| 9. Under the Supply Agreement, in addition to the 2% price increase and the 1% service charge, the price that FM Group must pay to McKesson for Merchandise increases as the volume of purchases decreases, and vice versa, across several levels of purchase volumes. | Ana Schrank Decl. at ¶3k. |
| 10. Under the Supply Agreement, FM Group's failure to make any payment when due in accordance with the terms of the Agreement constitutes a material default. | Supply Agreement at p. 18 at ¶12A (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |
| 11. The Supply Agreement embodies the entire agreement between McKesson and FM Group and supersedes all prior agreements, understandings and representations with the exception of any promissory note, security agreement or other credit or financial related document(s) executed by FM Group or between FM Group and McKesson. | Supply Agreement at p. 22 at ¶17A (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). |
| 12. The Supply Agreement provides that it shall be construed in accordance with the laws of the | Supply Agreement at p. 22 at ¶17E (Attached as **Exhibit A** to the Compendium of Exhibits; |

3

| | |
|---|---|
| State of California without regard to the provisions of Section 1654 of the California Civil Code or the rules regarding conflict of laws. | Authenticated by Ana Schrank Decl. at ¶3a). |
| 13. There is no written provision in the Supply Agreement, which requires McKesson to provide an account to FM Group. | Ana Schrank Decl. at ¶3l. |
| 14. McKesson has delivered the "Merchandise" that FM Group ordered pursuant to the terms of the Supply Agreement. | Ana Schrank Decl. at ¶4. |
| 15. As of October 31, 2007, McKesson had issued invoices to FM Group totaling at least $724,574.80, which remain unpaid. | Ana Schrank Decl. at ¶20. |
| 16. As of May 30, 2008, FM Group owes McKesson $814,419.44, excluding the earned volume discount, which is waived for purposes of McKesson Corporation's instant Motion for Summary Judgment or, in the alternative, Summary Adjudication. | Ana Schrank Decl. at ¶21; May 30, 2008 Statement for Familymeds Group, Inc. attached as Exhibit E to the Compendium of Exhibits (Authenticated by Leslie Morgan Decl.[2] at ¶10); Leslie Morgan Decl. at ¶¶ 1-22 (verifying invoiced amounts). |
| 17. On December 28, 2004, Familymeds, Inc. ("FM Inc.") and Valley Drug Company South ("Valley Drug") entered into a written agreement | Prime Warehouse Supplier Agreement at p.1 (Attached as **Exhibit B** to the Compendium of Exhibits; Authenticated by Ana Schrank |

---

[2] Declaration of Leslie Morgan, Dated June 4, 2008.

4

Case No. 4:07-cv-05715 WDB
STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF McKESSON CORPORATION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| entitled "Prime Warehouse Supplier Agreement" with D&K Healthcare Resources Inc. ("D&K"). | Decl. at ¶15). |
| 18. On December 27, 2005, DrugMax, Inc. ("DrugMax") and FM Inc. entered into a written agreement entitled "First Amendment To Prime Warehouse Supplier Agreement" with D&K. | First Amendment To Prime Warehouse Supplier Agreement at p.1 (Attached as **Exhibit C** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15). |
| 19. McKesson was not a signatory to the Prime Warehouse Supplier Agreement. | Prime Warehouse Supplier Agreement at p. 6 (Attached as **Exhibit C** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15); Ana Schrank Decl. at ¶15. |
| 20. McKesson was not a signatory to the First Amendment To Prime Warehouse Supplier Agreement. | First Amendment To Prime Warehouse Supplier Agreement at pp. 13-14 (Attached as **Exhibit C** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15); Ana Schrank Decl. at ¶15. |
| 21. McKesson and D&K are separate corporate entities. | Ana Schrank Decl. at ¶14. |
| 22. In August 2005, McKesson acquired the stock of D&K. | Ana Schrank Decl. at ¶14. |
| 23. On May 5, 2008, the Court dismissed FM Inc. as a party in this action. | "Order Re May 5, 2008, Case Management Conference" dated May 5, 2008 at p. 2: lines 5-6 (Attached as **Exhibit K** to the Compendium of Exhibits; Authenticated by |

5

Case No. 4:07-cv-05715 WDB
STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF McKESSON CORPORATION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | Declaration of Kristen E. Caverly, dated June 4, 2008, at ¶ 2). |

DATED: June 4, 2008.        HENDERSON & CAVERLY LLP

By: _____
    Maria K. Pum
    Attorneys for McKesson Corporation

6

Case No. 4:07-cv-05715 WDB
STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF McKESSON CORPORATION'S MOTION FOR SUMMARY JUDGMENT