1  JEFFER, MANGELS, BUTLER & MARMARO LLP
   ROBERT C. GEBHARDT (Bar No. 48965), rcg@jmbm.com
2  MICHAEL A. GOLD (Bar No. 90667), mag@jmbm.com
   MATTHEW S. KENEFICK (Bar No. 227298), msk@jmbm.com
3  Two Embarcadero Center, Fifth Floor
   San Francisco, California 94111-3824
4  Telephone:  (415) 398-8080
   Facsimile:  (415) 398-5584
5

6  Attorneys for Defendant and Counterclaimant FAMILYMEDS
   GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation and
7  Cross-Complainant FAMILYMEDS, INC., a Connecticut
   corporation
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                           OAKLAND DIVISION
11

| | |
|---|---|
| MCKESSON CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br>v.<br><br>FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation,<br><br>Defendant. | CASE NO.   CV07-5715 WDB<br><br>**SEPARATE STATEMENT OF DISPUTED, UNDISPUTED AND ADDITIONAL FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION BY MCKESSON CORPORATION** |
| FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation,<br><br>Counterclaimant,<br>v.<br><br>MCKESSON CORPORATION, a Delaware corporation,<br><br>Counterdefendant. | <u>Accompanying papers</u>: Memorandum of Points and Authorities; Kenefick Declaration; Tregillis Declaration; Mercadante Declaration; Evidentiary Objections; and (Proposed Order)<br><br>Time:    August 20, 2008<br>Date:    1:30 p.m.<br>Place:   Ctrm. 4<br>         1301 Clay St., 3d Floor<br>         Oakland, CA<br>Judge:   The Hon. Wayne D. Brazil |
| FAMILYMEDS, INC., a Connecticut corporation,<br><br>Cross-Complainant,<br>v.<br><br>MCKESSON CORPORATION, a Delaware corporation,<br><br>Cross-Defendant. | Complaint filed:        Nov. 9, 2007<br>Counterclaim filed:     Dec. 17, 2007<br>Cross-Complaint Filed:  Dec. 17, 2007<br>Trial date:             none set |

PRINTED ON
RECYCLED PAPER

753685v1

CV07-5715 WDB
SEPARATE STATEMENT OF MATERIAL
FACTS

Defendant and Counterclaimant Familymeds Group, Inc., f/k/a Drugmax, Inc., a Nevada corporation and Cross-Complainant Familymeds, Inc., a Connecticut corporation (collectively, "**Familymeds**") hereby submit the following Separate Statement of Disputed, Undisputed and Additional Facts in Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation (The "**MSJ**").[1] Familymeds will meet and confer with McKesson Corporation ("**McKesson**") to prepare a Joint Statement of Undisputed Facts to be submitted prior to the hearing on McKesson's MSJ.

| MCKESSON'S ALLEGEDLY UNDISPUTED FACTS AND ALLEGEDLY SUPPORTING EVIDENCE | FAMILYMEDS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 1.  On February 2, 2007, for fair and valuable consideration, McKesson and FM Group entered into a written contract entitled "Supply Agreement."<br><br>Supply Agreement at p.1 (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl.1 at ¶3a). | **Undisputed** |
| 2.  Under the Supply Agreement, McKesson agreed to sell to FM Group, and FM Group agreed to buy, certain "Merchandise" described therein, including prescription drugs, so called "caps" and "vials" used in the sale of prescription drugs, and other health and beauty care products.<br><br>Supply Agreement at p. 1 at ¶1A (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | **Undisputed** |
| 3.  The Supply Agreement provides a term of three years commencing on December 28, 2006. | **Undisputed** |

---

[1] All capitalized terms used herein, unless otherwise defined, assume the meaning(s) ascribed to them in the accompanying Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKsesson Corporation.

| MCKESSON'S ALLEGEDLY UNDISPUTED FACTS AND ALLEGEDLY SUPPORTING EVIDENCE | FAMILYMEDS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Supply Agreement at p. 1 at ¶2 (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | |
| 4. The Agreement was signed and executed by duly authorized representatives of both FM Group and McKesson.<br><br>Supply Agreement at p. 25 (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | **Undisputed** |
| 5. Under the Supply Agreement, FM Group was required to make payment for Merchandise delivered to FM Group's retail pharmacies within seven days from the invoice date via Electronic Fund Transfer or Automated Clearing House.<br><br>Supply Agreement at p. 2 at ¶4A (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | **Undisputed** |
| 6. Under the Supply Agreement, any payments made after the due date incurred a two percent (2%) (or the maximum amount permissible under applicable law, if lower) increase in the purchase price of the Merchandise.<br><br>Supply Agreement at p. 3 at ¶4E (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | **Undisputed** |
| 7. Under the Supply Agreement, a one percent (1%) service charge (or the maximum amount permissible under applicable law, if lower) is imposed semi-monthly on all balances delinquent more than fifteen (15) days.<br><br>Supply Agreement at p. 3 at ¶4E (Attached as Exhibit A to the | **Disputed**<br><br>The 2% price increase and the 1% service charge terms only applied to Merchandise delivered to Familymeds' retail pharmacies.<br><br>See Declaration of Edgardo Mercadante in Opposition to Motion for Summary |

