1  JEFFER, MANGELS, BUTLER & MARMARO LLP
   ROBERT C. GEBHARDT (Bar No. 48965), rcg@jmbm.com
2  MICHAEL A. GOLD (Bar No. 90667), mag@jmbm.com
   MATTHEW S. KENEFICK (Bar No. 227298), msk@jmbm.com
3  Two Embarcadero Center, Fifth Floor
   San Francisco, California  94111-3824
4  Telephone:    (415) 398-8080
   Facsimile:    (415) 398-5584
5

6  Attorneys for Defendant and Counterclaimant FAMILYMEDS
   GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation and
7  Cross-Complainant FAMILYMEDS, INC., a Connecticut
   corporation
8

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MCKESSON CORPORATION, a Delaware corporation,<br><br>          Plaintiff,<br>     v.<br><br>FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation,<br><br>          Defendant.<br><br>FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation,<br><br>          Counterclaimant,<br>     v.<br><br>MCKESSON CORPORATION, a Delaware corporation,<br><br>          Counterdefendant.<br><br>FAMILYMEDS, INC., a Connecticut corporation,<br><br>          Cross-Complainant,<br>     v.<br><br>MCKESSON CORPORATION, a Delaware corporation,<br><br>          Cross-Defendant. | CASE NO.   CV07-5715 WDB<br><br>**DECLARATION OF CHRISTIAN TREGILLIS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION BY MCKESSON CORPORATION**<br><br>**Accompanying papers**: Memorandum of Points and Authorities; Kenefick Declaration; Mercadante Declaration; Separate Statement; Evidentiary Objections; and (Proposed Order)<br><br>Time:    August 20, 2008<br>Date:    1:30 p.m.<br>Place:   Ctrm. 4<br>         1301 Clay St., 3d Floor<br>         Oakland, CA<br>Judge:   The Hon. Wayne D. Brazil<br><br>Complaint filed:         Nov. 9, 2007<br>Counterclaim filed:      Dec. 17, 2007<br>Cross-Complaint Filed:   Dec. 17, 2007<br>Trial date:              none set |

PRINTED ON
RECYCLED PAPER

754941v1

CV07-5715 WDB
TREGILLIS DECLARATION

I, Christian Tregillis, declare:

1. As a Managing Director at LECG, LLP, I have been engaged to analyze accounting issues regarding the invoices transmitted to Familymeds Group, Inc. and Familymeds Inc. (collectively, "**Familymeds**") by McKesson Corporation ("**McKesson**") as part of the business relationships between the parties, with McKesson seeking payment for pharmaceuticals and medical products delivered to Familymeds' retail and non-retail pharmacies.

2. As a Certified Public Accountant, licensed in California, I have performed forensic accounting investigations and data analyses, with a particular expertise in the life sciences industry, for the past 19 years, including working on over 400 matters. I was formerly a partner at Deloitte, and I currently am on the American Institute of Certified Public Accountants' Forensic & Litigation Services committee. In addition, I am the chair of the Economic Damages section of the California Society of Certified Public Accountants. From 2003 to 2007, I served on the Board of Trustees of the Center for Law in the Public Interest and was the Center's Chief Financial Officer. A true and correct copy of my curriculum vitae is attached hereto as **Exhibit 1**.

3. As part of my analysis, I have reviewed documents produced by McKesson in response to Familymeds' First Request for Production and First Set of Interrogatories (collectively, the "**Written Discovery**"), including:

   a. FamilyMed – Unpaid Invoices – 2/26/2007 to 9/30/2007, Bates # MCK 483 – 566, (the "**Unpaid Invoices**"), and

   b. Statement National Account 603805 as of 05/30/2008 (the "**Statement**"), Bates # MCK 567-641 (which is also attached as Exhibit E to McKesson's Motion for Summary Judgment).