| MCKESSON'S ALLEGEDLY UNDISPUTED FACTS AND ALLEGEDLY SUPPORTING EVIDENCE | FAMILYMEDS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation (the "**Mercadante Decl.**") at ¶¶ 18-19; Supply Agreement attached as Exhibit A to the Compendium of Exhibits in Support of Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation (the "**Compendium**") (the "**Supply Agreement**") at p.2, ¶4.A. |
| 8. Under the Supply Agreement, FM Group agreed to render payment in full to McKesson on the applicable due date as specified in the Agreement without (i) making any deductions, short payments, or other accounts payable adjustments to such obligation; or (ii) seeking to condition such remittance on any demand for or receipt of proofs of delivery.<br><br>Supply Agreement at p. 3 at ¶4F (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | **Undisputed** |
| 9. Under the Supply Agreement, in addition to the 2% price increase and the 1% service charge, the price that FM Group must pay to McKesson for Merchandise increases as the volume of purchases decreases, and vice versa, across several levels of purchase volumes.<br><br>Ana Schrank Decl. at ¶3k. | **Disputed**<br><br>The 2% price increase and the 1% service charge terms only applied to Merchandise delivered to Familymeds' retail pharmacies.<br><br>See Mercadante Decl. at ¶¶ 18-19; Supply Agreement at p.2, ¶4.A. |
| 10. Under the Supply Agreement, FM Group's failure to make any payment when due in accordance with the terms of the Agreement constitutes a material default.<br><br>Supply Agreement at p. 18 at ¶12A (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | **Disputed**<br><br>The Supply Agreement provides that the "failure to make any payment when due in accordance with the terms of the Agreement shall constitute a default" - not a "material default."<br><br>Supply Agreement at p.18, ¶12A. |
| 11. The Supply Agreement embodies the entire agreement between McKesson and FM Group and supersedes all prior agreements, | **Disputed**<br><br>The Court should imply into the Supply |

- 3 -   CV07-5715 WDB
SEPARATE STATEMENT OF MATERIAL FACTS

753685v1

| MCKESSON'S ALLEGEDLY UNDISPUTED FACTS AND ALLEGEDLY SUPPORTING EVIDENCE | FAMILYMEDS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| understandings and representations with the exception of any promissory note, security agreement or other credit or financial related document(s) executed by FM Group or between FM Group and McKesson.<br><br>Supply Agreement at p. 22 at ¶17A (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | Agreement the reasonable term of the right to an accounting. Civil Code § 1655; Citron v. Franklin, 23 Cal.2d 47, 57 (1943). |
| 12.   The Supply Agreement provides that it shall be construed in accordance with the laws of the State of California without regard to the provisions of Section 1654 of the California Civil Code or the rules regarding conflict of laws.<br><br>Supply Agreement at p. 22 at ¶17E (Attached as Exhibit A to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | **Undisputed** |
| 13.   There is no written provision in the Supply Agreement, which requires McKesson to provide an account to FM Group.<br><br>Ana Schrank Decl. at ¶31. | **Disputed**<br><br>The Court should imply into the Supply Agreement the reasonable term of the right to an accounting. Civil Code § 1655; Citron v. Franklin, 23 Cal.2d 47, 57 (1943). |
| 14.   McKesson has delivered the "Merchandise" that FM Group ordered pursuant to the terms of the Supply Agreement.<br><br>Ana Schrank Decl. at ¶4. | **Disputed**<br><br>There are significant discrepancies and credits indicated in the Statement produced in discovery (the "**Statement**"), including 41 items in the form of Addbills, Pricing Corrections, Fee Billing, Invoices and Credits issued after 9/19/2007.<br><br>See Declaration of Christian Tregillis in Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation (the "**Tregillis Decl.**") at ¶ 17, and Exhibit 7 attached thereto; the Statement attached as Exhibit 8 to the |