4. It is my opinion that the materials produced by McKesson in support of its Motion for Summary Judgment and in response to the Written Discovery lack the requisite information that would allow me to review and test in depth the accuracy of the Unpaid Invoices or the computer system that generated them. In order to properly and completely audit these invoices, one would need access to information that would show the basis for McKesson's costs to acquire products. As a result, my observations below are based only on my review of the Unpaid Invoices and the

1  Statement on their face. Should additional information become available to analyze the
2  underpinnings of the Unpaid Invoices, or other invoices that Familymeds paid, I would expect to
3  update my opinions.
4      5. I have provided to counsel for Familymeds a list of the documents and information I
5  believe to be necessary to test McKesson's invoices to Familymeds, with an eye toward minimizing
6  the request to include only the information that would be necessary to obtain an initial
7  understanding; I did this so as to avoid a "shotgun" approach to document requests, with an
8  expectation of iterating with an additional follow-up request on review of the first set of documents.
9  This list is reflected in the Written Discovery. I have reviewed McKesson's responses to the
10 Written Discovery, and McKesson has failed to produce this information; notably, as indicated
11 above, I have not been provided support for the prices charged to Familymeds other than the
12 internal McKesson dataset. That is, McKesson failed to provide any support for the inputs into the
13 McKesson system.

### Inconsistencies In Total Outstanding Amount

15     6. Familymeds' alleged indebtedness to McKesson appears in irreconcilable,
16 inconsistent, and inconclusive amounts throughout McKesson's Unpaid Invoices and Statement.
17 The "Total Net Invoice" amount as reflected in the Unpaid Invoices is $634,726, which is
18 significantly lower than the $747,470 indentified in McKesson's Motion for Summary Judgment
19 (p.11, line 3-11). Neither $10,000 in "residual" payments nor $38,649.88 in returns processed on
20 September 14, 2007 explain the difference. It is also inconsistent with the $724,574 outstanding as
21 of October 31, 2007 quoted in the Motion for Summary Judgment on page 5, line 11. See the
22 comparison table below. The McKesson Statement contains yet another total for all invoices and
23 credits listed (excluding Addbills, Residual, PastDuebal, PricingCor, Fee Billing) of $707,879.

26 ///
27 ///
28 ///

| Billing Date | Per Motion for Summary Judgement | | Per Unpaid Invoices (Bates # MCK 483 - 566) | | | | Per McKesson Statement (Bates # MCK 567 - 641) | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gross Invoice Amount | Net Invoice Amount | All Unpaid Invoices | Difference | Non-Invoice Line Items Excluded | Difference | Invoice Line Items Only | Difference | Invoice & Credit Line Items Only | Difference |
| 2/26/2007 | $ 110,873 | $ 108,655 | $ 108,656 | $ 1 | $ 108,656 | $ 1 | $ 110,873 | $ 2,218 | $ 110,873 | $ 2,218 |
| 3/1/2007 | 531,138 | 520,338 | 519,454 | (884) | 529,217 | 8,879 | 540,017 | 19,679 | 530,254 | 9,916 |
| 3/31/2007 | - | - | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 |
| 9/11/2007 | 34,745 | 34,037 | 2,358 | (31,679) | 2,358 | (31,679) | 35,423 | 1,386 | 34,718 | 681 |
| 9/12/2007 | 23,208 | 22,740 | 1,637 | (21,103) | 1,637 | (21,103) | 23,377 | 637 | 23,208 | 468 |
| 9/13/2007 | 21,666 | 21,233 | 2,038 | (19,195) | 2,038 | (19,195) | 21,667 | 434 | 21,667 | 434 |
| 9/14/2007 | 26,575 | 26,044 | (3,974) | (30,018) | 1,923 | (24,121) | 26,523 | 479 | (12,127) | (38,171) |
| 9/17/2007 | 14,610 | 14,423 | 5,877 | (8,546) | 5,877 | (8,546) | 9,350 | (5,073) | 6,951 | (7,472) |
| 9/19/2007 | - | - | (1,343) | (1,343) | - | - | - | - | (2,642) | (2,642) |
| Sums | $ 762,815 | $ 747,470 | $ 634,726 | $ (112,744) | $ 651,729 | $ (95,741) | $ 767,253 | $ 19,783 | $ 712,925 | $ (34,545) |

7. The discrepancies outlined in Paragraph 6 above, as much as 15% of the $762,815 claimed due, cause significant concern both for the lack of ability to trace the claimed amount due and the implication of the possible errors on prior invoices not included above put previously paid.