| MCKESSON'S ALLEGEDLY UNDISPUTED FACTS AND ALLEGEDLY SUPPORTING EVIDENCE | FAMILYMEDS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | Declaration of Matthew S. Kenefick in Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation (the "**Kenefick Decl.**") |
| 15. As of October 31, 2007, McKesson had issued invoices to FM Group totaling at least $724,574.80, which remain unpaid.<br><br>Ana Schrank Decl. at ¶20. | **Disputed**<br><br>There are serious and irreconcilable discrepancies in the amount McKesson claims is due, there are substantial errors in the invoices produced by McKesson in discovery (the "**Unpaid Invoices**"), and the Statement contains multiple significant errors and overcharges.<br><br>See Tregillis Decl. at ¶¶ 6-24, and Exhibits 2-9 attached thereto; the Unpaid Invoices and Statement attached as Exhibits 7 and 8 to Kenefick Decl. |
| 16. As of May 30, 2008, FM Group owes McKesson $814,419.44, excluding the earned volume discount, which is waived for purposes of McKesson Corporation's instant Motion for Summary Judgment or, in the alternative, Summary Adjudication.<br><br>Ana Schrank Decl. at ¶21; May 30, 2008 Statement for Familymeds Group, Inc. attached as Exhibit E to the Compendium of Exhibits (Authenticated by Leslie Morgan Decl.2 at ¶10); Leslie Morgan Decl. at ¶¶ 1-22 (verifying invoiced amounts). | **Disputed**<br><br>There are serious and irreconcilable discrepancies in the amount McKesson claims is due, there are substantial errors in the Unpaid Invoices, and the Statement contains multiple significant errors and overcharges.<br><br>See Tregillis Decl. at ¶¶ 6-24, and Exhibits 2-9 attached thereto; the Unpaid Invoices and Statement attached as Exhibits 7 and 8 to Kenefick Decl. |
| 17. On December 28, 2004, Familymeds, Inc. ("FM Inc.") and Valley Drug Company South ("Valley Drug") entered into a written agreement entitled "Prime Warehouse Supplier Agreement" with D&K Healthcare Resources Inc. ("D&K").<br><br>Prime Warehouse Supplier | **Undisputed** |

| MCKESSON'S ALLEGEDLY UNDISPUTED FACTS AND ALLEGEDLY SUPPORTING EVIDENCE | FAMILYMEDS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Agreement at p.1 (Attached as Exhibit B to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15). | |
| 18.    On December 27, 2005, DrugMax, Inc. ("DrugMax") and FM Inc. entered into a written agreement entitled "First Amendment To Prime Warehouse Supplier Agreement" with D&K.<br><br>First Amendment To Prime Warehouse Supplier Agreement at p.1 (Attached as Exhibit C to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15). | **Undisputed** |
| 19.    McKesson was not a signatory to the Prime Warehouse Supplier Agreement.<br><br>Prime Warehouse Supplier Agreement at p. 6 (Attached as Exhibit C to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15); Ana Schrank Decl. at ¶15. | **Undisputed** |
| 20.    McKesson was not a signatory to the First Amendment To Prime Warehouse Supplier Agreement.<br><br>First Amendment To Prime Warehouse Supplier Agreement at pp. 13-14 (Attached as Exhibit C to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15); Ana Schrank Decl. at ¶15. | **Undisputed** |
| 21.    McKesson and D&K are separate corporate entities.<br><br>Ana Schrank Decl. at ¶14. | **Undisputed** |
| 22.    In August 2005, McKesson acquired the stock of D&K.<br><br>Ana Schrank Decl. at ¶14. | **Disputed**<br><br>The stock of D&K was acquired by Spirit Acquisition Corporation on August 30, 2005.<br><br>See Mercadante Decl. at ¶ 7, and |

| MCKESSON'S ALLEGEDLY UNDISPUTED FACTS AND ALLEGEDLY SUPPORTING EVIDENCE | FAMILYMEDS' MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | Exhibit 2 attached thereto. |
| 23. On May 5, 2008, the Court dismissed FM Inc. as a party in this action.<br><br>"Order Re May 5, 2008, Case Management Conference" dated May 5, 2008 at p. 2: lines 5-6 (Attached as Exhibit K to the Compendium of Exhibits; Authenticated by Declaration of Kristen E. Caverly, dated June 4, 2008, at ¶ 2). | **Disputed**<br><br>The Court's Order Re May 5, 2008 (the "**May 5 Order**") did not dismiss FM Inc. as a party in this Action.<br><br>See May 5, Order attached as Exhibit K to McKesson's Compendium. |