**Apparent Errors In Unpaid Invoices**

8. The Unpaid Invoices list four (4) pricing methods that have purportedly been applied to Familymeds' purchases: 1) Cost Plus/Cost of Goods pricing ("COG") ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, 2) contract, 3) net billed and 4) NSP. In addition to the lack of information on what makes up WAC, for example, McKesson has not provided any documentation that demonstrates why certain products are subject to each specific pricing method.

9. I have identified 945 line items from the Unpaid Invoices with a listed pricing method of COG, but for which the discount off of WAC was zero (which could be drop-shipped or error, thus indicating a failure to implement ▬▬▬▬▬▬▬ and 48 line items in which the price charged to Familymeds was higher than WAC. As of this date I have been provided no explanation of why this would be the case for a listed pricing method of COG, which is what these line items indicate. Attached hereto as **Exhibit 2** is a true and correct copy of a spreadsheet detailing this.

10. I understand that Familymeds had direct contract agreements with manufacturers through Group Purchasing Organizations. The Unpaid Invoices list 16 various contract names for Familymeds; however, the Unpaid Invoices fail to provide any correlating reference or

1  documentation to verify if these prices were properly extended in an accurate amount (this impacts
2  300 lines, with a total net invoice amount of $59,145). Attached hereto as **Exhibit 3** is a true and
3  correct copy of a spreadsheet detailing this.

4      11.    I have identified 155 line items in which the contract price was higher than the COG
5  price ~~[redacted]~~ which appears to be contrary to the purpose of contract pricing, which
6  presumably is supposed to reflect more advantageous contractual obligation than the available
7  alternative - published manufacturer's price less the volume discount. Additionally, I have identified
8  20 line items for which contract price is higher than WAC (not just higher than WAC less the
9  discount, but higher than WAC itself). Attached hereto as **Exhibit 4** is a true and correct copy of a
10 spreadsheet detailing this.

11     12.    As stated above, McKesson has not provided any supporting documentation that
12 would allow the validating of invoice amounts, nor did McKesson provide any documentation that
13 demonstrates why certain items are categorized as either "NSP" or "Net Billed." McKesson also
14 failed to provide information to show how pricing is determined for this category of items.

15     13.    McKesson charged Familymeds $43,440 for items falling into the NSP or Net Billed
16 categories, which is a mark-up of $1,055 over the COG method. Furthermore, I have identified 12
17 items that have been billed under Net Billed and either the Contract or COG method on the same
18 day. Attached hereto as **Exhibit 5** is a true and correct copy of a spreadsheet detailing this.

19     14.    The integrity of McKesson's pricing data, and WAC in particular, appears to be
20 compromised, as the Unpaid Invoices document contains 34 line items in which, for the same
21 product on the same date, WAC appears to be different. Attached hereto as **Exhibit 6** is a true and
22 correct copy of a spreadsheet detailing this.

### The McKesson Statement

24     15.    A superficial review of McKesson's Statement to Familymeds revealed a number of
25 inconsistencies or potential errors.

26     16.    First, as referenced above, the total amount reflected on the statement (excluding
27 late charges) does not appear to be consistent with either the Unpaid Invoices totals or with totals
28 outlined in the Motion for Summary Judgment.

17. Second, the Statement contains 41 items in the form of Addbills, Pricing Corrections, Fee Billing, Invoices and Credits issued after 9/19/2007, when Familymeds stopped making purchases from McKesson. Some were assessed as late as May 30, 2008 (credit of $2,655.63). The total amount of positive adjustments was $32,045 and the total of negative adjustments was $35,363. Attached hereto as **Exhibit 7** is a true and correct copy of a spreadsheet detailing this.