## ADDITIONAL UNDISPUTED MATERIAL FACTS

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| 24. FM Group is a reseller of pharmaceutical products. | Mercadante Decl. at ¶ 5. |
| 25. FM Inc. is a wholly owned subsidiary of FM Group and is the operating company for Familymeds. | Mercadante Decl. at ¶ 6. |
| 26. Familymeds owned and operated a total of 91 pharmacies - 41 were retail pharmacies, 44 were clinic pharmacies, three (3) were long term care pharmacies, and three (3) were worksite pharmacies. | Mercadante Decl. at ¶ 17. |
| 27. D&K was a wholesale supplier of pharmaceutical products. | Mercadante Decl. at ¶ 7. |
| 28. D&K is a wholly-owned subsidiary of McKesson. | Mercadante Decl. at ¶ 7, and Exhibit 2 attached thereto. |
| 29. D&K no longer exists as a corporation; on January 1, 2006, D&K converted into a Delaware limited liability company, with McKesson as its sole member. | Mercadante Decl. at ¶ 7, and Exhibit 2 attached thereto. |
| 30. McKesson is a wholesale supplier of pharmaceuticals. | Supply Agreement at p.1. |
| 31. There were approximately $142,038,393.32 in invoices to Familymeds under the First Agreement - | Mercadante Decl. at ¶ 20. |

| | UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|---|
| | $1,071,723.72 of which were originated from McKesson. | |
| 32. | Following McKesson publically announcing its acquisition of D&K, in August 2005, McKesson informed Familymeds that the First Agreement would have to be amended to reflect McKesson pricing and payment terms. | Mercadante Decl. at ¶ 11. |
| 33. | The First Amendment was negotiated and drafted by McKesson's San Francisco corporate office and legal department. | Mercadante Decl. at ¶ 13. |
| 34. | The First Amendment was executed by Paul C. Julian. | Mercadante Decl. at ¶ 14. |
| 35. | The First Amendment provided that all notices were to be served on McKesson. | See First Amendment to Prime Warehouse Supplier Agreement attached as Exhibit C to McKesson's Compendium (the "**First Amendment**") at p.13, ¶ 14 (amending Section 24). |
| 36. | Beginning in February 2006, and until December 2006, McKesson sent to Familymeds all invoices under the First Amendment, and payment of those invoices was sent to McKesson. | Mercadante Decl. at ¶ 15. |
| 37. | Under the First Amendment, Familymeds was invoiced a collective amount of $155,337,001.69 - of which, $11,515,205.00 in invoices were originated from D&K and $143,821,796.69 were originated from McKesson. | Mercadante Decl. at ¶ 20. |
| 38. | The First Amendment required payment within fourteen (14) days from the date of invoice for products delivered to Familymeds' pharmacies. | See First Amendment at p.6, ¶ 10 (amending Section 9.A). |
| 39. | The First Amendment re-defined the "Cost of Goods" to have a base-line of the manufacturer's published acquisition costs, to be discounted based upon manufacturer pricing concessions. | See First Amendment at p.3, ¶ 10 (amending Section 8.A). |
| 40. | The First Amendment provided for a discount under Cost Plus pricing based | See First Amendment at pp. 3-4, ¶ 10 (amending |

753685v1

- 8 -

CV07-5715 WDB
SEPARATE STATEMENT OF MATERIAL FACTS

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| on a graduated basis correlating to purchase volume, ▓▓▓▓ | Section 8.C). |
| 41. The First Amendment provided for Familymeds to receive ▓▓▓▓ | See First Amendment at p.3, ¶ 10 (amending Section 8.A). |
| 42. The First Amendment carved out from ▓▓▓▓ | See First Amendment at pp. 3-4, ¶ 10 (amending Section 8.C). |
| 43. The First Amendment required participation ▓▓▓▓ | See First Amendment at p.12, ¶ 12 (amending Section 11). |
| 44. McKesson invoiced Familymeds a total of $60,286,260.08 under the Supply Agreement. | Mercadante Decl. at ¶ 20. |
| 45. The Supply Agreement was negotiated and drafted by McKesson's San Francisco corporate office and legal department. | Mercadante Decl. at ¶ 13. |
| 46. The Supply Agreement was executed by Paul C. Julian. | Mercadante Decl. at ¶ 14. |
| 47. McKesson sent invoices and received payments arising under the Supply Agreement. | Mercadante Decl. at ¶ 20. |
| 48. The Supply Agreement limited the expedited payment terms to FM Group's retail pharmacies. | See Supply Agreement at p.2, ¶4.A; Mercadante Decl. ¶¶ 18-19. |
| 49. The Supply Agreement ▓▓▓▓ | See Supply Agreement at p.4, ¶5.B. |
| 50. The Supply Agreement Cost Plus structure provided for a discount on a graduated basis correlating to purchase volume, ▓▓▓▓ | See Supply Agreement at pp. 4-5, ¶5.C. |
| 51. The Supply Agreement also carved out ▓▓▓▓ | See Supply Agreement at p.5, ¶5.C. |