18. It appears that the methodology that McKesson used for calculating late charges is inconsistent with the Agreement. The system used apparently treats each customer number separately (a customer number corresponds to each distinct Familymeds pharmacy, in addition to one for Familymeds corporate). This results in a failure to offset credit and debit balances across pharmacies, and so late charges continue to accumulate, rather than looking at the entirety of the Familymeds relationship (as called for by the Supply Agreement).

19. The McKesson Statement shows six (6) customers with negative balances, for a total of $36,677, which results in approximately $6,200 in inappropriately assessed in late charges. Attached hereto as **Exhibit 8** is a true and correct copy of a spreadsheet detailing this.

20. Further examination of late fees reveals that late fees were applied inconsistently and do not appear to comport with the relevant provision of the Agreement. For example, Pharmacy #411 was assessed a late fee of $266 on March 1, 2007, when it appears that there were no invoices past due as of that date. The majority of the late fees were first assessed on September 17, 2007 and penalties have continued to accrue at 1% every 15 days.

21. Attached hereto as **Exhibit 9** is a true and correct copy of a spreadsheet which lists a few of the numerous circumstances in which the late fees assessed on September 17, 2007 appear arbitrary, as they are neither 1% nor 2 %.

22. I have read the Supply Agreement and the accompanying Declaration of Edgardo Mercadante in Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation, which indicate that the seven-day payment terms of Paragraph 4.A of the Supply Agreement applied only to retail pharmacies. I understand that out of 91 pharmacies operated by Familymeds, only 41 were retail locations; the rest were non-retail pharmacies such as clinic pharmacies, long term care pharmacies, and worksite pharmacies. Total

1  late fees assessed for the non-retail locations are $64,923.

2      23.    In its Motion for Summary Judgment, McKesson concedes the Statement, which
3  serves as the basis for its claim against Familymeds, does not reflect price adjustments related to a
4  purchase volume obligation that McKesson alleges Familymeds did not meet. I have not received
5  information to permit a clear analysis of whether Familymeds did, in fact, fail to meet the sales
6  volume threshold to qualify for a discount.

7      24.    Individually, the above-mentioned errors, omissions and inconsistencies call for
8  further investigation. In combination, they call into question McKesson's Statement and Unpaid
9  Invoices, as well as the integrity of McKesson's pricing, record-keeping and billing practices.
10 Based on my education, expertise, experience, training, as well as my review of the documentation
11 referenced herein, it is my opinion that the combination of errors, omissions and inconsistencies
12 summarized above compromises the validity of the Statement under the standard tenants of
13 accounting practice.

### Sample Invoice Audit By Leslie Morgan

15     25.    I have reviewed the declaration of Leslie Morgan submitted in support of
16 McKesson's Motion for Summary Judgment dated June 4, 2008.

17     26.    In my opinion, the sample selected by Ms. Morgan was neither representative nor
18 large enough to render any statistically significant inferences about the accuracy and validity of
19 McKesson's claim.

20     27.    First, none of the three (3) invoices sampled are currently outstanding – thus, their
21 relevance to McKesson's claim is questionable.

22     28.    Second, if the sample is supposed to represent invoices issued by McKesson while
23 the Supply Agreement was in effect, the sample of three (3) invoices out of the population of more
24 than 25,000 (from December 28, 2006 on) could not be considered sufficient under any theory.

25     29.    Based on my education, expertise, experience, training, as well as my review of the
26 documentation referenced herein, it is my opinion that the statements made by Ms. Morgan
27 pertaining to the accuracy and validity of the Statement are not derived by scientific method and are
28 not grounded in the methods and procedures of statistics and data analysis.

PRINTED ON
RECYCLED PAPER

754941v1

- 6 -   CV07-5715 WDB
TREGILLIS DECLARATION

1     I declare under penalty of perjury that the foregoing is true and correct.

2  Executed on July 29, 2008

                                              CHRISTIAN TREGILLIS, Declarant