- 9 -   CV07-5715 WDB
SEPARATE STATEMENT OF MATERIAL FACTS

PRINTED ON RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

753685v1

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| [redacted] | |
| 52. The Supply Agreement required participation in [redacted] | See Supply Agreement at p.12, ¶9. |
| 53. McKesson only provided Familymeds with information pertaining to the Supply Agreement through the McKesson SMO. | Mercadante Decl. at ¶ 14. |
| 54. The SMO is a web-based application which is accessed through the Internet. | Mercadante Decl. at ¶ 21. |
| 55. The SMO only provided Familymeds with the products it ordered and the prices extended - it did not provide Familymeds with any of the underlying information pertaining to how those prices were calculated and whether such calculations conformed to the formulas agreed upon in the Supply Agreement. | Mercadante Decl. at ¶ 21. |
| 56. On or about September 30, 2007, McKesson terminated Familymeds' access to the SMO. | Mercadante Decl. at ¶ 22. |
| 57. Familymeds had previously downloaded EDI files from the SMO; however, these files involve hyper-linked core files which would no longer work as a result of McKesson terminating Familymeds' access to the SMO. | Mercadante Decl. at ¶ 22. |
| 58. McKesson has exclusive possession and control of the information necessary to verify whether the prices extended to Familymeds were accurately calculated in accordance with the terms of the Supply Agreement. | Mercadante Decl. at ¶¶ 23-24. |
| 59. In September 2007, McKesson informed Familymeds that it was terminating the Supply Agreement. | Mercadante Decl. at ¶ 25. |
| 60. Following notice of termination of the Supply Agreement, Familymeds reviewed its records - a standard practice when concluding such a business | Mercadante Decl. at ¶ 25. |

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| relationship. | |
| 61. Using the limited information available to Familymeds, Familymeds investigated the transactions under the Supply Agreement as well as those which occurred under the First Amendment following McKesson's acquisition of D&K (the "**Audit**"). | Mercadante Decl. at ¶ 26. |
| 62. In the Audit, Familymeds examined the average generic deflation in prices during time periods relevant to the Supply Agreement, and determined that McKesson had most likely improperly delayed extending the resulting deflation amounts to Familymeds on an average of approximately 14 days. | Mercadante Decl. at ¶ 26(a). |
| 63. Generics accounted for approximately 12% (or $7,234,351.25) of all of Familymeds' purchases under the Supply Agreement. | Mercadante Decl. at ¶ 26(a). |
| 64. The improper 14 day delay in extending to Familymeds deflation price reductions equated to an estimated $47,746.72 in overcharges under the Supply Agreement. | Mercadante Decl. at ¶ 26(a). |
| 65. In the Audit, Familymeds examined products which McKesson categorized as Specially Priced. | Mercadante Decl. at ¶ 26(b). |
| 66. Familymeds discovered that McKesson had categorized approximately 6.5% (or $3,918,606.92) of all non-generic drug purchases under the Supply Agreement as Specially Priced. | Mercadante Decl. at ¶ 26(b). |
| 67. Familymeds also discovered that McKesson had previously invoiced Familymeds for many of the same exact products under the Cost Plus pricing structure. | Mercadante Decl. at ¶ 26(b). |
| 68. McKesson invoiced Familymeds, on the average, 2.3% more per line extension under Specially Priced than it previously had for that same merchandise under | Mercadante Decl. at ¶ 26(b). |

| | UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|---|
| | Cost Plus. | |
| 69. | McKesson had not provided Familymeds with any explanation, notice, or reasoning for its change in billing categories for these items. | Mercadante Decl. at ¶ 26(b). |
| 70. | This equated to an estimated $90,127.96 in possible overcharges under the Supply Agreement. | Mercadante Decl. at ¶ 26(b). |
| 71. | In examining invoices for products billed under the Cost Plus pricing structure under the Supply Agreement, Familymeds discovered that the manufacturer pricing rebates and pricing incentives which were to be extended to Familymeds pursuant to the Supply Agreement were not indicated in the invoices to Familymeds. | Mercadante Decl. at ¶ 26(c). |
| 72. | In the Audit, Familymeds examined McKesson's invoices under the Supply Agreement to determine if McKesson had properly charged Familymeds under the Contract Products pricing structure. | Mercadante Decl. at ¶ 26(d). |
| 73. | Familymeds determined that McKesson had not honored the bid price arranged by contracts that Familymeds entered through GPO's, which affected an estimated $53.5 million in product. | Mercadante Decl. at ¶ 26(d). |
| 74. | Familymeds then determined that McKesson most likely overcharged Familymeds approximately 0.5% on these purchases by failing to ▓▓▓▓ ($267,500.00). | Mercadante Decl. at ¶ 26(d). |
| 75. | This Audit was conducted using the limited information McKesson had provided to Familymeds. | Mercadante Decl. at ¶ 26. |
| 76. | Familymeds requires the underlying documentation from McKesson to fully ascertain the full extent of McKesson's overcharges under the Supply Agreement. | Mercadante Decl. at ¶ 26; Tregillis Decl. at ¶¶ 4-5. |
| 77. | In a letter dated September 18, 2007, and addressed to Ana Schrank of McKesson, | Mercadante Decl. at ¶ 27, and Exhibit 4 attached |

| | UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|---|
| | James E. Searson, a Familymeds officer and director, requested documentation pertaining to prior account statements, Specially Priced Products, charges, credits, pricing adjustments, and payments. | thereto. |
| 78. | Familymeds' September 18, 2007 request was refused. | Mercadante Decl. at ¶ 27. |
| 79. | On November 9, 2007, McKesson filed its Complaint for Breach of Contract to enforce amounts allegedly due under the Supply Agreement. | See Complaint for Breach of Contract attached as Exhibit G to McKesson's Compendium. |
| 80. | On December 17, 2007, Familymeds filed their Counterclaim, which includes the Cross-Complaint. | See Counterclaim for Specific Performance of Contract and Accounting; Cross-Complaint for Accounting attached as Exhibit H to Compendium. |
| 81. | On January 14, 2008, McKesson filed its Motion to Dismiss, wherein, McKesson requested the Court to order FM Inc. to file a separate lawsuit or to file a motion for FM Inc. to join the First Action. | See Amended notice of Motion, Motion, Memorandum of Points and Authorities of McKesson Corporation Seeking to Dismiss: (1) Counterclaim for Specific Performance of Contract; and (2) Cross-Complaint for Accounting attached as Exhibit J to McKesson's Compendium. |
| 82. | On March 12, 2008, this Court held the initial case management conference for this action and ordered that discovery would be stayed and that the parties were to conduct an informal accounting conference. | See Exhibit 1 to Kenefick Decl. |
| 83. | On May 5, 2008, the Court heard and denied McKesson's Motion to Dismiss without prejudice, directing FM Inc. to either file a motion to join the First Action, or to file a separate action, and lifted the stay on discovery. | See May 5 Order attached as Exhibit K to McKesson's Compendium. |
| 84. | In the MSJ, McKesson seeks an adjudication that it is entitled to $814,419.44 in damages plus additional services charges and interest accrued thereon under its breach of contract claim. | See Notice of Motion; Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation; and Memorandum of Points and Authorities (the "**Memorandum of Points and Authorities**") at p.4, Line 17. |
| 85. | This amount is based on invoices and service charges thereon as indicated in | See Declaration of Leslie Morgan in Support of Motion for Summary Judgment or, in the |

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| the Statement. | Alternative, Summary Adjudication by McKesson Corporation (the "**Morgan Decl.**") at ¶ 10. |
| 86. McKesson also seeks its attorneys' fees. | See Memorandum of Points and Authorities at p.21, Line 25. |
| 87. In the MSJ, McKesson seeks an adjudication that FM Group is not entitled to an accounting from McKesson under the Supply Agreement in equity or under contract. | See Memorandum of Points and Authorities at p.22, Line 1-2. |
| 88. In the MSJ, McKesson seeks an adjudication that FM Inc. is not entitled to an accounting in equity. | See Memorandum of Points and Authorities at p.22, Line 1-2. |
| 89. The Statement was later produced in discovery. | See Exhibit 8 to Kenefick Decl. |
| 90. McKesson also produced in discovery the Unpaid Invoices. | See Exhibit 7 to Kenefick Decl. |
| 91. On June 6, 2008, Familymeds filed its Complaint for Specific Performance of Contract and Accounting, which includes a cause of action by FM Inc. against McKesson for an accounting in equity. | See Exhibit 2 to Kenefick Decl. |
| 92. On June 18, 2008, the Court entered its order granting the Administrative Motion to Consider Whether Cases Should be Related of Familymeds, thereby designating the First Action and Second Action as related and re-assigning the Second Action to Judge Brazil. | See Exhibit 3 to Kenefick Decl. |
| 93. On July 14, 2008, Familymeds requested McKesson stipulate to FM Inc. dismissing the Cross-Complaint without prejudice. McKesson refused this request. | Kenefick Decl. ¶ 18, Exhibit 9 attached thereto. |
| 94. Familymeds requested McKesson continue hearing on the MSJ to allow sufficient time for the Court to address Familymeds' request for leave to dismiss the Cross-Complaint without prejudice - McKesson denied this request as well. | Kenefick Decl. ¶ 18, Exhibit 9 attached thereto. |

- 14 -   CV07-5715 WDB
SEPARATE STATEMENT OF MATERIAL FACTS

753685v1

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| 95. On July 16, 2008, Familymeds filed its Dismissal Motion. | Kenefick Decl. ¶ 19, Exhibit 10 attached thereto. |
| 96. Discovery was stayed until the parties conducted their Federal Rule of Civil Procedure 26(f)(1) conference on January 23, 2008 | Kenefick Decl. ¶ 5. |
| 97. On June 11, 2008, Familymeds served on McKesson its Written Discovery. | Kenefick Decl. ¶¶ 6-7, Exhibits 4-5 attached thereto. |
| 98. On June 30, 2008, Familymeds requested McKesson to continue the hearing on the MSJ for sixty (60) days to allow Familymeds sufficient time to review and analyze McKesson's responses to the Written Discovery, as well as to conduct follow-up discovery, including depositions. McKesson rejected this request. | Kenefick Decl. ¶ 8. |
| 99. Following repeated requests from Familymeds, McKesson finally agreed to continue the hearing on the MSJ for two (2) weeks until August 20, 2008. | Kenefick Decl. ¶ 8. |
| 100. On July 17, 2008, Familymeds received McKesson's Responses to the Written Discovery which are primarily comprised of objections. | Kenefick Decl. ¶ 9, Exhibit 6 attached thereto. |
| 101. In connection with the Responses, McKesson supplied a cd-rom with containing certain spreadsheets. | Kenefick Decl. ¶ 11. |
| 102. These spreadsheets, while containing tens of thousands of line entries, lack key data fields which would enable Familymeds to discern the accuracy of the Unpaid Invoices and Statement. | Kenefick Decl. ¶ 15. |
| 103. McKesson converted these spreadsheets to .pdf format before production, thereby rendering the spreadsheets virtually unusable. | Kenefick Decl. ¶ 12. |
| 104. The "Total Net Invoice" amount indicated in the Unpaid Invoices is $634,726. | See Tregillis Decl. at ¶ 6; Unpaid Invoices attached as Exhibit 7 to the Kenefick Decl. |
| 105. McKesson claims this amount is | See Memorandum of Points and Authorities at |

- 15 -   CV07-5715 WDB
SEPARATE STATEMENT OF MATERIAL FACTS

753685v1

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| $747,470 in its MSJ. | p.11, Lines 3-11. |
| 106. McKesson, at another point in the MSJ, states this amount is $724,574. | See Memorandum of Points and Authorities at p.5, Line 11. |
| 107. The Statement indicates this amount as $707,879. | See Tregillis Decl. at ¶ 6; Statement attached as Exhibit 8 to the Kenefick Decl. |
| 108. The Statement contains 41 line items entered after September 19, 2007 (some as late as May 30, 2008) - when Familymeds stopped making purchases from McKesson. | Tregillis Decl. at ¶ 17, and Exhibit 7 attached thereto. |
| 109. The Statement contains unexplained and irreconcilable positive adjustments totaling $32,045 and negative adjustments in the amount of $35,363. | Tregillis Decl. at ¶ 17, and Exhibit 7 attached thereto. |
| 110. McKesson concedes that the amount it seeks in the MSJ is not accurate. | See Memorandum of Points and Authorities at p.4, Lines 26-28. |
| 111. The sampling methodology used by McKesson to verify the validity of the Unpaid Invoices and Statement fail all standards of accounting practice. | Tregillis Decl. at ¶¶ 25-29. |
| 112. The Unpaid Invoices include significant overcharges and pricing errors under the Cost Plus pricing structure which compromise the validity of the Unpaid Invoices as a whole. | Tregillis Decl. at ¶¶ 8-14, 24, and Exhibits 2-6 attached thereto. |
| 113. Under the Cost Plus structure, Familymeds was to receive [REDACTED] | See Supply Agreement at pp. 4-5, ¶ 5.C. |
| 114. For 945 of the line items in the Unpaid Invoices, Familymeds was charged the WAC, with absolutely no discount extended. | Tregillis Decl. at ¶ 9, and Exhibit 2 attached thereto. |
| 115. For 48 line items in the Unpaid Invoices, the price charged to Familymeds actually exceeded the WAC. | Tregillis Decl. at ¶ 9, and Exhibit 2 attached thereto. |
| 116. For 34 line items, the WAC is different for the same product on the same date. | Tregillis Decl. at ¶ 14, and Exhibit 6 attached thereto. |
| 117. 300 line items in the Unpaid Invoices, representing an aggregate net invoice | Tregillis Decl. at ¶ 10, and Exhibit 3 attached |

| | UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|---|
| | amount of $59,145, were designated as Contract Price. These line items list 16 various contracts. | thereto. |
| 118. | 155 line items exist where the Contract Price was higher than the Cost Plus pricing, and 20 line items where the Contract Price exceeded the WAC. These constitute improper overcharges. | Tregillis Decl. at ¶ 11, and Exhibit 4 attached thereto. |
| 119. | ███████████████████████ | Tregillis Decl. at ¶ 11. |
| 120. | In the Unpaid Invoices, McKesson seeks $43,440 for NSP and Net Billed products, which equates to $1,055 more than under the Cost Plus pricing structure for the very same products. | Tregillis Decl. at ¶ 13, and Exhibit 5 attached thereto. |
| 121. | 12 line items are invoiced as Net Billed in certain invoices, yet are also invoiced on the same day under the Cost Plus pricing structure in other invoices. | Tregillis Decl. at ¶ 13, and Exhibit 5 attached thereto. |
| 122. | The Statement fails to offset credit and debit balances on a chainwide level; rather, McKesson treated each branch pharmacy as a different customer. | Tregillis Decl. at ¶ 18. |
| 123. | This fails general accounting principals and resulted in $36,677 in negative balances at branch level, which would have otherwise been resolved at chainwide level, causing $6,200 in improper service/late charges. | Tregillis Decl. at ¶ 18, and Exhibit 8 attached thereto. |
| 124. | The majority of service/late fees were first assessed on September 17, 2007 - when McKesson terminated the Supply Agreement, and continued to accrue at 1% every 15 days thereafter. | Tregillis Decl. at ¶ 20. |
| 125. | Several of the service/late service fees are neither 1% nor 2% (the rates specified in the Supply Agreement) - thus, are in arbitrary and unexplained amounts. | Tregillis Decl. at ¶ 21, and Exhibit 9 attached thereto. |
| 126. | A sample of service/late fees reveals that McKesson improperly assessed | Tregillis Decl. at ¶ 20. |

- 17 -  CV07-5715 WDB
SEPARATE STATEMENT OF MATERIAL FACTS

753685v1

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| service/late fees when there were no outstanding invoices due. | |
| 127. McKesson also improperly assed Familymeds $64,923 in service/late fees for non-retail locations, in direct contradiction of the terms of the Supply Agreement. | Tregillis Decl. at ¶ 22; Mercadante Decl. at ¶¶ 18-19. |
| 128. In its complaint and MSJ, McKesson seeks recovery of its attorneys' fees. | See Complaint for Breach of Contract attached as Exhibit G to McKesson's Compendium at p.4, ¶30. |
| 129. The Supply Agreement does not contain a prevailing party attorneys' fees provision. | See Supply Agreement. |
| 130. McKesson fails to provide in its complaint or its MSJ the basis for its attorneys' fees prayer. | See Complaint for Breach of Contract attached as Exhibit G to McKesson's; Memorandum of Points and Authorities. |

DATED: July 30, 2008

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT C. GEBHARDT
MICHAEL A. GOLD
MATTHEW S. KENEFICK

By: /s/ Robert C. Gebhardt
      ROBERT C. GEBHARDT
Attorneys for FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation and FAMILYMEDS, INC., a Connecticut corporation