# EXHIBIT 1

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

McKesson Corp., a Delaware Corp.,

　　　　　　　Plaintiff,

　　v.

Familymeds Group, Inc., f/k/a
Drugmax, Inc., a Connecticut
corporation,

　　　　　　　Defendants.

_____/

Familymeds Group, Inc., f/k/a
Drugmax, Inc., a Connecticut
corporation,

　　　　　　　Counterclaimant

　　v.

McKesson Corp., a Delaware
corporation,

　　　　　　　Counterdefendant.

_____/

Familymeds, Inc., a Connecticut
corporation,

　　　　　　　Cross-complainant

　　v.

McKesson Corp., a Delaware
corporation,

　　　　　　　Cross-defendant.

_____/

No. C-07-5715 WDB

**ORDER RE MARCH 12, 2008,
HEARING**

1

**EXHIBIT 1**

1   The Court wants the <u>clients</u> in this case to understand what is driving the

2 orders the Court entered orally at the initial case management conference on March

3 12, 2008, and that are summarized below.  One of the Court's responsibilities to

4 the litigants is to do what it can to keep litigation transaction costs from growing

5 out of all proportion to the amounts at stake under the claims in the case.  The

6 Court also has a duty, imposed by the Federal Rules of Civil Procedure, to do what

7 it can to promote the "just, speedy, and inexpensive determination of every action."

8

9   The procedure the Court has ordered is informed by responsiveness to these

10 merging duties and by the Court's sense that what is at the center of this case is a

11 matter of accounting that parties who are proceeding in good faith should be able

12 to digest in a straightforward exchange of information.

13   For several years, the parties and their predecessors have been involved in a

14 high volume business relationship in which some $170,000,000 has changed

15 hands.  It beggars the Court's imagination that, against that background of deep

16 experience and considerable business sophistication, the parties cannot figure out

17 what amounts remain owing.  We don't need a lawsuit; we need ethical business

18 people to determine responsibly what is owed and to get that amount promptly

19 paid.

20   So, between now and the end of April, the parties must sit down in the same

21 room with one another, accompanied by appropriately knowledgeable persons, and

22 try (really) to resolve these accounting matters.  If the parties fail, after trying in

23 good faith, to reach an agreement, the Court will move this case toward an

24 adjudicated disposition as fast as the mandates of due process permit.

25   **Before Wednesday, April 30, 2008**, the parties must exchange information

26 about the disputed accounts and must meet to discuss settlement of the parties'

27 claims.  The parties must produce all representatives necessary to facilitate this

28

1  exchange of information including, without limitation, those familiar with the
2  necessary computer systems, billing processes, and rules applicable to pricing.

3  The Court hereby enters a PROTECTIVE ORDER pursuant to which all
4  information exchanged among the parties pursuant to this Order must be treated as
5  CONFIDENTIAL unless and until otherwise ordered by the Court.

6  The Court prohibits the parties from filing additional motions or conducting
7  formal discovery until after April 30, 2008.

8  **By Monday April 28, 2008, at <u>noon</u>**, the parties must file a joint case
9  management conference statement describing the status of the parties' efforts.

10  **On Wednesday, April 30, 2008, at 3:00 p.m.**, the Court will conduct a
11  follow up case management conference. Any party may appear by telephone and
12  must call the Court's staff by April 28, 2008, at (510)-637-3324 to arrange to
13  appear by telephone.

14  The Court CONTINUES the hearing on McKesson's Motion to Dismiss to
15  **Wednesday, April 30, 2008, at 3:00 p.m.** The hearing will go forward following
16  the status conference unless McKesson has withdrawn its Motion prior to that time.

17  <u>The Court ORDERS counsel to deliver a copy of this Order promptly to</u>
18  <u>their clients.</u>

19  IT IS SO ORDERED.

20  Dated: March 13, 2008

21
22                                        WAYNE D. BRAZIL
                                          United States Magistrate Judge
22  Copies to: parties, wdb, stats

23

24

25

26

27

28

# EXHIBIT 2



1  JEFFER, MANGELS, BUTLER & MARMARO LLP
    ROBERT C. GEBHARDT (Bar No. 48965), rcg@jmbm.com
2  MICHAEL A. GOLD (Bar No. 90667), mag@jmbm.com
    MATTHEW S. KENEFICK (Bar No. 227298), msk@jmbm.com
3  Two Embarcadero Center, Fifth Floor
    San Francisco, California 94111-3824
4  Telephone:   (415) 398-8080
    Facsimile:    (415) 398-5584

5

6  Attorneys for Plaintiffs FAMILYMEDS, INC., a Connecticut
    corporation and FAMILYMEDS GROUP, INC. a Nevada
7  corporation, f/k/a DRUGMAX, INC., a Nevada corporation

8

9             UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11  FAMILYMEDS, INC., a Connecticut    CASE NO. **CV 08 2850**
    corporation; and FAMILYMEDS GROUP,
12  INC. a Nevada corporation, f/k/a DRUGMAX,    **COMPLAINT FOR:**
    INC., a Nevada corporation,
13                       1)  **SPECIFIC PERFORMANCE OF**
          Plaintiffs,                    **CONTRACT (Two Counts); and**
14
        v.                       2)  **ACCOUNTING (Four Counts).**
15
    MCKESSON CORPORATION, a Delaware    **DEMAND FOR JURY TRIAL**
16  corporation; and D&K HEALTHCARE
    RESOURCES LLC, a Delaware limited
17  liability company, f/k/a D&K HEALTHCARE
    RESOURCES, INC., a Delaware corporation,
18
          Defendants.
19

20        Plaintiffs Familymeds, Inc., a Connecticut corporation ("**Familymeds, Inc.**") and

21  Familymeds Group, Inc. a Nevada corporation, f/k/a DrugMax, Inc., a Nevada corporation

22  ("**Familymeds Group**") (collectively, "**Plaintiffs**") hereby complain against McKesson

23  Corporation, a Delaware corporation ("**McKesson**") and D&K Healthcare Resources LLC, a

24  Delaware limited liability company, f/k/a D&K Healthcare Resources, Inc., a Delaware corporation

25  ("**D&K**") (collectively, "**Defendants**") as follows:

26  ///

27  ///

28  ///

PRINTED ON
RECYCLED PAPER

731790v1

**EXHIBIT 2**

COMPLAINT FOR SPECIFIC PERFORMANCE
OF CONTRACT AND ACCOUNTING

# I.

## GENERAL ALLEGATIONS

### JURISDICTION

1.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**Plaintiffs**

2.     Familymeds, Inc. is a Connecticut corporation with its principal place of business at 2 Bridgewater Road, Farmington, Connecticut 06032.

3.     Familymeds Group is a Nevada corporation with its principal place of business at 2 Bridgewater Road, Farmington, Connecticut 06032.

4.     On or about November 12, 2004, Familymeds Group, Inc., a Connecticut corporation merged with and into DrugMax, Inc., a Nevada corporation ("**DrugMax**"), leaving DrugMax as the surviving corporation, and thereafter, on or about July 10, 2006, DrugMax amended its articles of incorporation to change its name to Familymeds Group, Inc., a Nevada corporation.

5.     Familymeds, Inc. is the wholly-owned subsidiary of Familymeds Group.

**Defendants**

6.     Plaintiffs are informed and believe, and on that basis allege, that at all times herein mentioned, McKesson is and was a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.

7.     Plaintiffs are informed and believe, and on that basis allege, that on or about August 30, 2005, McKesson's wholly owned subsidiary, Spirit Acquisition Corporation, a Delaware corporation, merged with and into D&K Healthcare Resources, Inc., leaving D&K Healthcare Resources, Inc. as the surviving corporation and thereby rendering D&K Healthcare Resources, Inc. a wholly-owned subsidiary of McKesson.

8.     Plaintiffs are informed and believe, and on that basis allege, that from the date of its formation of December 16, 1987, until December 31, 2005, D&K was a corporation formed under the laws of Delaware.

PRINTED ON
RECYCLED PAPER

731790v1

- 2 -     COMPLAINT FOR SPECIFIC PERFORMANCE
OF CONTRACT AND ACCOUNTING

JMBM   Jeffer Mangels
Butler & Marmaro LLP

9.    Plaintiffs are informed and believe, and on that basis allege, that on or about January 1, 2006, D&K converted from being a Delaware corporation into a Delaware limited liability company, and has thereafter remained as a Delaware limited liability company with McKesson as its sole member.

10.    Plaintiffs are informed and believe, and on that basis allege, that at all times herein mentioned, D&K's principal place of business is and was at 8235 Forsyth Blvd., St. Louis, Missouri 63105.

11.    Plaintiffs are informed and believe, and on that basis allege, that McKesson and D&K share, and are controlled by, an interlocking directorate.

**Amount in Controversy**

12.    The amount in controversy of each of the claims of Familymeds, Inc. and Familymeds Group against McKesson and D&K each respectively exceed the sum or value of $75,000.

**VENUE**

13.    All actions complained of herein took place within the jurisdiction of the United States District Court, Northern District of California.  Accordingly, venue is invoked pursuant to 28 U.S.C. § 1391(a).

**INTRADISTRICT ASSIGNMENT**

14.    A substantial part of the events, acts or omissions giving rise to the claims for relief set forth herein occurred in the City and County of San Francisco.

**II.**

**FACTUAL BACKGROUND**

**The First Agreement**

15.    On or about December 28, 2004, Familymeds, Inc., Valley Drug Company South; a Louisiana corporation ("**Valley Drug**") and D&K entered into that certain written Prime Warehouse Supplier Agreement (the "**First Agreement**") for fair and valuable consideration, which provided, *inter alia*, for D&K to sell and Familymeds, Inc. and Valley Drug to buy certain "Products" (as that term is defined therein).

JMBM    Jeffer Mangels
        Butler & Marmaro LLP

1       16.     The First Agreement provided for a term of two (2) years, commencing on

2   December 28, 2004.

3       **The First Amendment**

4       17.     On or about December 27, 2005, DrugMax (which amended its articles of

5   incorporation on July 10, 2006, to change its name to Familymeds Group, Inc., a Nevada

6   corporation and is referred to herein as "Familymeds Group"), Familymeds, Inc., and D&K entered

7   in that certain written First Amendment to Prime Warehouse Supplier Agreement for fair and

8   valuable consideration, which provided, *inter alia*, to amend certain terms of the First Agreement

9   (the First Agreement, as amended, shall be referred to herein as the **"First Amendment"**).

10       18.     The First Amendment was negotiated and drafted by McKesson's San Francisco

11   corporate office and legal department.

12       19.     Plaintiffs are informed and believe, and on that basis allege, that the First

13   Amendment was executed by Paul C. Julian, who was also a director and/or officer of McKesson at

14   the time of execution of the First Amendment.

15       20.     The First Amendment provided, *inter alia*, that Familymeds, Inc. and Familymeds

16   Group were obligated to "fully participate in the McKesson OneStop Generics Program through its

17   auto-substitution feature and to thereby designate this program as Customer's primary source of

18   generic pharmaceuticals..." (the **"McKesson OneStop Generics Program"**).

19       21.     Both Familymeds, Inc. and Familymeds Group fully participated in the McKesson

20   OneStop Generics Program, as required under the First Amendment.

21       22.     The First Amendment provided, *inter alia*, that all notices thereunder shall be served

22   on McKesson Corporation, One Post Street, San Francisco, California 94104.

23       23.     The First Amendment in Paragraph 10 (amending Section 8 of the First Agreement),

24   provided that Familymeds, Inc. and Familymeds Group were entitled to audit documentation

25   pertaining to Specially Priced Products (as that term is defined therein) (the **"Accounting**

26   **Obligation"**):

27                ...Customer [Familymeds, Inc. and Familymeds Group] may audit
                   Customer's purchase history and pricing of Specially Priced Products

28                charged to Customer by D&K as reasonably requested.  D&K agrees

JMBM    Jeffer Mangels
Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

731790v1

1 to provide Customer with the above-referenced purchase history upon

2 Customer's written request.

3   24. Beginning in or around February 2006, and until the end of the term of the First

4 Amendment in December 2006, McKesson sent to Familymeds, Inc. and Familymeds Group all

5 invoices for payment which arose under the First Amendment.

6   25. Beginning in or around February 2006, and until the end of the term of the First

7 Amendment in December 2006, Familymeds, Inc. and Familymeds Group, by direction, request,

8 and demand of D&K, sent all payments arising under the First Amendment to McKesson.

9  **The Request**

10   26. In a letter dated September 18, 2007, and addressed to Ana Schrank, Vice President

11 of Financial Services, McKesson Corporation, One Post Street, San Francisco, CA 94104, James E.

12 Searson, an officer and director of both Familymeds, Inc. and Familymeds Group, requested

13 documentation pertaining to prior account statements, Specially Priced Products (as that term is

14 defined in the First Amendment), charges, credits, pricing adjustments, and payments (the

15 **"Documentation"**) (the **"Request"**).

16   27. The Documentation sought in the Request is within the exclusive possession and

17 control of D&K and/or McKesson.

18   28. The Request was wrongfully refused and wholly denied.

19   29. Familymeds is informed and believes, and based thereon alleges, that Familymeds,

20 Inc. and Familymeds Group have been wrongfully overcharged certain amounts under the First

21 Amendment and credits due under the First Amendment were improperly withheld; however, the

22 Documentation necessary to determine the amount of these improper overcharges and improperly

23 withheld credits is within D&K's and/or McKesson's exclusive possession and control and the

24 September 18, 2007 Request for such information was wrongfully denied.

25 ///

26 ///

27 ///

28 ///

JMBM Jeffer Mangels
Butler & Marmaro LLP

## III.

## FIRST CLAIM FOR RELIEF

(Specific Performance of Contract)

### Count One - Familymeds, Inc. against D&K

30.    Familymeds, Inc. incorporates by reference the allegations contained in Paragraphs 1 through 29 above.

31.    The Accounting Obligation under the First Amendment created an express obligation for D&K to provide the Documentation to Familymeds, Inc.

32.    The terms of the First Amendment, including the Accounting Obligation, are sufficiently precise, certain, and definite for enforcement by this Court.

33.    The terms of the First Amendment, including the Accounting Obligation, are fair, just, and reasonable under all of the circumstances, and adequate consideration was provided by and to all parties.

34.    The terms of the First Amendment, including the Accounting Obligation, are mutually available and can be enforced by and against any party to the First Amendment.

35.    Familymeds, Inc. has duly performed all conditions precedent on its part required to be performed under the terms of the First Amendment, except as to those conditions for which performance was excused by D&K's material breaches.

36.    D&K has breached the First Amendment by wrongfully refusing the Request, thereby breaching its Accounting Obligation.

37.    Familymeds, Inc. requests that this Court order D&K to specifically perform in accordance with the terms of the First Amendment by providing the Documentation as required by the Accounting Obligation.

38.    No adequate remedy at law is available to Familymeds, Inc.

WHEREFORE, Familymeds, Inc. prays for judgment as set forth herein.

### Count Two - Familymeds Group against D&K

39.    Familymeds Group incorporates by reference the allegations contained in Paragraphs 1 through 29 above.

JMBM

Jeffer Mangels
Butler & Marmaro LLP

1    40.    The Accounting Obligation under the First Amendment created an express obligation

2    for D&K to provide to Familymeds Group the Documentation.

3    41.    The terms of the First Amendment, including the Accounting Obligation, are

4    sufficiently precise, certain, and definite for enforcement by this Court.

5    42.    The terms of the First Amendment, including the Accounting Obligation, are fair,

6    just, and reasonable under all of the circumstances, and adequate consideration was provided by and

7    to all parties.

8    43.    The terms of the First Amendment, including the Accounting Obligation, are

9    mutually available and can be enforced by and against any party to the First Amendment.

10    44.    Familymeds Group has duly performed all conditions precedent on its part required

11    to be performed under the terms of the First Amendment, except as to those conditions for which

12    performance was excused by D&K's material breaches.

13    45.    D&K has breached the First Amendment by wrongfully refusing the Request,

14    thereby breaching its Accounting Obligation.

15    46.    Familymeds Group requests that this Court order D&K to specifically perform in

16    accordance with the terms of the First Amendment by providing the Documentation as required by

17    the Accounting Obligation.

18    47.    No adequate remedy at law is available to Familymeds Group.

19    WHEREFORE, Familymeds Group prays for judgment as set forth herein.

20    **IV.**

21    **SECOND CLAIM FOR RELIEF**

22    (Accounting in Equity - Four Counts)

23    **Count One - Familymeds, Inc. against D&K**

24    48.    Familymeds, Inc. incorporates by reference the allegations contained in Paragraphs 1

25    through 29 above.

26    49.    A relationship exists between Familymeds, Inc. and D&K, and circumstances

27    require, that D&K provide to Familymeds, Inc. an accounting in equity.

28    50.    An unknown balance is due under the First Amendment to Familymeds, Inc. for

JMBM   Jeffer Mangels
Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

731790v1

- 7 -    COMPLAINT FOR SPECIFIC PERFORMANCE
OF CONTRACT AND ACCOUNTING

1    unissued and improperly withheld credits and overcharges which cannot be ascertained without an

2    accounting, the means of which are in the exclusive knowledge and control of D&K.

3        51.    D&K has the obligation and the ability to account to Familymeds, Inc.

4        52.    No adequate remedy is available to Familymeds, Inc. at law and thus an accounting

5    is necessary to preserve Familymeds, Inc.'s rights.

6        WHEREFORE, Familymeds, Inc. prays for judgment as set forth herein.

7                **Count Two - Familymeds, Inc. against McKesson**

8        53.    Familymeds, Inc. incorporates by reference the allegations contained in Paragraphs 1

9    through 29 above.

10       54.    A relationship exists between Familymeds, Inc. and McKesson, and circumstances

11    require, that McKesson provide to Familymeds, Inc. an accounting in equity.

12       55.    An unknown balance is due under the First Amendment to Familymeds, Inc. for

13    unissued and improperly withheld credits and overcharges which cannot be ascertained without an

14    accounting, the means of which are in the exclusive knowledge and control of McKesson.

15       56.    McKesson has the obligation and the ability to account to Familymeds, Inc.

16       57.    No adequate remedy is available to Familymeds, Inc. at law and thus an accounting

17    is necessary to preserve Familymeds, Inc.'s rights.

18       WHEREFORE, Familymeds, Inc. prays for judgment as set forth herein.

19                **Count Three - Familymeds Group against D&K**

20       58.    Familymeds Group incorporates by reference the allegations contained in Paragraphs

21    1 through 29 above.

22       59.    A relationship exists between Familymeds Group and D&K, and circumstances

23    require, that D&K provide to Familymeds Group an accounting in equity.

24       60.    An unknown balance is due under the First Amendment to Familymeds Group for

25    unissued and improperly withheld credits and overcharges which cannot be ascertained without an

26    accounting, the means of which are in the exclusive knowledge and control of D&K.

27       61.    D&K has the obligation and the ability to account to Familymeds Group.

28       62.    No adequate remedy is available to Familymeds Group at law and thus an accounting

JMBM    Jeffer Mangels
Butler & Marmaro LLP

1    is necessary to preserve Familymeds Group's rights.

2          WHEREFORE, Familymeds Group prays for judgment as set forth herein.

3          **Count Four - Familymeds Group against McKesson**

4          63.    Familymeds Group incorporates by reference the allegations contained in Paragraphs

5    1 through 29 above.

6          64.    A relationship exists between Familymeds Group and McKesson, and circumstances

7    require, that McKesson provide to Familymeds Group an accounting in equity.

8          65.    An unknown balance is due under the First Amendment to Familymeds Group for

9    unissued and improperly withheld credits and overcharges which cannot be ascertained without an

10   accounting, the means of which are in the exclusive knowledge and control of McKesson.

11         66.    McKesson has the obligation and the ability to account to Familymeds Group.

12         67.    No adequate remedy is available to Familymeds Group at law and thus an accounting

13   is necessary to preserve Familymeds Group's rights.

14         WHEREFORE, Familymeds Group prays for judgment as set forth herein.

15         **V.**

16         **PRAYER FOR RELIEF**

17         WHEREFORE, Plaintiffs pray for judgment against D&K and McKesson as follows:

18         **On The First Claim For Relief For Specific Performance Of Contract:**

19         **Count One - Familymeds, Inc. against D&K**

20         1.    For specific enforcement of the First Amendment compelling D&K to comply with

21   its Accounting Obligation;

22         2.    For costs of suit herein incurred; and

23         3.    For such other and further relief as the Court may deem proper.

24         **Count Two - Familymeds Group against D&K**

25         1.    For specific enforcement of the First Amendment compelling D&K to comply with

26   its Accounting Obligation;

27         2.    For costs of suit herein incurred; and

28         3.    For such other and further relief as the Court may deem proper.

731790v1    COMPLAINT FOR SPECIFIC PERFORMANCE
OF CONTRACT AND ACCOUNTING

PRINTED ON
RECYCLED PAPER

JMBM    Jeffer Mangels
Butler & Marmarou

**On the Second Claim For Relief Accounting In Equity:**

1                 **Count One - Familymeds, Inc. against D&K**

2      1.     For an order compelling D&K to provide to Familymeds, Inc. an accounting in equity;

3      2.     For costs of suit herein incurred; and

4      3.     For such other and further relief as the Court may deem proper.

                **Count Two - Familymeds, Inc. against McKesson**

     1.     For an order compelling McKesson to provide to Familymeds, Inc. an accounting in equity;

     2.     For costs of suit herein incurred; and

     3.     For such other and further relief as the Court may deem proper.

                **Count Three - Familymeds Group against D&K**

     1.     For an order compelling D&K to provide to Familymeds Group an accounting in equity;

     2.     For costs of suit herein incurred; and

     3.     For such other and further relief as the Court may deem proper.

                **Count Four - Familymeds Group against McKesson**

     1.     For an order compelling McKesson to provide to Familymeds Group an accounting in equity;

     2.     For costs of suit herein incurred; and

     3.     For such other and further relief as the Court may deem proper.

///
///
///
///
///
///
///

JMBM    Jeffer Mangels
Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

731790v1

COMPLAINT FOR SPECIFIC PERFORMANCE
OF CONTRACT AND ACCOUNTING

1     DATED: June 6, 2008           JEFFER, MANGELS, BUTLER & MARMARO LLP

2                                           ROBERT C. GEBHARDT

                                          MICHAEL A. GOLD

3                                           MATTHEW S. KENEFICK

4                              By: _____

5                                       MATTHEW S. KENEFICK

                                       Attorneys for Plaintiffs FAMILYMEDS, INC., a

6                                        Connecticut corporation and FAMILYMEDS GROUP,

                                       INC., a Nevada corporation, f/k/a DRUGMAX, INC., a

7                                        Nevada corporation

8

9                                **JURY DEMAND**

10          Plaintiffs demand a jury trial on all issues so triable.

11     DATED: June 6, 2008           JEFFER, MANGELS, BUTLER & MARMARO LLP

12                                           ROBERT C. GEBHARDT

                                          MICHAEL A. GOLD

13                                           MATTHEW S. KENEFICK

14                              By: _____

15                                       MATTHEW S. KENEFICK

                                       Attorneys for Plaintiffs FAMILYMEDS, INC., a

16                                        Connecticut corporation and FAMILYMEDS GROUP,

                                       INC., a Nevada corporation, f/k/a DRUGMAX, INC., a

17                                        Nevada corporation

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

731790v1                     - 11 -         COMPLAINT FOR SPECIFIC PERFORMANCE
                                          OF CONTRACT AND ACCOUNTING

**EXHIBIT 3**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**RELATED CASE ORDER**

A Motion for Administrative Relief to Consider Whether Cases Should be Related or a
*Sua Sponte* Judicial Referral for Purpose of Determining Relationship (Civil L.R. 3-12) has been
filed. The time for filing an opposition or statement of support has passed. As the judge
assigned to the earliest filed case below that bears my initials, I find that the more recently filed
case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be
reassigned to me. Any cases listed below that are not related to the case assigned to me are
referred to the judge assigned to the next-earliest filed case for a related case determination.

**C 07-05715 WDB    McKesson Corporation v. Familymeds Group, Inc.**

**C 08-02850 BZ    Familymeds, Inc. Et al v. McKesson Corporation et al**

I find that the above case is related to the case assigned to me. *WDB*

**ORDER**

Counsel are instructed that all future filings in any reassigned case are to bear the initials
of the newly assigned judge immediately after the case number. Any case management
conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the
dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly.
Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-
noticed by the moving party before the newly assigned judge; any deadlines set by the ADR
Local Rules remain in effect; and any deadlines established in a case management order continue
to govern, except dates for appearance in court, which will be rescheduled by the newly assigned
judge.

Dated: 6-18-08    *Wayne D. Brazil*

Magistrate Judge Wayne D. Brazil

-1-

EXHIBIT 3

## CLERK'S NOTICE

The court has reviewed the motion and determined that no cases are related and no reassignments shall occur.

Richard W. Wieking, Clerk

DATED: _____          By: _____
                                        Deputy Clerk

## CERTIFICATE OF SERVICE

      I certify that on the date stated below, I lodged a copy of this order with each judicial officer and I mailed a copy to each counsel of record or *pro se* party in the cases listed above.

Richard W. Wieking, Clerk

DATED: ___6/19/2008___

By: _____
    **Deputy Clerk**

Copies to:  Courtroom Deputies
           Case Systems Administrators
           Counsel of Record
Entered into Assignment Program: ___6/19/08___ (date)

-3-

# EXHIBIT 4

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT C. GEBHARDT (Bar No. 48965), rcg@jmbm.com
MICHAEL A. GOLD (Bar No. 90667), mag@jmbm.com
MATTHEW S. KENEFICK (Bar No. 227298), msk@jmbm.com
Two Embarcadero Center, Fifth Floor
San Francisco, California  94111-3824
Telephone:     (415) 398-8080
Facsimile:      (415) 398-5584

Attorneys for Defendant and Counterclaimant FAMILYMEDS
GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation and
Cross-Complainant FAMILYMEDS, INC., a Connecticut
corporation

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MCKESSON CORPORATION, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation, <br><br> Defendant. | CASE NO.    CV07-5715 WDB <br><br> **FIRST SET OF INTERROGATORIES OF FAMILYMEDS GROUP, INC., F/K/A DRUGMAX, INC., A NEVADA CORPORATION** |
| FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation, <br><br> Counterclaimant, <br><br> v. <br><br> MCKESSON CORPORATION, a Delaware corporation, <br><br> Counterdefendant. | |
| FAMILYMEDS, INC., a Connecticut corporation, <br><br> Cross-Complainant, <br><br> v. <br><br> MCKESSON CORPORATION, a Delaware corporation, <br><br> Cross-Defendant. | Complaint filed:       Nov. 9, 2007 <br> Counterclaim filed:   Dec. 17, 2007 <br> Cross-Complaint Filed:  Dec. 17, 2007 |

PRINTED ON
RECYCLED PAPER

737677v1

# EXHIBIT 4

- 1 -

CV07-5715 WDB
INTERROGATORIES, SET ONE

JMBM | Jeffer Mangels
Butler & Marmaro LLP

| | |
|---|---|
| 1 | **PROPOUNDING PARTY:** |
| 2 | |
| 3 | |
| 4 | **RESPONDING PARTY:** |
| 5 | **SET NO.** |

1  **PROPOUNDING PARTY:**    Defendant and Counterclaimant Familymeds Group, Inc.,
2    f/k/a DrugMax, Inc., a Nevada corporation
   **("PROPOUNDING PARTY")**

3

4  **RESPONDING PARTY:**    McKesson Corporation, a Delaware corporation
   **("RESPONDING PARTY")**

5  **SET NO.**    One (1)

6          Propounding Party requests that Responding Party answer, under oath, pursuant to

7  Rule 33 of the Federal Rules of Civil Procedure, the following interrogatories within thirty (30)

8  days from the date of this request.

9                          **GENERAL INSTRUCTIONS**

10          A.    It is intended by these interrogatories to discover all information available to

11  Responding Party, not just matters actually known.  This includes non-privileged information

12  known to, or obtainable by, Responding Party's respective attorneys, investigators, adjusters,

13  representatives, insurance carriers, agents, employees, or anyone acting in Responding Party's

14  behalf or their behalf.  Federal Rule of Civil Procedure 33(a); <u>Continental Ill. Nat'l Bank & Trust</u>

15  <u>Co. of Chicago v. Caton,</u> 136 F.R.D. 682, 686 (D KS 1991); <u>General Dynamics Corp. v. Selb Mfg.</u>

16  <u>Co.,</u> 481 F.2d 1204, 1210 (8th Cir. 1973).

17          B.    Each interrogatory must be responded to separately and fully.  The response

18  may be either an answer or objection.  If an objection, the reasons for the objection must be stated.

19  When objection is made to part of an interrogatory, the remainder of the interrogatory must be

20  answered.  Federal Rule of Civil Procedure 33(b)(1).

21          C.    Each interrogatory be responded to separately, fully, and shall be complete in

22  itself.  <u>Scaife v. Boenne,</u> 191 F.R.D. 590, 594 (ND IN 2000).

23                              **DEFINITIONS**

24      1.    The term **"DOCUMENTS,"** as used herein, means all tangible items within the

25  scope of Federal Rule of Civil Procedure 34, including without limitation correspondence,

26  communications, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports,

27  studies, check statements, receipts, summaries, pamphlets, books, interoffice or intraoffice

28  communications, telephone message slips, notations, bulletins, drawings, plans, computer printouts,

1  teletypes, telefaxes, invoices, worksheets, ledger books, books of account and all drafts, alterations,

2  modifications, changes and amendments of any of the foregoing.  These terms include all graphic or

3  aural records and representations of any kind, including without limitation photographs, charts,

4  graphs, microfiche, microfilm, videotape recordings, motion pictures and electronic, mechanical or

5  electrical records or recordation of any kind including without limitation electronic mail

6  communications, computer disks and diskettes, computer input or output, computer hard drive files,

7  tapes, cassettes, disks and recordings.  These terms include all documents in any language.

8      2.      The terms **"YOU"** and **"YOUR"** as used herein mean the **RESPONDING PARTY**

9  and any person acting on the **RESPONDING PARTY's** behalf, including, but not limited to,

10  agents, employees, attorneys, accountants, investigators, partners, representatives and insurance

11  companies.

12      3.      The term **"FAMILYMEDS GROUP,"** as used herein, means Familymeds Group,

13  Inc. a Nevada corporation, f/k/a DrugMax, Inc., a Nevada corporation.

14      4.      The term **"SKU,"** as used herein, means unique stock keeping unit.

15      5.      The term **"NDC,"** as used herein, means National Drug Code(s).

16      6.      The term **"SECOND AGREEMENT,"** as used herein, means that certain written

17  Supply Agreement by and between Familymeds Group, Inc. and McKesson Corporation and dated

18  effective as of December 28, 2006, a copy of which is attached hereto as **EXHIBIT 1**.

19      7.      The terms **"PRODUCT," "COST OF GOODS," "SPECIALLY PRICED**

20  **MERCHANDISE," "NET BILLED,"** and **"ONESTOP GENERICS,"** as used herein in the

21  singular and/or plural form, shall each assume the respective meanings ascribed thereto in the

22  **SECOND AGREEMENT.**

23      8.      The term **"AWP,"** as used herein, means the McKesson Average Wholesale Price.

24              **FIRST SET OF INTERROGATORIES**

25  **INTERROGATORY NO. 1:**

26          State the **COST OF GOODS** for any and all **PRODUCTS** that **FAMILYMEDS**

27  **GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**, identifying each

28  **PRODUCT**, the date of purchase, the invoice number, the **SKU** and the **NDC**.

JMBM | Jeffer Mangels Butler & Marmaro LLP

**INTERROGATORY NO. 2:**

For each **PRODUCT** identified in **YOUR** response to Interrogatory Number 1, explain how **YOU** calculated the **COST OF GOODS**.

**INTERROGATORY NO. 3:**

For each **PRODUCT** identified in **YOUR** response to Interrogatory Number 1, state the manufacturer's published acquisition cost as of the date of each purchase identified in said response.

**INTERROGATORY NO. 4:**

For each **PRODUCT** identified in **YOUR** response to Interrogatory Number 1, state the actual invoice price paid by **YOU**.

**INTERROGATORY NO. 5:**

For each **PRODUCT** identified in **YOUR** response to Interrogatory Number 1, state the amount of cash rebates that **YOU** received.

**INTERROGATORY NO. 6:**

For each **PRODUCT** identified in **YOUR** response to Interrogatory Number 1, state the amount of bonus goods that **YOU** received.

**INTERROGATORY NO. 7:**

For each **PRODUCT** identified in **YOUR** response to Interrogatory Number 1, state the amount of off-invoice allowances the **YOU** received.

**INTERROGATORY NO. 8:**

For each **PRODUCT** identified in **YOUR** response to Interrogatory Number 1, identify any and all manufacturers' deal prices that **YOU** received.

**INTERROGATORY NO. 9:**

Identify each **PRODUCT** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT** and was classified as **SPECIALLY PRICED MERCHANDISE**, providing the date of purchase, the invoice number, the price **YOU** charged **FAMILYMEDS GROUP**, the **SKU**, and the **NDC**.

///

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

1    **INTERROGATORY NO. 10:**

2         State the actual price paid by **YOU** for each **PRODUCT** identified in **YOUR**

3    response to Interrogatory Number 9.

4    **INTERROGATORY NO. 11:**

5         Describe in detail how **YOU** calculated the price that **YOU** charged to

6    **FAMILYMEDS GROUP** for each **PRODUCT** identified in **YOUR** response to Interrogatory

7    Number 9.

8    **INTERROGATORY NO. 12:**

9         State all reasons why **YOU** classified as **SPECIALLY PRICED MERCHANDISE**

10   each of the **PRODUCTS** identified in **YOUR** response to Interrogatory Number 9.

11   **INTERROGATORY NO. 13:**

12        Identify, by customer, transaction, **PRODUCT**, invoice number, and price, any and

13   all of **YOUR** customers which, for any of the **PRODUCTS** identified in **YOUR** response to

14   Interrogatory Number 9, **YOU** charged a price that was different than the price which **YOU** charged

15   to **FAMILYMEDS GROUP** for the same **PRODUCT**.

16   **INTERROGATORY NO. 14:**

17        Identify each **PRODUCT** that **FAMILYMEDS GROUP** purchased from **YOU**

18   pursuant to the **SECOND AGREEMENT** and was classified as **NET BILLED**, providing the date

19   of purchase, the price **YOU** charged **FAMILYMEDS GROUP**, the invoice number, the **SKU** and

20   the **NDC**.

21   **INTERROGATORY NO. 15:**

22        State the actual price paid by **YOU** for each **PRODUCT** identified in **YOUR**

23   response to Interrogatory Number 14.

24   **INTERROGATORY NO. 16:**

25        Describe in detail how **YOU** calculated the price that **YOU** charged to

26   **FAMILYMEDS GROUP** for each of the **PRODUCTS** identified in **YOUR** response to

27   Interrogatory Number 14.

28   ///

JMBM | Jeffer Mangels Butler & Marmaro LLP

**INTERROGATORY NO. 17:**

State all reasons why **YOU** classified as **NET BILLED** each of the **PRODUCTS** identified in **YOUR** response to Interrogatory Number 14.

**INTERROGATORY NO. 18:**

Identify each **PRODUCT** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT** and was designated as **ONESTOP GENERICS**, providing the date of purchase, the price **YOU** charged **FAMILYMEDS GROUP**, the invoice number, the **SKU** and the **NDC**.

**INTERROGATORY NO. 19:**

State the actual price that **YOU** paid for each **PRODUCT** identified in **YOUR** response to Interrogatory Number 18.

**INTERROGATORY NO. 20:**

Describe in detail how **YOU** calculated the price that **YOU** charged to **FAMILYMEDS GROUP** for each of the **PRODUCTS** identified in **YOUR** response to Interrogatory Number 18.

**INTERROGATORY NO. 21:**

Identify any and all credits **YOU** issued to **FAMILYMEDS GROUP** for returned **PRODUCT**, providing the date each credit was issued, the credit memo/invoice number, the amount of each credit, the **SKU** and the **NDC** of each **PRODUCT** involved, and the reasons for the issuance of each credit.

**INTERROGATORY NO. 22:**

Describe in detail how **YOU** calculated each of the credits identified in **YOUR** response to Interrogatory Number 21.

**INTERROGATORY NO. 23:**

Describe in detail how you calculated the **AWP** for each and every **PRODUCT** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**, providing the date of purchase, the price **YOU** charged **FAMILYMEDS GROUP**, the invoice number, the **SKU** and the **NDC**.

1    **INTERROGATORY NO. 24:**

2          Describe in detail, by date and reference number, how **YOU** calculated all monthly

3    volume discount pricing adjustments under the **SECOND AGREEMENT**.

4    **REQUEST FOR PRODUCTION NO. 25:**

5          Describe in detail, by date and reference number, how **YOU** calculated all quarterly

6    rebates for generic drug purchases under the **SECOND AGREEMENT**.

7

8    DATED: June 11, 2008          JEFFER, MANGELS, BUTLER & MARMARO LLP
                                    ROBERT C. GEBHARDT
9                                   MICHAEL A. GOLD
                                    MATTHEW S. KENEFICK
10

11                                  By: _____
                                            ROBERT C. GEBHARDT
12                                  Attorneys for Defendant and Counterclaimant
                                    FAMILYMEDS GROUP, INC., f/k/a DRUGMAX,
13                                  INC., a Nevada corporation and Cross-Complainant
                                    FAMILYMEDS, INC., a Connecticut corporation
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

# EXHIBIT 1
# TO INTERROGATORIES
# REDACTED

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO**

3

      I am employed in the City and County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  Two Embarcadero Center,

4

5th Floor, San Francisco, California 94111.

5

      On June 11, 2008 I served the document(s) described as **FIRST SET OF INTERROGATORIES OF FAMILYMEDS GROUP, INC., F/K/A DRUGMAX, INC., A**

6

**NEVADA CORPORATION** in this action by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

7

8

Maria K. Pum, Esq.
Henderson & Caverly LLP
P.O. Box 9144

9

16236 San Dieguito Road, Suite 4-13
Rancho-Santa Fe, CA  92067-9144

10

11

☐    BY ELECTRONIC SERVICE TRANSMISSION via U.S. District Court, Northern Division, Case Management/Electronic Case Files, Filing System.  I served a copy of the

12

above-listed document(s) to the e-mail addresses of the addressee(s) by use as identified and maintained therein.

13

☒    (BY MAIL) I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal

14

Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.  I am aware that on motion of the party served, service is

15

presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

16

☐    (BY FAX) At   ,   I transmitted, pursuant to Rule 2.306, the above-described document

17

by facsimile machine (which complied with Rule 2003(3)), to the above-listed fax number(s).  The transmission originated from facsimile phone number (415) 398-5584 and

18

was reported as complete and without error.  The facsimile machine properly issued a transmission report, a copy of which is attached hereto.

19

☐    (BY OVERNIGHT DELIVERY) I caused said envelope(s) to be delivered overnight via an

20

overnight delivery service in lieu of delivery by mail to the addressee(s).

21

Executed on June 11, 2008 at San Francisco, California.

22

☒    (FEDERAL)   I declare that I am employed in the office of a member of the bar of this court

23

at whose direction the service was made.

24

_____

Angela Pereira

25

26

27

28

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmarou

671251v1

- 2 -    CV075715 WDB, PROOF OF SERVICE

# EXHIBIT 5

1  JEFFER, MANGELS, BUTLER & MARMARO LLP
   ROBERT C. GEBHARDT (Bar No. 48965), rcg@jmbm.com
2  MICHAEL A. GOLD (Bar No. 90667), mag@jmbm.com
   MATTHEW S. KENEFICK (Bar No. 227298), msk@jmbm.com
3  Two Embarcadero Center, Fifth Floor
   San Francisco, California 94111-3824
4  Telephone:    (415) 398-8080
   Facsimile:    (415) 398-5584
5
6  Attorneys for Defendant and Counterclaimant FAMILYMEDS
   GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation and
7  Cross-Complainant FAMILYMEDS, INC., a Connecticut
   corporation
8
                  UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10
                       OAKLAND DIVISION
11
12  MCKESSON CORPORATION, a Delaware        CASE NO.    CV07-5715 WDB
    corporation,
13                                          FIRST REQUEST FOR PRODUCTION OF
              Plaintiff,                     DOCUMENTS AND THINGS OF
14                                          FAMILYMEDS GROUP, INC., F/K/A
        v.                                  DRUGMAX, INC., A NEVADA
15  FAMILYMEDS GROUP, INC., f/k/a           CORPORATION
    DRUGMAX, INC., a Nevada corporation,
16
              Defendant.
17
    FAMILYMEDS GROUP, INC., f/k/a
18  DRUGMAX, INC., a Nevada corporation,
19            Counterclaimant,
        v.
20
    MCKESSON CORPORATION, a Delaware
21  corporation,
22            Counterdefendant.
23  FAMILYMEDS, INC., a Connecticut
    corporation,
24
              Cross-Complainant,
25
        v.
26                                          Complaint filed:        Nov. 9, 2007
    MCKESSON CORPORATION, a Delaware        Counterclaim filed:     Dec. 17, 2007
27  corporation,                            Cross-Complaint Filed:  Dec. 17, 2007
28            Cross-Defendant.

PRINTED ON
RECYCLED PAPER

731791v1                         - 1 -        CV07-5715 WDB
                                              REQUEST FOR PRODUCTION, SET ONE

EXHIBIT 5

1   **PROPOUNDING PARTY:**    Defendant and Counterclaimant Familymeds Group, Inc.,
                              f/k/a DrugMax, Inc., a Nevada corporation
2                             **("PROPOUNDING PARTY")**

3
    **RESPONDING PARTY:**     McKesson Corporation, a Delaware corporation
4                             **("RESPONDING PARTY")**

5   **SET NO.**               One (1)

6          Propounding Party requests that Responding Party produce for inspection and/or

7   copying at the San Francisco offices of Jeffer, Mangels, Butler & Marmaro, LLP, located at Two

8   Embarcadero Center, Fifth Floor, San Francisco, CA 94111, within thirty (30) days, in accordance

9   with the requirements and time limits of Federal Rule of Civil Procedure 34.

10                              **GENERAL INSTRUCTIONS**

11         A.      All documents are to be produced whether in your possession, custody, or control, or

12  the possession, custody, or control of your attorneys, investigators, agents or representatives.

13         B.      All documents are to be segregated and referenced to the request(s) to which they

14  respond in accordance with Federal Rule of Civil Procedure 34.

15         C.      If any of the requested documents cannot be produced in full, then produce them to

16  the extent possible, and specify the reasons for your inability to produce the remainder, stating

17  whatever information, knowledge or belief you have concerning the unproduced portion.

18         D.      If you withhold any document on the basis that it is properly entitled to a limitation

19  on discovery, then produce a list of the documents for which a limitation on discovery is claimed,

20  indicating for each document:

21              a.      The name of the author, sender and initiator of the document;

22              b.      The name of the recipient, addressee and party for whom the
                        document was intended;
23
                c.      The date of the document or an estimate thereof (so indicated
24                      as an estimate); and

25              d.      The general subject matter of the document.

26         E.      If your response to any request is that the documents are not in your possession or

27  custody, describe in detail the efforts you made to locate such documents.

28         F.      Please produce responsive Electronically Stored Information (as that term is

PRINTED ON
RECYCLED PAPER

731791v1                     - 2 -      CV07-5715 WDB
                                        REQUEST FOR PRODUCTION, SET ONE

1  contemplated in Federal Rule of Civil Procedure 34) in the form(s) in which it is ordinarily

2  maintained and/or in reasonably usable form(s), preserving all meta-data and native form(s) of the

3  materials for inspection by Propounding Party.

4        G.      These requests for documents are continuing, requiring you to supplement your

5  response, setting forth any information within the scope of the requests that you may acquire

6  following your original response.

7  **DEFINITIONS**

8        1.      The term **"DOCUMENTS,"** as used herein, means all tangible items within the

9  scope of Federal Rule of Civil Procedure 34, including without limitation correspondence,

10 communications, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports,

11 studies, check statements, receipts, summaries, pamphlets, books, interoffice or intraoffice

12 communications, telephone message slips, notations, bulletins, drawings, plans, computer printouts,

13 teletypes, telefaxes, invoices, worksheets, ledger books, books of account and all drafts, alterations,

14 modifications, changes and amendments of any of the foregoing.  These terms include all graphic or

15 aural records and representations of any kind, including without limitation photographs, charts,

16 graphs, microfiche, microfilm, videotape recordings, motion pictures and electronic, mechanical or

17 electrical records or recordation of any kind including without limitation electronic mail

18 communications, computer disks and diskettes, computer input or output, computer hard drive files,

19 tapes, cassettes, disks and recordings.  These terms include all documents in any language.

20       2.      The terms **"YOU"** and **"YOUR"** as used herein mean the **RESPONDING PARTY**

21 and any person acting on the **RESPONDING PARTY**'s behalf, including, but not limited to,

22 agents, employees, attorneys, accountants, investigators, partners, representatives and insurance

23 companies.

24       3.      The term **"FAMILYMEDS GROUP,"** as used herein, means Familymeds Group,

25 Inc. a Nevada corporation, f/k/a DrugMax, Inc., a Nevada corporation.

26       4.      The term **"SECOND AGREEMENT,"** as used herein, means that certain written

27 Supply Agreement by and between Familymeds Group, Inc. and McKesson Corporation and dated

28 effective as of December 28, 2006, a copy of which is attached hereto as **Exhibit 1**.

PRINTED ON
RECYCLED PAPER

731791v1

- 3 -

CV07-5715 WDB
REQUEST FOR PRODUCTION, SET ONE

JMBM | Jeffer Mangels Butler & Marmaro LLP

5.      The terms **"PRODUCT," "COST OF GOODS," "SPECIALLY PRICED MERCHANDISE,"** and **"ONESTOP GENERICS,"** as used herein in the singular and/or plural form, shall each assume the respective meanings ascribed thereto in the **SECOND AGREEMENT**.

6.      The term **"AWP,"** as used herein, means the McKesson Average Wholesale Price.

## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

### REQUEST FOR PRODUCTION NO. 1:

Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the **PRODUCTS** which **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

### REQUEST FOR PRODUCTION NO. 2:

Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the **COST OF GOODS** for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

### REQUEST FOR PRODUCTION NO. 3:

Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state how the **COST OF GOODS** was calculated for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

### REQUEST FOR PRODUCTION NO. 4:

Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the manufacturer's published acquisition cost for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

### REQUEST FOR PRODUCTION NO. 5:

Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the actual

731791v1                    CV07-5715 WDB
                            REQUEST FOR PRODUCTION, SET ONE

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

1    invoice price paid by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased

2    from **YOU** pursuant to the **SECOND AGREEMENT**.

3    **REQUEST FOR PRODUCTION NO. 6:**

4          Any and all **DOCUMENTS**, including, without limitation, monthly summary and

5    detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount

6    of cash rebates received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS GROUP**

7    purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

8    **REQUEST FOR PRODUCTION NO. 7:**

9          Any and all **DOCUMENTS**, including, without limitation, monthly summary and

10   detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount

11   of bonus goods received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS GROUP**

12   purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

13   **REQUEST FOR PRODUCTION NO. 8:**

14         Any and all **DOCUMENTS**, including, without limitation, monthly summary and

15   detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount

16   of off-invoice allowances received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS**

17   **GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

18   **REQUEST FOR PRODUCTION NO. 9:**

19         Any and all **DOCUMENTS**, including, without limitation, monthly summary and

20   detailed supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount

21   of manufacturers' deal prices received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS**

22   **GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

23   **REQUEST FOR PRODUCTION NO. 10:**

24         Any and all **DOCUMENTS**, including, without limitation, monthly summary and

25   detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

26   **PRODUCTS** which **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND**

27   **AGREEMENT** and were classified as **SPECIALLY PRICED MERCHANDISE**.

28   ///

PRINTED ON
RECYCLED PAPER

731791v1

- 5 -    CV07-5715 WDB
REQUEST FOR PRODUCTION, SET ONE

JMBM | Jeffer Mangels Butler & Marmaro LLP

1  **REQUEST FOR PRODUCTION NO. 11:**

2  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

3  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

4  difference between the price charged by **YOU** to **FAMILYMEDS GROUP** and the price charged

5  by **YOU** to any other third-party for **PRODUCTS** classified as **SPECIALLY PRICED**

6  **MERCHANDISE.**

7  **REQUEST FOR PRODUCTION NO. 12:**

8  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

9  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

10  price that **YOU** paid to manufacturers/suppliers for **PRODUCTS** which **FAMILYMEDS GROUP**

11  purchased from **YOU** pursuant to the **SECOND AGREEMENT** and were classified as

12  **SPECIALLY PRICED MERCHANDISE.**

13  **REQUEST FOR PRODUCTION NO. 13:**

14  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

15  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state

16  how **YOU** calculated the price of **PRODUCTS** which **FAMILYMEDS GROUP** purchased from

17  **YOU** pursuant to the **SECOND AGREEMENT** and were classified as **SPECIALLY PRICED**

18  **MERCHANDISE.**

19  **REQUEST FOR PRODUCTION NO. 14:**

20  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

21  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

22  reason(s) why **YOU** classified certain **PRODUCTS** which **FAMILYMEDS GROUP** purchased

23  from **YOU** pursuant to the **SECOND AGREEMENT** as **SPECIALLY PRICED**

24  **MERCHANDISE.**

25  **REQUEST FOR PRODUCTION NO. 15:**

26  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

27  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state

28  **YOUR** acquisition cost for the **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU**

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1  pursuant to the **SECOND AGREEMENT** and were designated as **ONESTOP GENERICS**.

2  <u>**REQUEST FOR PRODUCTION NO. 16:**</u>

3  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

4  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

5  price **YOU** charged **FAMILYMEDS GROUP** for **PRODUCTS** designated as **ONESTOP**

6  **GENERICS**.

7  <u>**REQUEST FOR PRODUCTION NO. 17:**</u>

8  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

9  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

10  amount of credits **YOU** issued to **FAMILYMEDS GROUP** for returned **PRODUCT**.

11  <u>**REQUEST FOR PRODUCTION NO. 18:**</u>

12  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

13  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state

14  how **YOU** calculated the credits **YOU** issued to **FAMILYMEDS GROUP** for returned

15  **PRODUCT**.

16  <u>**REQUEST FOR PRODUCTION NO. 19:**</u>

17  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

18  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

19  AWP for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant

20  to the **SECOND AGREEMENT**.

21  <u>**REQUEST FOR PRODUCTION NO. 20:**</u>

22  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

23  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state

24  how **YOU** calculated the AWP for any and all **PRODUCTS** that **FAMILYMEDS GROUP**

25  purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

26  <u>**REQUEST FOR PRODUCTION NO. 21:**</u>

27  Any and all **DOCUMENTS**, including, without limitation, monthly summary and

28  detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

JMBM | Jeffer Mangels Butler & Marmaro LLP

1    difference between the **AWP** and the First Databank published wholesale acquisition cost for any

2    and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the

3    **SECOND AGREEMENT**.

4    **REQUEST FOR PRODUCTION NO. 22:**

5            Any and all **DOCUMENTS**, including, without limitation, monthly summary and

6    detailed supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state any

7    and all **PRODUCTS** which were substituted for **PRODUCTS** that **FAMILYMEDS GROUP**

8    ordered from **YOU** pursuant to the **SECOND AGREEMENT**.

9    **REQUEST FOR PRODUCTION NO. 23:**

10           Any and all **DOCUMENTS**, including, without limitation, monthly summary and

11   detailed supporting reports prepared by **YOU** which indicate, memorialize, reflect, and/or state

12   monthly volume discount pricing adjustments under the **SECOND AGREEMENT**.

13   **REQUEST FOR PRODUCTION NO. 24:**

14           Any and all **DOCUMENTS**, including, without limitation, monthly summary and

15   detailed supporting reports prepared by **YOU** which indicate, memorialize, reflect, and/or state the

16   quarterly rebates given by **YOU** to **FAMILYMEDS GROUP** for generic drug purchases under the

17   **SECOND AGREEMENT**.

18   **REQUEST FOR PRODUCTION NO. 25:**

19           Any and all **DOCUMENTS** identified, referenced, and/or relied upon in **YOUR**

20   response to the First Set of Interrogatories of Familymeds Group, Inc., f/k/a Drugmax, Inc., a

21   Nevada Corporation.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

PRINTED ON
RECYCLED PAPER

731791v1

- 8 -      CV07-5715 WDB
REQUEST FOR PRODUCTION, SET ONE

1    DATED:  June 11, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT C. GEBHARDT
MICHAEL A. GOLD
MATTHEW S. KENEFICK


By: _____
            ROBERT C. GEBHARDT
Attorneys for Defendant and Counterclaimant
FAMILYMEDS GROUP, INC., f/k/a DRUGMAX,
INC., a Nevada corporation and Cross-Complainant
FAMILYMEDS, INC., a Connecticut corporation

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
        Butler & Marmarou

# EXHIBIT 1
# TO REQUEST FOR PRODUCTION
# REDACTED

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO**

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is: Two Embarcadero Center, 5th Floor, San Francisco, California 94111.

On June 11, 2008 I served the document(s) described as **FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS OF FAMILYMEDS GROUP, INC., F/K/A DRUGMAX, INC., A NEVADA CORPORATION** in this action by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

Maria K. Pum, Esq.
Henderson & Caverly LLP
P.O. Box 9144
16236 San Dieguito Road, Suite 4-13
Rancho-Santa Fe, CA 92067-9144

☐   BY ELECTRONIC SERVICE TRANSMISSION via U.S. District Court, Northern Division, Case Management/Electronic Case Files, Filing System. I served a copy of the above-listed document(s) to the e-mail addresses of the addressee(s) by use as identified and maintained therein.

☒   (BY MAIL) I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   (BY FAX) At   ,   I transmitted, pursuant to Rule 2.306, the above-described document by facsimile machine (which complied with Rule 2003(3)), to the above-listed fax number(s). The transmission originated from facsimile phone number (415) 398-5584 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached hereto.

☐   (BY OVERNIGHT DELIVERY) I caused said envelope(s) to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

Executed on June 11, 2008 at San Francisco, California.

☒   (FEDERAL)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Angela Pereira

# EXHIBIT 6

1  MARIA K. PUM (State Bar No. 120987)
   KRISTEN E. CAVERLY (State Bar No. 175070)
2  HENDERSON & CAVERLY LLP
   P.O. Box 9144 (all U.S. Mail)
3  16236 San Dieguito Road, Suite 4-13
   Rancho Santa Fe, CA 92067-9144
4  Telephone:    (858) 756-6342
   Facsimile:    (858) 756-4732
5  E-mail:  mpum@hcesq.com

6  Attorneys for Plaintiff
   McKESSON CORPORATION
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  McKESSON CORPORATION, a Delaware          Case No. CV07-5715 WDB
    corporation,
12
13                      Plaintiff,            **OBJECTIONS AND RESPONSES OF**
          v.                                  **McKESSON CORPORATION TO**
14                                            **FIRST SET OF INTERROGATORIES**
    FAMILYMEDS GROUP, INC.,                   **PROPOUNDED BY FAMILYMEDS**
15    f/k/a Drugmax, Inc., a Nevada corporation,  **GROUP, INC., f/k/a DRUGMAX, INC., A**
                                              **NEVADA CORPORATION**
16                      Defendant.

17  FAMILYMEDS GROUP, INC.,
18    f/k/a Drugmax, Inc., a Nevada corporation,  Complaint Filed:  November 9, 2007
                                              Counterclaim Filed:  December 17, 2007
19                      Counterclaimant,      Cross-Complaint Filed: December 17, 2007

20        v.                                  Date:    [No hearing required.]
                                              Time:
21  McKESSON CORPORATION, a Delaware          Place:
    corporation,
22
23                      Counterdefendant.

24  FAMILYMEDS, INC.,
    a Connecticut corporation,
25
                        Cross-Complainant,
26
          v.
27  McKESSON CORPORATION, a Delaware
    corporation,
28
                        Cross-Defendant.

**EXHIBIT 6**

PROPOUNDING PARTY:  DEFENDANT AND COUNTERCLAIMANT
          FAMILYMEDS GROUP, INC. f/k/a DRUGMAX, INC.

RESPONDING PARTY:  PLAINTIFF McKESSON CORPORATION

SET NO.:       ONE

Pursuant to Federal Rules of Civil Procedure, Rule 33, defendant McKESSON
CORPORATION ("McKESSON") hereby responds to defendant FAMILYMEDS GROUP's First
Set of Interrogatories (the "First Set of Interrogatories"). Terms written in all capital letters and not
otherwise defined herein are defined in the First Set of Interrogatories.

<strong>GENERAL OBJECTIONS</strong>

McKESSON hereby objects to each and every interrogatory set forth in the First Set of
Interrogatories on the following grounds. These general objections are applicable to each and
every one of the following responses and objections, and failure to repeat an objection in response
to a specific interrogatory shall not be deemed a waiver of the objection. Further, if McKESSON
specifically repeats one or more of these general objections in response to a specific interrogatory,
such specific response cannot be deemed a waiver of any other of these general objections.

1.  The following responses and objections are provided without prejudice to provide
further responses, evidence or information not yet available and/or later discovered.

2.  McKESSON objects to these interrogatories to the extent that they seek information
that is not within McKESSON's possession, custody or control.

3.  McKESSON objects to these interrogatories to the extent they seek information
protected by the attorney-client privilege and/or work product doctrine, or any other applicable
privilege.

4.  McKESSON objects to these interrogatories to the extent they seek information that
does not pertain to the allegations made in this lawsuit or information that is not reasonably
calculated to lead to the discovery of admissible evidence.

5.  McKESSON reserves the right to modify, amend or add to its responses and
objections.

1    6.    McKESSON objects to these interrogatories to the extent they assume facts that do

2   not exist or have not yet been proved, if FAMILYMEDS GROUP bears the burden of proof

3   regarding such facts.

4    7.    McKESSON objects to these interrogatories to the extent they seek information that

5   may impair or abrogate the privacy rights of McKESSON and/or other third parties.  McKESSON

6   will not provide information containing personal information of an individual without a written

7   waiver by such individual of any privacy rights.  For the purposes of these responses, McKESSON

8   includes in "privileged" all information protected from discovery by any individual's rights of

9   privacy, until and unless such individual has executed a written waiver of such rights.

10   8.    McKESSON objects to these interrogatories to the extent they require McKESSON to

11   provide information already in the possession of the requesting party, equally available to the

12   requesting party, information in the public domain and/or information from sources other than

13   McKESSON.  McKESSON will not provide information already known to be in the possession of

14   the requesting party, equally available to the requesting party, information in the public domain

15   and/or information from sources other than McKESSON, including but not limited to court filings

16   and documents recorded in official local, state or federal records.

17   9.    McKESSON objects to these interrogatories on the grounds that they are overbroad in

18   time and/or scope, oppressive, vague, ambiguous, harassing and unduly burdensome.

19   10.    McKESSON objects to these interrogatories because they request McKESSON to

20   disclose trade secrets and confidential and proprietary information which are not relevant to nor

21   reasonably calculated to lead to the discovery of admissible evidence and/or for which McKesson's

22   competitive advantage derived from such information remaining confidential is not outweighed by

23   the requesting party's need for such information.

24   11.    McKESSON makes these responses solely for the purpose of and in relation to this

25   action. McKESSON's responses to these interrogatories are made subject to any and all objections

26   that would require the exclusion of any statement contained herein if the interrogatories were asked

27   of, or any statement contained herein was made by, a witness present and testifying in court.  All

28   such objections and grounds therefore are reserved and may be interposed at the time of trial.

1  McKESSON's responses to these interrogatories are not intended as admissions and/or denials of

2  any statements or purported contentions contained therein.

3                                   **DEFINITIONS**

4          The term "OPEN INVOICES" refers to invoices sent by McKESSON to FAMILYMEDS

5  GROUP in the course of performance of the SECOND AGREEMENT, which were not fully paid

6  by FAMILYMEDS GROUP and which had invoice dates of February 26, 2007, March 31, 2007,

7  September 11, 2007, September 12, 2007, September 13, 2007, September 14, 2007 and/or

8  September 17, 2007.

9                          **RESPONSES TO INTERROGATORIES**

10  **INTERROGATORY NO. 1**

11          State the COST OF GOODS for any and all PRODUCTS that FAMILYMEDS GROUP

12  purchased from YOU pursuant to the SECOND AGREEMENT, identifying each PRODUCT, the

13  date of purchase, the invoice number, the SKU and the NDC.

14  **RESPONSE TO INTERROGATORY NO. 1**

15          In addition to the general objections set forth above, which are incorporated herein by this

16  reference, McKESSON objects to INTERROGATORY NO. 1 as being overly broad and

17  burdensome.  McKesson objects to this Request as calling for the disclosure of trade secret and

18  confidential information.  McKesson objects to this Request as calling for the disclosure of

19  attorney-client privileged and attorney work product privileged materials.  McKESSON further

20  objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

21  to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

22  INTERROGATORY NO. 1 is outside the scope of permissible discovery as set forth in Rule

23  26(b)(1).  Subject to the foregoing objections and without waiver of any of the General Objections

24  set forth above, McKESSON will respond to this INTERROGATORY through the production of

25  business records pursuant to Rule 33(d), namely copies of the OPEN INVOICES and data related

26  to the items reflected on such invoices (Bates Nos. 1-482).

27

28

1  **INTERROGATORY NO. 2**

2      For each PRODUCT identified in YOUR responses to Interrogatory Number 1, explain

3  how YOU calculated the COST OF GOODS.

4  **RESPONSE TO INTERROGATORY NO. 2**

5      In addition to the general objections set forth above, which are incorporated herein by this

6  reference, McKESSON objects to INTERROGATORY NO. 2 as being overly broad and

7  burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and

8  confidential information. McKesson objects to this Request as calling for the disclosure of

9  attorney-client privileged and attorney work product privileged materials. McKESSON further

10  objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

11  to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

12  INTERROGATORY NO. 2 is outside the scope of permissible discovery as set forth in Rule

13  26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential

14  information that is a trade secret and proprietary to McKESSON. Subject to the foregoing

15  objections, and without waiver of any of the General Objections set forth above, McKESSON

16  responds that it calculated the COST OF GOODS for each PRODUCT identified in the OPEN

17  INVOICES in accordance with the methodology set forth in Section 5 of the SECOND

18  AGREEMENT. Furthermore, the COST OF GOODS pricing was calculated based on "COST" as

19  defined in the SECOND AGREEMENT where (for PRODUCTS other than contract-priced

20  PRODUCTS or specially priced merchandise or generic PRODUCTS) "COST" was determined by

21  reference to the "manufacturer's published acquisition cost."

22  **INTERROGATORY NO. 3**

23      For each PRODUCT identified in YOUR response to Interrogatory Number 1, state the

24  manufacturer's published acquisition cost as of the date of each purchase identified in said

25  response.

26  **RESPONSE TO INTERROGATORY NO. 3**

27      In addition to the general objections set forth above, which are incorporated herein by this

28  reference, McKESSON objects to INTERROGATORY NO. 3 as being overly broad and

1    burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and

2    confidential information. McKesson objects to this Request as calling for the disclosure of

3    attorney-client privileged and attorney work product privileged materials. McKESSON further

4    objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

5    to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

6    INTERROGATORY NO. 3 is outside the scope of permissible discovery as set forth in Rule

7    26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential

8    information that is a trade secret and proprietary to McKESSON. Subject to the foregoing

9    objections and without waiver of any of the General Objections set forth above, McKESSON

10   responds to this INTERROGATORY through the production of business records pursuant to Rule

11   33(d), namely Bates Nos. 483-566 setting forth "WAC."

12   **INTERROGATORY NO. 4**

13        For each PRODUCT identified in YOUR response to Interrogatory Number 1, state the

14   actual price paid by YOU.

15   **RESPONSE TO INTERROGATORY NO. 4**

16        In addition to the general objections set forth above, which are incorporated herein by this

17   reference, McKESSON objects to INTERROGATORY NO. 4 as being overly broad and

18   burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and

19   confidential information. McKesson objects to this Request as calling for the disclosure of

20   attorney-client privileged and attorney work product privileged materials. McKESSON further

21   objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

22   to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

23   INTERROGATORY NO. 4 is outside the scope of permissible discovery as set forth in Rule

24   26(b)(1). Because the actual price paid by McKESSON for PRODUCT sold to FAMILYMEDS

25   GROUP has no bearing on the calculation of the price or COST OF GOODS that was paid or

26   agreed to be paid by FAMILYMEDS GROUP for PRODUCT or Merchandise purchased from

27   McKESSON pursuant to the SECOND AGREEMENT, the actual price paid by McKESSON will

28   not be provided in these Responses to the First Set of Interrogatories. Furthermore, McKESSON

1    objects to INTERROGATORY NO. 4 because it seeks confidential information that is a trade

2    secret and proprietary to McKESSON.

3    **INTERROGATORY NO. 5**

4         For each PRODUCT identified in YOUR response to Interrogatory Number 1, state the

5    amount of cash rebates **YOU** received.

6    **RESPONSE TO INTERROGATORY NO. 5**

7         In addition to the general objections set forth above, which are incorporated herein by this

8    reference, McKESSON objects to INTERROGATORY NO. 5 as being overly broad and

9    burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and

10   confidential information. McKesson objects to this Request as calling for the disclosure of

11   attorney-client privileged and attorney work product privileged materials. McKESSON further

12   objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

13   to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

14   INTERROGATORY NO. 5 is outside the scope of permissible discovery as set forth in Rule

15   26(b)(1). Nothing in the SECOND AGREEMENT ties the COST OF GOODS payable by

16   FAMILYMEDS GROUP for PRODUCT purchased from McKESSON to the cash rebates that

17   McKESSON may have received from vendors before reselling that PRODUCT to FAMILYMEDS

18   GROUP. In fact, the SECOND AGREEMENT states that:

19

20        For the avoidance of doubt, nothing herein will entitle Customer to receive or share
     in any fees, discounts, rebates or other consideration received by McKesson from a
     vendor or its affiliates for any services rendered by McKesson or any other action or

21   forbearance by McKesson, including without limitation any fees discounts, rebates
     or other consideration received by McKesson pursuant to a core distribution

22   agreement, inventory management agreement or any other similar agreement with
     the vendor or its affiliates

23

24   In other words, cash rebates received by McKESSON have no bearing on the obligations of

25   McKESSON to FAMILYMEDS GROUP pursuant to the SECOND AGREEMENT and therefore

26   data on cash rebates received by McKESSON will not be provided in these Responses to the First

27   Set of Interrogatories. Furthermore, McKESSON objects to INTERROGATORY NO. 5 because it

28   seeks confidential information that is a trade secret and proprietary to McKESSON.

**INTERROGATORY NO. 6**

For each PRODUCT identified in YOUR response to Interrogatory Number 1, state the amount of bonus goods YOU received.

**RESPONSE TO INTERROGATORY NO. 6**

In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 6 as being overly broad and burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and confidential information. McKesson objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product privileged materials. McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 6 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). Nothing in the SECOND AGREEMENT ties the COST OF GOODS payable by FAMILYMEDS GROUP for PRODUCT purchased from McKESSON to the amount of bonus goods that McKESSON may have received from vendors before reselling that PRODUCT to FAMILYMEDS GROUP. In fact, the SECOND AGREEMENT states that:

> For the avoidance of doubt, nothing herein will entitle Customer to receive or share in any fees, discounts, rebates or other consideration received by McKesson from a vendor or its affiliates for any services rendered by McKesson or any other action or forbearance by McKesson, including without limitation any fees discounts, rebates or other consideration received by McKesson pursuant to a core distribution agreement, inventory management agreement or any other similar agreement with the vendor or its affiliates

In other words, the amount of bonus goods received by McKESSON has no bearing on the obligations of McKESSON to FAMILYMEDS GROUP pursuant to the SECOND AGREEMENT and therefore data on the amount of bonus goods received by McKESSON will not be provided in these Responses to the First Set of Interrogatories. Furthermore, McKESSON objects to INTERROGATORY NO. 6 because it seeks confidential information that is a trade secret and proprietary to McKESSON.

1    **INTERROGATORY NO. 7**

2          For each PRODUCT identified in YOUR response to Interrogatory Number 1, state the

3    amount of off-invoice allowances YOU received.

4    **RESPONSE TO INTERROGATORY NO. 7**

5          In addition to the general objections set forth above, which are incorporated herein by this

6    reference, McKESSON objects to INTERROGATORY NO. 7 as being overly broad and

7    burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and

8    confidential information. McKesson objects to this Request as calling for the disclosure of

9    attorney-client privileged and attorney work product privileged materials. McKESSON further

10   objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

11   to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

12   INTERROGATORY NO. 7 is outside the scope of permissible discovery as set forth in Rule

13   26(b)(1). Nothing in the SECOND AGREEMENT ties the COST OF GOODS payable by

14   FAMILYMEDS GROUP for PRODUCT purchased from McKESSON to the amount of off-

15   invoice allowances that McKESSON may have received from vendors before reselling that

16   PRODUCT to FAMILYMEDS GROUP. In fact, the SECOND AGREEMENT states that:

17

18         For the avoidance of doubt, nothing herein will entitle Customer to receive or share
     in any fees, discounts, rebates or other consideration received by McKesson from a
     vendor or its affiliates for any services rendered by McKesson or any other action or

19   forbearance by McKesson, including without limitation any fees discounts, rebates
     or other consideration received by McKesson pursuant to a core distribution

20   agreement, inventory management agreement or any other similar agreement with
     the vendor or its affiliates

21

22   In other words, the amount of off-invoice allowances received by McKESSON has no bearing on

23   the obligations of McKESSON to FAMILYMEDS GROUP pursuant to the SECOND

24   AGREEMENT and therefore data on the amount of off-invoice allowances received by

25   McKESSON will not be provided in these Responses to the First Set of Interrogatories.

26   Furthermore, McKESSON objects to INTERROGATORY NO. 7 because it seeks confidential

27   information that is a trade secret and proprietary to McKESSON.

28

1 | **INTERROGATORY NO. 8**

2       For each PRODUCT identified in YOUR response to Interrogatory Number 1, identify any

3 and all manufacturers' deal prices YOU received.

4 | **RESPONSE TO INTERROGATORY NO. 8**

5       In addition to the general objections set forth above, which are incorporated herein by this

6 reference, McKESSON objects to INTERROGATORY NO. 8 as being overly broad and

7 burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and

8 confidential information. McKesson objects to this Request as calling for the disclosure of

9 attorney-client privileged and attorney work product privileged materials. McKESSON further

10 objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

11 to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

12 INTERROGATORY NO. 8 is outside the scope of permissible discovery as set forth in Rule

13 26(b)(1). Nothing in the SECOND AGREEMENT ties the COST OF GOODS payable by

14 FAMILYMEDS GROUP for PRODUCT purchased from McKESSON to the amount of

15 manufacturers' deal prices that McKESSON may have received from vendors before reselling that

16 PRODUCT to FAMILYMEDS GROUP. In fact, the SECOND AGREEMENT states that:

17

18
19
20
21       For the avoidance of doubt, nothing herein will entitle Customer to receive or share in any fees, discounts, rebates or other consideration received by McKesson from a vendor or its affiliates for any services rendered by McKesson or any other action or forbearance by McKesson, including without limitation any fees discounts, rebates or other consideration received by McKesson pursuant to a core distribution agreement, inventory management agreement or any other similar agreement with the vendor or its affiliates

22 In other words, the amount of manufacturers' deal prices received by McKESSON has no bearing

23 on the obligations of McKESSON to FAMILYMEDS GROUP pursuant to the SECOND

24 AGREEMENT and therefore data on the amount of manufacturers' deal prices received by

25 McKESSON will not be provided in these Responses to the First Set of Interrogatories.

26 Furthermore, McKESSON objects to INTERROGATORY NO. 8 because it seeks confidential

27 information that is a trade secret and proprietary to McKESSON.

28

1    **INTERROGATORY NO. 9**

2        Identify each PRODUCT that FAMILYMEDS GROUP purchased from YOU pursuant to

3    the SECOND AGREEMENT and was classified as SPECIALLY PRICED MERCHANDISE,

4    providing the date of purchase, the invoice number, the price YOU charged FAMILYMEDS

5    GROUP, the SKU, and the NDC.

6    **RESPONSE TO INTERROGATORY NO. 9**

7        In addition to the general objections set forth above, which are incorporated herein by this

8    reference, McKESSON objects to INTERROGATORY NO. 9 as being overly broad and

9    burdensome and ambiguous.  McKesson objects to this Request as calling for the disclosure of

10    trade secret and confidential information.  McKesson objects to this Request as calling for the

11    disclosure of attorney-client privileged and attorney work product privileged materials.

12    McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant

13    information that does not appear to be reasonably calculated to lead to the discovery of admissible

14    evidence and, therefore, INTERROGATORY NO. 9 is outside the scope of permissible discovery

15    as set forth in Rule 26(b)(1).  McKESSON also objects to this INTERROGATORY because it

16    requests confidential information that is a trade secret and proprietary to McKESSON.  Subject to

17    the foregoing objections and without waiver of the General Objections set forth above,

18    McKESSON responds to this INTERROGATORY through the production of business records

19    pursuant to Rule 33(d), namely Bates Nos. 483-566.

20    **INTERROGATORY NO. 10**

21        State the actual price paid by YOU for each PRODUCT identified in YOUR response to

22    Interrogatory Number 9.

23    **RESPONSE TO INTERROGATORY NO. 10**

24        In addition to the general objections set forth above, which are incorporated herein by this

25    reference, McKESSON objects to INTERROGATORY NO. 10 as being overly broad and

26    burdensome.  McKesson objects to this Request as calling for the disclosure of trade secret and

27    confidential information.  McKesson objects to this Request as calling for the disclosure of

28    attorney-client privileged and attorney work product privileged materials.  McKESSON further

1    objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

2    to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

3    INTERROGATORY NO. 10 is outside the scope of permissible discovery as set forth in Rule

4    26(b)(1). Because the actual price paid by McKESSON for PRODUCT sold to FAMILYMEDS

5    GROUP has no bearing on the calculation of the price that was paid or agreed to be paid by

6    FAMILYMEDS GROUP for PRODUCT or Merchandise purchased from McKESSON pursuant to

7    the SECOND AGREEMENT, the actual price paid by McKESSON will not be provided in these

8    Responses to the First Set of Interrogatories. Furthermore, McKESSON objects to

9    INTERROGATORY NO. 10 because it seeks confidential information that is a trade secret and

10   proprietary to McKESSON.

11   **INTERROGATORY NO. 11**

12        Describe in detail how YOU calculated the price that YOU charged to FAMILYMEDS

13   GROUP for each PRODUCT identified in YOUR response to Interrogatory Number 9.

14   **RESPONSE TO INTERROGATORY NO 11**

15        In addition to the general objections set forth above, which are incorporated herein by this

16   reference, McKESSON objects to INTERROGATORY NO. 11 as being overly broad and

17   burdensome.McKesson objects to this Request as calling for the disclosure of trade secret and

18   confidential information.  McKesson objects to this Request as calling for the disclosure of

19   attorney-client privileged and attorney work product privileged materials.  McKESSON further

20   objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

21   to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

22   INTERROGATORY NO. 11 is outside the scope of permissible discovery as set forth in Rule

23   26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential

24   information that is a trade secret and proprietary to McKESSON.  Subject to the foregoing

25   objections and without waiver of the General Objections set forth above, McKESSON states that

26   SPECIALLY PRICED MERCHANDISE was billed "in accordance with the terms and conditions

27   established by McKesson (including applicable markup) for such Merchandise."

28

1  **INTERROGATORY NO. 12**

2        State all reasons why YOU classified as SPECIALLY PRICED MERCHANDISE each of

3  the PRODUCTS identified in YOUR response to Interrogatory Number 9.

4  **RESPONSE TO INTERROGATORY NO 12**

5        In addition to the general objections set forth above, which are incorporated herein by this

6  reference, McKESSON objects to INTERROGATORY NO. 12 as being overly broad and

7  burdensome.McKesson objects to this Request as calling for the disclosure of trade secret and

8  confidential information.  McKesson objects to this Request as calling for the disclosure of

9  attorney-client privileged and attorney work product privileged materials.  McKESSON further

10  objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

11  to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

12  INTERROGATORY NO. 12 is outside the scope of permissible discovery as set forth in Rule

13  26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential

14  information that is a trade secret and proprietary to McKESSON.  Subject to the foregoing

15  objections and without waiver of the General Objections set forth above, McKESSON states that

16  SPECIALLY PRICED MERCHANDISE was merchandise selected by McKesson and included,

17  without limitation, multi-source generic pharmaceuticals, repackaged pharmaceuticals, private

18  label products, HBC/OTC products, medical surgical supplies, home healthcare/durable medical

19  equipment, certain antibiotics, merchandise acquired by McKESSON from vendors not offering

20  customary cash discounts or other terms, and other specially, slow moving, non-pharmaceutical,

21  and/or net-billed Merchandise. Those specific items categorized as SPECIALLY PRICED

22  MERCHANDISE on the OPEN INVOICES may be seen in the accompanying document

23  production as permitted by Rule 33(d).

24  **INTERROGATORY NO. 13**

25        Identify, by customer, transaction, PRODUCT, invoice number, and price, any and all of

26  YOUR customers which, for any of the PRODUCTS identified in YOUR response to Interrogatory

27  Number 9, YOU charged a price that was different than the price which YOU charged to

28  FAMILYMEDS GROUP for the same PRODUCT.

1  **RESPONSE TO INTERROGATORY NO 13**

2        In addition to the general objections set forth above, which are incorporated herein by this

3  reference, McKESSON objects to INTERROGATORY NO. 13 as being overly broad and

4  burdensome.McKesson objects to this Request as calling for the disclosure of trade secret and

5  confidential information.  McKesson objects to this Request as calling for the disclosure of the

6  attorney-client privileged and attorney work product privileged materials.  McKESSON further

7  objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

8  to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

9  INTERROGATORY NO. 13 is outside the scope of permissible discovery as set forth in Rule

10  26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential

11  information that is a trade secret and proprietary to McKESSON.  McKESSON further objects to

12  this INTERROGATORY because it requests information on the identity of other customers of

13  McKESSON, and the contract terms that McKESSON gave such other customers, all of which is

14  confidential information and a trade secret.

15  **INTERROGATORY NO. 14**

16        Identify each PRODUCT that FAMILYMEDS GROUP purchased from YOU pursuant to

17  the SECOND AGREEMENT and was classified as NET BILLED, providing the date of purchase,

18  the price YOU charged FAMILYMEDS GROUP, the invoice number, the SKU and the NDC.

19  **RESPONSE TO INTERROGATORY NO 14**

20        In addition to the general objections set forth above, which are incorporated herein by this

21  reference, McKESSON objects to INTERROGATORY NO. 14 as being overly broad and

22  burdensome.McKesson objects to this Request as calling for the disclosure of trade secret and

23  confidential information.  McKesson objects to this Request as calling for the disclosure of

24  attorney-client privileged and attorney work product privileged materials.  McKESSON further

25  objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear

26  to be reasonably calculated to lead to the discovery of admissible evidence and, therefore,

27  INTERROGATORY NO. 14 is outside the scope of permissible discovery as set forth in Rule

28  26(b)(1).  McKESSON also objects to this INTERROGATORY because it requests confidential

1    information that is a trade secret and proprietary to McKESSON.  Subject to the foregoing

2    objections and without waiver of the General Objections set forth above, McKESSON responds to

3    this INTERROGATORY through the production of business records pursuant to Rule 33(d),

4    namely by providing the OPEN INVOICES and data related thereto, Bates Nos. 483-566.

5    **INTERROGATORY NO. 15**

6         State the actual price paid by **YOU** for each **PRODUCT** identified in **YOUR** response to

7    Interrogatory Number 14.

8    **RESPONSE TO INTERROGATORY NO. 15**

9         In addition to the general objections set forth above, which are incorporated herein by this reference,

10   McKESSON objects to INTERROGATORY NO. 15 as being overly broad and burdensome.  McKesson

11   objects to this Request as calling for the disclosure of trade secret and confidential information.  McKesson

12   objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product

13   privileged materials.  McKESSON further objects that the scope of this INTERROGATORY seeks

14   irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible

15   evidence and, therefore, INTERROGATORY NO. 15 is outside the scope of permissible discovery as set

16   forth in Rule 26(b)(1).  Because the actual price paid by McKESSON for PRODUCT sold to

17   FAMILYMEDS GROUP has no bearing on the calculation of the price that was paid or agreed to be paid by

18   FAMILYMEDS GROUP for PRODUCT or Merchandise purchased from McKESSON pursuant to the

19   SECOND AGREEMENT, the actual price paid by McKESSON will not be provided in these Responses to

20   the First Set of Interrogatories. Furthermore, McKESSON objects to INTERROGATORY NO. 15 because

21   it seeks confidential information that is a trade secret and proprietary to McKESSON.

22   **INTERROGATORY NO. 16**

23        Describe in detail how YOU calculated the price that YOU charged to FAMILYMEDS GROUP for

24   each of the PRODUCTS identified in YOUR response to Interrogatory Number 14.

25   **RESPONSE TO INTERROGATORY NO 16**

26        In addition to the general objections set forth above, which are incorporated herein by this reference,

27   McKESSON objects to INTERROGATORY NO. 16 as being overly broad and burdensome.  McKesson

28   objects to this Request as calling for the disclosure of trade secret and confidential information.  McKesson

     objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product

     privileged materials.  McKESSON further objects that the scope of this INTERROGATORY seeks

irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 16 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential information that is a trade secret and proprietary to McKESSON.  Subject to the foregoing objections and without waiver of the General Objections set forth above, McKESSON states that each NET BILLED item (all of which are SPECIALLY PRICED MERCHANDISE) was priced in conformance with the SECOND AGREEMENT in that NET BILLED items were not priced based upon the cost-plus pricing method applicable to Merchandise sold based on the COST OF GOODS defined in the SECOND AGREEMENT.  Instead, NET BILLED items were billed "in accordance with the terms and conditions established by McKesson (including applicable markup) for such Merchandise."

**INTERROGATORY NO. 17**

State all reasons why YOU classified as NET BILLED each of the PRODUCTS identified in YOUR response to interrogatory Number 14.

**RESPONSE TO INTERROGATORY NO 17**

In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 17 as being overly broad and burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and confidential information.  McKesson objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product privileged materials.  McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 17 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential information that is a trade secret and proprietary to McKESSON.  Without waiving any of the foregoing objections, nor any of the General Objections set forth above, McKESSON states that NET BILLED ITEMS are the same as SPECIALLY PRICED MERCHANDISE and the same methodology used to classify PRODUCTS as SPECIALLY PRICED MERCHANDISE was used to classify NET BILLED items.

**INTERROGATORY NO. 18**

Identify each PRODUCT that FAMILYMEDS GROUP purchased from YOU pursuant to the SECOND AGREEMENT and was designated as ONESTOP GENERICS, providing the date of purchase, the price YOU charged FAMILYMEDS GROUP, the invoice number, the SKU and the NDC.

**RESPONSE TO INTERROGATORY NO 18**

    In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 18 as being overly broad and burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and confidential information. McKesson objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product privileged materials. McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 18 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential information that is a trade secret and proprietary to McKESSON. Without waiving any of the foregoing objections, nor any of the General Objections set forth above, McKESSON responds to this INTERROGATORY through the production of business records pursuant to Rule 33(d) by the production and delivery to FAMILYMEDS GROUP of compact disks containing spreadsheets compiled from the business records of McKESSON.

**INTERROGATORY NO. 19**

    State the actual price YOU paid for each PRODUCT identified in YOUR response to Interrogatory Number 18.

**RESPONSE TO INTERROGATORY NO 19**

    In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 19 as being overly broad and burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and confidential information. McKesson objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product privileged materials. McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 15 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). Because the actual price paid by McKESSON for PRODUCT sold to FAMILYMEDS GROUP has no bearing on the calculation of the price that was paid or agreed to be paid by FAMILYMEDS GROUP for PRODUCT or Merchandise purchased from McKESSON pursuant to the SECOND AGREEMENT, the actual price paid by McKESSON will not be provided in these Responses to the First Set of Interrogatories. Furthermore, McKESSON objects to INTERROGATORY NO. 19 because it seeks confidential information that is a trade secret and proprietary to McKESSON.

**INTERROGATORY NO. 20**

Describe in detail how YOU calculated the price that YOU charged to FAMILYMEDS GROUP for each of the PRODUCTS identified in YOUR response to Interrogatory Number 18.

**RESPONSE TO INTERROGATORY NO 20**

In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 20 as being overly broad and burdensome. McKesson objects to this Request as calling for the disclosure of trade secret and confidential information. McKesson objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product privileged materials. McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 20 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential information that is a trade secret and proprietary to McKESSON. Subject to the foregoing objections and without waiver of the General Objections set forth above, McKESSON states that the ONESTOP GENERICS program is a proprietary program established by McKesson which is an optional generic pharmaceutical purchasing program for retail pharmacies . Under the ONESTOP GENERICS program, McKesson enters into contracts with retail pharmacies to supply generic drugs at a price lower than the pharmacy would otherwise pay because the retail pharmacy gets some advantage of McKesson's superior buying and negotiating power. The formulas and methodology used by McKesson to calculate a particular retail pharmacy's purchase price are trade secret and proprietary to McKesson and on that basis McKesson refuses to provide such information as it relates to the Propounding Party and any other third parties.

**INTERROGATORY NO. 21**

Identify any and all credits YOU issued to FAMILYMEDS GROUP for returned PRODUCT, providing the date each credit was issued, the credit memo/invoice number, the amount of each credit, the SKU and the NDC of each PRODUCT involved, and the reasons for the issuance of the credit.

**RESPONSE TO INTERROGATORY NO 21**

In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 21 as being overly broad and burdensome. McKESSON objects to this INTERROGATORY as the requested information is already in the possession of the Propounding Party. McKesson objects to this Request as calling for the disclosure of trade secret and

1  confidential information.  McKesson objects to this Request as calling for the disclosure of attorney-client

2  privileged and attorney work product privileged materials.  McKESSON further objects that the scope of

3  this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to

4  lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 21 is outside the

5  scope of permissible discovery as set forth in Rule 26(b)(1).  Subject to the foregoing objections and without

6  waiver of the General Objections set forth above, McKESSON responds to this INTERROGATORY

7  through the production of business records pursuant to Rule 33(d), namely copies of the OPEN INVOICES

8  which reflect the credits given for returned products.  Further, the reason for the issuance of each credit for

   retruned product was that the applicable PRODUCT was returned.

9  **INTERROGATORY NO. 22**

10      Describe in detail how YOU calculated each of the credits identified in YOUR response to

11  Interrogatory Number 21.

12  **RESPONSE TO INTERROGATORY NO 22**

13      In addition to the general objections set forth above, which are incorporated herein by this reference,

14  McKESSON objects to INTERROGATORY NO. 20 as being overly broad and burdensome.  McKesson

15  objects to this Request as calling for the disclosure of trade secret and confidential information.  McKesson

16  objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product

17  privileged materials.  McKESSON further objects that the scope of this INTERROGATORY seeks

18  irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible

19  evidence and, therefore, INTERROGATORY NO. 20 is outside the scope of permissible discovery as set

20  forth in Rule 26(b)(1).  Subject to the foregoing objections and without waiver of the General Objections set

21  forth above, McKESSON states that credits for returned product were calculated  in conformance with the

   SECOND AGREEEMENT, including Section 6 thereof.

22  **INTERROGATORY NO. 23**

23      Describe in detail how you calculated the **AWP** for each and every **PRODUCT** that

24  **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**, providing the

25  date of purchase, the price **YOU** charged **FAMILYMEDS GROUP**, the invoice number, the **SKU** and the

   **NDC**.

26

27

28

**RESPONSE TO INTERROGATORY NO 23**

In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 21 as being overly broad, burdensome and unintelligible. McKesson objects to this Request as calling for the disclosure of trade secret and confidential information. McKesson objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product privileged materials. McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 21 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). Subject to the foregoing objections and without waiver of the General Objections set forth above, McKESSON states that there is no such thing as "AWP" which the First Set of Interrogatories defines as "McKesson Average Wholesale Price," and therefore there is no information responsive to this INTERROGATORY.

**INTERROGATORY NO. 24**

Describe in detail, by date and reference number, how YOU calculated all monthly volume discount pricing adjustments under the SECOND AGREEMENT.

**RESPONSE TO INTERROGATORY NO 24**

In addition to the general objections set forth above, which are incorporated herein by this reference, McKESSON objects to INTERROGATORY NO. 24 as being overly broad and burdensome and vague and ambiguous. McKesson objects to this Request as calling for the disclosure of trade secret and confidential information. McKesson objects to this Request as calling for the disclosure of attorney-client privileged and attorney work product privileged materials. McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant information that does not appear to be reasonably calculated to lead to the discovery of admissible evidence and, therefore, INTERROGATORY NO. 24 is outside the scope of permissible discovery as set forth in Rule 26(b)(1). McKESSON also objects to this INTERROGATORY because it requests confidential information that is a trade secret and proprietary to McKESSON. Subject to the foregoing objections and without waiver of the General Objections set forth above, McKESSON responds to this INTERROGATORY by stating that monthly volume discount pricing adjustments were to be calculated as provided in the SECOND AGREEMENT, including Section 5.C thereof. However, in each month between December 2006 and November 2007, inclusive, McKESSON gave FAMILYMEDS GROUP the discounts applicable to a Chainwide Monthly Average Volume (net of returns, allowances, rebates and all credits and adjustments issued and exclusive of drop shipped purchases) of $13,108,000 to

1   $14,418,999 even though the only month that FAMILYMEDS GROUP qualified for that discount was in

2   February, 2007.  In each other month, the discount given to FAMILYMEDS GROUP was greater than what

3   FAMILYMEDS GROUP earned based on the volume of goods it purchased.  McKESSON cannot provide a

4   "reference number" as requested in INTERROGATORY NO. 24 because McKESSON is unaware of what

5   that "reference number" might be.

6   **INTERROGATORY NO. 25**

7        Describe in detail, by date and reference number, how **YOU** calculated all quarterly rebates

8   for generic drug purchases under the **SECOND AGREEMENT**.

9   **RESPONSE TO INTERROGATORY NO 25**

10       In addition to the general objections set forth above, which are incorporated herein by this

11  reference, McKESSON objects to INTERROGATORY NO. 25 as being overly broad and

12  burdensome and vague and ambiguous.  McKesson objects to this Request as calling for the

13  disclosure of trade secret and confidential information.  McKesson objects to this Request as

14  calling for the disclosure of attorney-client privileged and attorney work product privileged

15  materials.  McKESSON further objects that the scope of this INTERROGATORY seeks irrelevant

16  information that does not appear to be reasonably calculated to lead to the discovery of admissible

17  evidence and, therefore, INTERROGATORY NO. 25 is outside the scope of permissible discovery

18  as set forth in Rule 26(b)(1).  McKESSON also objects to this INTERROGATORY because it

19  requests confidential information that is a trade secret and proprietary to McKESSON.  Subject to

20  the foregoing objections and without waiver of the General Objections set forth above,

21  McKESSON responds to this INTERROGATORY through the production of business records

22  pursuant to Rule 33(d), Bates Nos. 642-645.  McKESSON cannot provide a "reference number" as

23  requested in INTERROGATORY NO. 25 because McKESSON is unaware of what that "reference

24  number" might be.

25  DATED: July 14, 2008

                     HENDERSON & CAVERLY LLP

26

27  By: _____
                    Maria K. Pum

28                      Attorneys for Plaintiff McKESSON
                    CORPORATION

## VERIFICATION OF PERSON ANSWERING INTERROGATORIES

1

2      I, LESLIE MORGAN, declare under penalty of perjury under the laws of the United

3   States that that I am a Vice President of McKesson Corporation with custody and control of the

4   books and records of McKesson Corporation and that the answers to the foregoing First Set of

5   Interrogatories are true and correct to the best of my knowledge, information and belief after

6   reviewing such books and records, all of which are kept in the ordinary course of business of

7   McKesson Corporation.                    HENDERSON CAVERLY

8      Executed as of this ____ day of July at Norman, Oklahoma.

9

10

## VERIFICATION OF FIRST SET OF INTERROGATORIES

11      I, LESLIE MORGAN, declare under penalty of perjury under the laws of the United

12   States that that I am a Vice President of McKesson Corporation with custody and control of the

13   books and records of McKesson Corporation and that the answers to the foregoing First Set of

14   Interrogatories are true and correct to the best of my knowledge, information and belief after

15   reviewing such books and records, all of which are kept in the ordinary course of business of

16   McKesson Corporation.

17      Executed as of this ____ day of July at Norman, Oklahoma.

18

19

20                              *Leslie Morgan*
                              LESLIE MORGAN

21

22

23

24

25

26

27

28

1              **PROOF OF SERVICE**

2          I am employed in the County of San Diego, California. I am over the age of 18

3    years and not a party to the within action. My business address is Henderson & Caverly LLP, P.O.

4    Box 9144, 16236 San Dieguito Road, Suite 4-13, Rancho Santa Fe, California 92067.

5          On July 14, 2008, I served the attached:

6    **OBJECTIONS AND RESPONSES TO FIRST SET OF INTERROGATORIES OF**
     **FAMILYMEDS GROUP, INC., F/K/A DRUGMAX, INC., A NEVADA**
7    **CORPORATION**

8

9    on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as

10   follows:
             Robert C. Gebhardt, Esq.
11           Jeffer, Mangels, Butler & Marmaro LLP
             Two Embarcadero Center, Fifth Floor
12           San Francisco, California  94111-3824

13

14   XX   (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for
          first-class mail, for collection and mailing at Henderson & Caverly LLP, Rancho Santa Fe,
15        California, following ordinary business practices. I am familiar with the practice of
          Henderson & Caverly LLP for collection and processing of correspondence, said practice
16        being that in the ordinary course of business, correspondence is deposited in the United
          States Postal service the same day as it is placed for collection.

17          I declare under penalty of perjury under the laws of the State of California that the

18   foregoing is true and correct.

19          Executed at Rancho Santa Fe, California on July 14, 2008.

20

21

22          QUYNH NGUYEN

23

24

25

26

27

28

1   MARIA K. PUM (State Bar No. 120987)
    KRISTEN E. CAVERLY (State Bar No. 175070)
2   HENDERSON & CAVERLY LLP
    P.O. Box 9144 (all U.S. Mail)
3   16236 San Dieguito Road, Suite 4-13
    Rancho Santa Fe, CA 92067-9144
4   Telephone:    (858) 756-6342
    Facsimile:    (858) 756-4732
5   E-mail: mpum@hcesq.com

6   Attorneys for Plaintiff
    McKESSON CORPORATION
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  McKESSON CORPORATION, a Delaware          Case No. CV07-5715 WDB
    corporation,
12
                        Plaintiff,
13
           v.                                 **OBJECTIONS AND RESPONSES OF
14                                            McKESSON CORPORATION TO THE
    FAMILYMEDS GROUP, INC.,                   FIRST REQUEST FOR PRODUCTION
15    f/k/a Drugmax, Inc., a Connecticut corporation,  OF DOCUMENTS AND THINGS OF
                                              FAMILYMEDS GROUP, INC., f/k/a
16                      Defendant.            DRUGMAX, INC., A NEVADA
                                             CORPORATION**
17  FAMILYMEDS GROUP, INC.,
      f/k/a Drugmax, Inc., a Connecticut corporation,
18
                        Counterclaimant,      Complaint Filed:  November 9, 2007
19                                            Counterclaim Filed:  December 17, 2007
           v.                                 Cross-Complaint Filed: December 17, 2007
20
    McKESSON CORPORATION, a Delaware
21  corporation,

22                      Counterdefendant.

23
    FAMILYMEDS, INC.,
24  a Connecticut corporation,

25                      Cross-Complainant,

26         v.

27  McKESSON CORPORATION, a Delaware
    corporation,
28
                        Cross-Defendant.

1   PROPOUNDING PARTY:         DEFENDANT AND COUNTERCLAIMANT

2                              FAMILYMEDS GROUP, INC. f/k/a DRUGMAX, INC.

3   RESPONDING PARTY:          PLAINTIFF McKESSON CORPORATION

4   SET NO.:                   ONE

5        Pursuant to Federal Rules of Civil Procedure, Rule 34, plaintiff McKesson Corporation

6   ("McKESSON") hereby responds to the "First Request for Production of Documents and Things"

7   (the "Document Request") propounded by defendant FAMILYMEDS GROUP, INC., f/k/a

8   DRUGMAX, INC. ("FAMILYMEDS GROUP").

9                              **GENERAL OBJECTIONS**

10       Initially, McKESSON objects to the inclusion of an un-redacted copy of the Supply

11  Agreement dated as of February 2, 2007 and executed by McKESSON and FAMILYMEDS

12  GROUP (the "SECOND AGREEMENT"), as either an exhibit to the Document Request or in

13  response to any demand made in the Document Request because the disclosure of that agreement

14  to any third party and/or the possible filing of that document with the Court would violate its

15  confidentiality terms and disclose trade secrets of McKESSON.

16       McKESSON also hereby objects to each and every request for production of documents,

17  each a "REQUEST", on the grounds set forth below.  These general objections are applicable to

18  each and every one of the following responses and objections, and failure to repeat an objection in

19  response to a specific REQUEST shall not be deemed a waiver of the objection.  Further, if

20  McKESSON specifically repeats one or more of these general objections in response to a specific

21  REQUEST, such specific response cannot be deemed a waiver of any other of these general

22  objections.

23       1.    The following responses and objections are provided without prejudice to provide

24  further documents, evidence or information not yet available and/or later discovered.

25       2.    McKESSON objects to these demands to the extent that they seek documents that are

26  not within McKESSON's possession, custody or control.  McKESSON will produce only

27  responsive, non-privileged documents within its possession, custody or control.  To the extent

28

1    McKESSON is aware of responsive documents which existed but have been lost or destroyed,

2    McKESSON will identify such documents to plaintiff to the extent practicable.

3         3.    McKESSON objects to these demands to the extent they seek documents and/or

4    information that reflect confidential communications between McKESSON and its attorneys or

5    other parties that are protected by the attorney-client privilege. McKESSON further objects to

6    these demands to the extent that they call for the work product, legal conclusions, opinions,

7    impressions, theories of McKESSON, McKESSON's attorneys and/or representatives that are

8    protected under the work product doctrine. McKESSON will not produce attorney-client

9    privileged documents and/or attorney work product.

10        4.    McKESSON objects to these demands to the extent they seek information and

11   documents that do not pertain to the allegations made in this lawsuit or are not reasonably

12   calculated to lead to the discovery of admissible evidence.

13        5.    McKESSON reserves the right to modify, amend or add to its responses and

14   objections. McKESSON further reserves all objections regarding the admissibility of any

15   produced documents, including but not limited to objections as to relevancy and authenticity.

16        6.    McKESSON objects to these demands to the extent they assume facts that do not

17   exist or have not yet been proved, if FAMILYMEDS GROUP bears the burden of proof regarding

18   such facts.

19        7.    McKESSON objects to these demands to the extent they seek information that may

20   impair or abrogate the privacy rights of McKESSON and/or other third parties. McKESSON will

21   not produce documents containing personal information of an individual without a written waiver

22   by such individual of any privacy rights. For the purposes of these responses, McKESSON

23   includes in "privileged" all documents protected from discovery by any individual's rights of

24   privacy, until and unless such individual has executed a written waiver of such rights.

25        8.    McKESSON objects to these demands to the extent they require McKESSON to

26   produce documents already in the possession of the Requesting party, equally available to the

27   Requesting party, documents in the public domain and/or documents from sources other than

28   McKESSON. McKESSON will not produce documents already known to be in the possession of

1  the Requesting party, equally available to the Requesting party, documents in the public domain

2  and/or documents from sources other than McKESSON, including but not limited to court filings

3  and documents recorded in official local, state or federal records.

4      9.    McKESSON objects to these demands on the grounds that they are overbroad in time

5  and/or scope, oppressive, vague, ambiguous, harassing and unduly burdensome.

6      10.   Any statement herein to the effect that "McKESSON will produce all responsive,

7  non-privileged documents" is not a representation, and should not be construed to mean, that any

8  such documents exist.

9      11.   McKESSON objects to the oppressive and burdensome scope of the document

10  requests and will therefore only produce documents as requested that relate to the OPEN

11  INVOICES defined below.

12      12.   McKESSON objects to the REQUESTS because they request information that is a

13  trade secret or that is proprietary and/or confidential information of McKESSON.

14      13.   McKESSON makes these responses solely for the purpose of and in relation to this

15  action. McKESSON's responses to these demands are made subject to any and all objections that

16  would require the exclusion of any statement contained herein if the demands were asked of, or any

17  statement contained herein was made by, a witness present and testifying in court. All such

18  objections and grounds therefore are reserved and may be interposed at the time of trial.

19  McKESSON's responses to these demands are not intended as admissions and/or denials of any

20  statements or purported contentions contained therein.

21                        **DEFINITIONS**

22      Words set forth in all capital letters have the meanings they were assigned to have in the

23  Document Request unless such capitalized words are otherwise defined herein. The term **"OPEN**

24  **INVOICES"** refers to invoices sent by McKESSON to FAMILYMEDS GROUP, in the course of

25  McKESSON'S performance of the SECOND AGREEMENT, which were not fully paid by

26  FAMILYMEDS GROUP and which had invoice dates of February 26, 2007, March 31, 2007,

27  September 11, 2007, September 12, 2007, September 13, 2007, September 14, 2007 and/or

28  September 17, 2007.

1    **RESPONSES TO REQUEST FOR PRODUCTION**

2    **REQUEST FOR PRODUCTION NO. 1.**

3    Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

4    supporting reports prepared by **YOU**, which memorialize, describe, and/or state the **PRODUCTS**

5    which **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND**

6    **AGREEMENT**.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 1.**

8    In addition to the general objections set forth above, which are incorporated herein by this

9    reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 1 as being overly broad

10   and burdensome.  All non-privileged documents responsive to this REQUEST are already in

11   possession of FAMILYMEDS GROUP.  McKESSON further objects that the scope of this

12   REQUEST seeks irrelevant information that does not appear to be reasonably calculated to lead to

13   the discovery of admissible evidence and, therefore, REQUEST FOR PRODUCTION NO. 1 is

14   outside the scope of permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this

15   REQUEST as calling for the production of trade secret and confidential information.  McKesson

16   objects to this REQUEST as calling for the production of attorney-client privileged and attorney

17   work product privileged materials.  Subject to the foregoing objections and without waiver of the

18   General Objections set forth above, McKESSON will produce copies of the OPEN INVOICES,

19   related data and FAMILYMEDS GROUP'S most recent summary statement for the month ending

20   June 30, 2008.

21   **REQUEST FOR PRODUCTION NO. 2.**

22   Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

23   supporting reports prepared by **YOU**, which memorialize, describe, and/or state the **COST OF**

24   **GOODS** for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU**

25   pursuant to the **SECOND AGREEMENT**.

26

27

28

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2.**

2        In addition to the general objections set forth above, which are incorporated herein by this

3  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 2 as being overly broad

4  and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

5  information that does not appear to be reasonably calculated to lead to the discovery of admissible

6  evidence and, therefore, REQUEST FOR PRODUCTION NO. 2 is outside the scope of

7  permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

8  for the production of trade secret and confidential information. McKesson objects to this

9  REQUEST as calling for the production of attorney-client privileged and attorney work product

10  privileged materials.   Subject to the foregoing objections and without waiver of the General

11  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

12  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

13  2008.

14  **REQUEST FOR PRODUCTION NO. 3.**

15        Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

16  supporting reports prepared by **YOU**, which memorialize, describe, and/or state how the **COST**

17  **OF GOODS** was calculated for any and all **PRODUCTS** that **FAMILYMEDS GROUP**

18  purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3.**

20        In addition to the general objections set forth above, which are incorporated herein by this

21  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 3 as being overly broad

22  and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

23  information that does not appear to be reasonably calculated to lead to the discovery of admissible

24  evidence and, therefore, REQUEST FOR PRODUCTION NO. 3 is outside the scope of

25  permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

26  for the production of trade secret and confidential information.  McKesson objects to this

27  REQUEST as calling for the production of attorney-client privileged and attorney work product

28  privileged materials.  The methodology for calculating the COST OF GOODS is fully and

1  exclusively set forth in the SECOND AGREEMENT, a copy of which is already in the possession

2  of FAMILYMEDS GROUP and so will not be produced to FAMILYMEDS GROUP.

3  McKESSON will not be producing DOCUMENTS pursuant to this REQUEST.

4  **REQUEST FOR PRODUCTION NO. 4.**

5       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

6  supporting reports prepared by **YOU**, which memorialize, describe, and/or state the manufacturer's

7  published acquisition cost for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased

8  from **YOU** pursuant to the **SECOND AGREEMENT**.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4.**

10      In addition to the general objections set forth above, which are incorporated herein by this

11  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 4 as being overly broad

12  and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

13  information that does not appear to be reasonably calculated to lead to the discovery of admissible

14  evidence and, therefore, REQUEST FOR PRODUCTION NO. 4 is outside the scope of

15  permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

16  for the production of trade secret and confidential information.  McKesson objects to this

17  REQUEST as calling for the production of attorney-client privileged and attorney work product

18  privileged materials.  Subject to the foregoing objections and without waiver of the General

19  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

20  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

21  2008.

22  **REQUEST FOR PRODUCTION NO. 5.**

23      Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

24  supporting reports prepared by **YOU**, which memorialize, describe, and/or state the actual invoice

25  paid by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU**

26  pursuant to the **SECOND AGREEMENT**.

27

28

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 5.**

2          In addition to the general objections set forth above, which are incorporated herein by this

3 reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 5 as being overly broad

4 and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

5 information that does not appear to be reasonably calculated to lead to the discovery of admissible

6 evidence and, therefore, REQUEST FOR PRODUCTION NO. 5 is outside the scope of

7 permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

8 for the production of trade secret and confidential information. McKesson objects to this

9 REQUEST as calling for the production of attorney-client privileged and attorney work product

10 privileged materials. The REQUEST is also unintelligible; McKESSON did not pay invoices for

11 PRODUCTS purchased by FAMILYMEDS.

12    **REQUEST FOR PRODUCTION NO. 6.**

13          Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

14 supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount of cash

15 rebates received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased

16 from **YOU** pursuant to the **SECOND AGREEMENT**.

17    **RESPONSE TO REQUEST FOR PRODUCTION NO. 6.**

18          In addition to the general objections set forth above, which are incorporated herein by this

19 reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 6 as being overly broad

20 and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

21 information that does not appear to be reasonably calculated to lead to the discovery of admissible

22 evidence and, therefore, REQUEST FOR PRODUCTION NO. 6 is outside the scope of

23 permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

24 for the production of trade secret and confidential information. McKesson objects to this

25 REQUEST as calling for the production of attorney-client privileged and attorney work product

26 privileged materials. McKESSON will not be producing DOCUMENTS pursuant to this

27 REQUEST.

28

1    **REQUEST FOR PRODUCTION NO. 7.**

2        Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

3    supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount of

4    bonus goods received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS GROUP**

5    purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 7.**

7        In addition to the general objections set forth above, which are incorporated herein by this

8    reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 7 as being overly broad

9    and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

10   information that does not appear to be reasonably calculated to lead to the discovery of admissible

11   evidence and, therefore, REQUEST FOR PRODUCTION NO. 7 is outside the scope of

12   permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

13   for the production of trade secret and confidential information.  McKesson objects to this

14   REQUEST as calling for the production of attorney-client privileged and attorney work product

15   privileged materials.  McKESSON will not be producing DOCUMENTS pursuant to this

16   REQUEST.

17   **REQUEST FOR PRODUCTION NO. 8.**

18       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

19   supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount of off-

20   invoice allowances received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS GROUP**

21   purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 8.**

23       In addition to the general objections set forth above, which are incorporated herein by this

24   reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 8 as being overly broad

25   and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

26   information that does not appear to be reasonably calculated to lead to the discovery of admissible

27   evidence and, therefore, REQUEST FOR PRODUCTION NO. 8 is outside the scope of

28   permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

1   for the production of trade secret and confidential information. McKesson objects to this

2   REQUEST as calling for the production of attorney-client privileged and attorney work product

3   privileged materials. McKESSON will not be producing DOCUMENTS pursuant to this

4   REQUEST.

5   **REQUEST FOR PRODUCTION NO. 9.**

6        Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

7   supporting reports prepared by **YOU**, which memorialize, describe, and/or state the amount of

8   manufacturers' deal prices received by **YOU** for any and all **PRODUCTS** that **FAMILYMEDS**

9   **GROUP** purchased from **YOU** pursuant to the **SECOND AGREEMENT**.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9.**

11       In addition to the general objections set forth above, which are incorporated herein by this

12  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 9 as being overly broad

13  and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

14  information that does not appear to be reasonably calculated to lead to the discovery of admissible

15  evidence and, therefore, REQUEST FOR PRODUCTION NO. 9 is outside the scope of

16  permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

17  for the production of trade secret and confidential information. McKesson objects to this

18  REQUEST as calling for the production of attorney-client privileged and attorney work product

19  privileged materials. McKESSON will not be producing DOCUMENTS pursuant to this

20  REQUEST.

21  **REQUEST FOR PRODUCTION NO. 10.**

22       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

23  supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

24  **PRODUCTS** which **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the **SECOND**

25  **AGREEMENT** and were classified as **SPECIALLY PRICED MERCHANDISE**.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10.**

27       In addition to the general objections set forth above, which are incorporated herein by this

28  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 10 as being overly broad

1  and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

2  information that does not appear to be reasonably calculated to lead to the discovery of admissible

3  evidence and, therefore, REQUEST FOR PRODUCTION NO. 10 is outside the scope of

4  permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

5  for the production of trade secret and confidential information. McKesson objects to this

6  REQUEST as calling for the production of attorney-client privileged and attorney work product

7  privileged materials. Subject to the foregoing objections and without waiver of the General

8  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

9  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

10  2008.

11  **REQUEST FOR PRODUCTION NO. 11.**

12    Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

13  supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

14  difference between the price charged by **YOU** to **FAMILYMEDS GROUP** and the price charged

15  by **YOU** to other third-party for **PRODUCTS** classified as **SPECIALLY PRICED**

16  **MERCHANDISE.**

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11.**

18    In addition to the general objections set forth above, which are incorporated herein by this

19  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 11 as being overly broad

20  and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

21  information that does not appear to be reasonably calculated to lead to the discovery of admissible

22  evidence and, therefore, REQUEST FOR PRODUCTION NO. 11 is outside the scope of

23  permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

24  for the production of trade secret and confidential information. McKesson objects to this

25  REQUEST as calling for the production of attorney-client privileged and attorney work product

26  privileged materials. McKESSON will not be producing DOCUMENTS in response to this

27  REQUEST.

28

1    **REQUEST FOR PRODUCTION NO. 12.**

2         Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

3    supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the price

4    that **YOU** paid to manufacturers/suppliers for **PRODUCTS** which **FAMILYMEDS GROUP**

5    purchased from **YOU** pursuant to the **SECOND AGREEMENT** and were classified as

6    **SPECIALLY PRICED MERCHANDISE.**

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 12.**

8         In addition to the general objections set forth above, which are incorporated herein by this

9    reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 12 as being overly broad

10    and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

11    information that does not appear to be reasonably calculated to lead to the discovery of admissible

12    evidence and, therefore, REQUEST FOR PRODUCTION NO. 12 is outside the scope of

13    permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

14    for the production of trade secret and confidential information.  McKesson objects to this

15    REQUEST as calling for the production of attorney-client privileged and attorney work product

16    privileged materials.  McKESSON will not be producing DOCUMENTS in response to this

17    REQUEST.

18    **REQUEST FOR PRODUCTION NO. 13.**

19         Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

20    supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state how **YOU**

21    calculated the price of **PRODUCTS** which **FAMILYMEDS GROUP** purchased from **YOU**

22    pursuant to the **SECOND AGREEMENT** and were classified as **SPECIALLY PRICED**

23    **MERCHANDISE.**

24    **RESPONSE TO REQUEST FOR PRODUCTION NO. 13.**

25         In addition to the general objections set forth above, which are incorporated herein by this

26    reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 13 as being overly broad

27    and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

28    information that does not appear to be reasonably calculated to lead to the discovery of admissible

1    evidence and, therefore, REQUEST FOR PRODUCTION NO. 13 is outside the scope of

2    permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

3    for the production of trade secret and confidential information. McKesson objects to this

4    REQUEST as calling for the production of attorney-client privileged and attorney work product

5    privileged materials. The methodology for calculating the price of SPECIALLY PRICED

6    MERCHANDISE is set forth in the SECOND AGREEMENT. Said agreement is already in the

7    possession of FAMILYMEDS GROUP and will not be produced in response to this REQUEST.

8    **REQUEST FOR PRODUCTION NO. 14.**

9        Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

10   supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

11   reason(s) why **YOU** classified certain **PRODUCTS** which **FAMILYMEDS GROUP** purchased

12   from **YOU** pursuant to the **SECOND AGREEMENT** and were classified as **SPECIALLY**

13   **PRICED MERCHANDISE.**

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 14.**

15       In addition to the general objections set forth above, which are incorporated herein by this

16   reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 14 as being overly broad

17   and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

18   information that does not appear to be reasonably calculated to lead to the discovery of admissible

19   evidence and, therefore, REQUEST FOR PRODUCTION NO. 14 is outside the scope of

20   permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

21   for the production of trade secret and confidential information. McKesson objects to this

22   REQUEST as calling for the production of attorney-client privileged and attorney work product

23   privileged materials. The methodology for classifying PRODUCTS as SPECIALLY PRICED

24   MERCHANDISE is set forth in the SECOND AGREEMENT. Said agreement is already in the

25   possession of FAMILYMEDS GROUP and will not be produced in response to this REQUEST.

26   **REQUEST FOR PRODUCTION NO. 15.**

27       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

28   supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state **YOUR**

1    acquisition cost for the **PRODUCTS** which **FAMILYMEDS GROUP** purchased from **YOU**

2    pursuant to the **SECOND AGREEMENT** and were classified as **ONESTOP GENERICS**.

3    **RESPONSE TO REQUEST FOR PRODUCTION NO. 15.**

4        In addition to the general objections set forth above, which are incorporated herein by this

5    reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 15 as being overly broad

6    and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

7    information that does not appear to be reasonably calculated to lead to the discovery of admissible

8    evidence and, therefore, REQUEST FOR PRODUCTION NO. 15 is outside the scope of

9    permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

10   for the production of trade secret and confidential information. McKesson objects to this

11   REQUEST as calling for the production of attorney-client privileged and attorney work product

12   privileged materials. McKESSON will not be producing DOCUMENTS in response to this

13   REQUEST.

14   **REQUEST FOR PRODUCTION NO. 16.**

15       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

16   supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the price

17   **YOU** charged **FAMILYMEDS GROUP** for **PRODUCTS** designated as **ONESTOP**

18   **GENERICS**.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 16.**

20       In addition to the general objections set forth above, which are incorporated herein by this

21   reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 16 as being overly broad

22   and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

23   information that does not appear to be reasonably calculated to lead to the discovery of admissible

24   evidence and, therefore, REQUEST FOR PRODUCTION NO. 16 is outside the scope of

25   permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

26   for the production of trade secret and confidential information. McKesson objects to this

27   REQUEST as calling for the production of attorney-client privileged and attorney work product

28   privileged materials. Subject to the foregoing objections and without waiver of the General

1   Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

2   and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

3   2008.

4   **REQUEST FOR PRODUCTION NO. 17.**

5   　　　Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

6   supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the amount

7   of credits **YOU** issued to **FAMILYMEDS GROUP** for returned **PRODUCT**.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 17.**

9   　　　In addition to the general objections set forth above, which are incorporated herein by this

10  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 17 as being overly broad

11  and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

12  information that does not appear to be reasonably calculated to lead to the discovery of admissible

13  evidence and, therefore, REQUEST FOR PRODUCTION NO. 17 is outside the scope of

14  permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

15  for the production of trade secret and confidential information.  McKesson objects to this

16  REQUEST as calling for the production of attorney-client privileged and attorney work product

17  privileged materials.  Subject to the foregoing objections and without waiver of the General

18  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

19  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

20  2008.

21  **REQUEST FOR PRODUCTION NO. 18.**

22  　　　Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

23  supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state how **YOU**

24  calculated the credits **YOU** issued to **FAMILYMEDS GROUP** for returned **PRODUCT**.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18.**

26  　　　In addition to the general objections set forth above, which are incorporated herein by this

27  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 18 as being overly broad

28  and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

1  information that does not appear to be reasonably calculated to lead to the discovery of admissible

2  evidence and, therefore, REQUEST FOR PRODUCTION NO. 18 is outside the scope of

3  permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

4  for the production of trade secret and confidential information.  McKesson objects to this

5  REQUEST as calling for the production of attorney-client privileged and attorney work product

6  privileged materials.  Subject to the foregoing objections and without waiver of the General

7  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

8  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

9  2008.

10  **REQUEST FOR PRODUCTION NO. 19.**

11       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

12  supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the **AWP**

13  for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the

14  **SECOND AGREEMENT**.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19.**

16       In addition to the general objections set forth above, which are incorporated herein by this

17  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 19 as being overly broad

18  and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

19  information that does not appear to be reasonably calculated to lead to the discovery of admissible

20  evidence and, therefore, REQUEST FOR PRODUCTION NO. 19 is outside the scope of

21  permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

22  for the production of trade secret and confidential information.  McKesson objects to this

23  REQUEST as calling for the production of attorney-client privileged and attorney work product

24  privileged materials.  Subject to the foregoing objections and without waiver of the General

25  Objections set forth above, there are no DOCUMENTS responsive to this REQUEST.

26  **REQUEST FOR PRODUCTION NO. 20.**

27       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

28  supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state how **YOU**

1   calculated the **AWP** for any and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from

2   **YOU** pursuant to the **SECOND AGREEMENT**.

3   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20.**

4   In addition to the general objections set forth above, which are incorporated herein by this

5   reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 20 as being overly broad

6   and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

7   information that does not appear to be reasonably calculated to lead to the discovery of admissible

8   evidence and, therefore, REQUEST FOR PRODUCTION NO. 20 is outside the scope of

9   permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

10   for the production of trade secret and confidential information. McKesson objects to this

11   REQUEST as calling for the production of attorney-client privileged and attorney work product

12   privileged materials. Subject to the foregoing objections and without waiver of the General

13   Objections set forth above, there are no DOCUMENTS responsive to this REQUEST.

14   **REQUEST FOR PRODUCTION NO. 21.**

15       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

16   supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

17   difference between the **AWP** and the First Databank published wholesale acquisition cost for any

18   and all **PRODUCTS** that **FAMILYMEDS GROUP** purchased from **YOU** pursuant to the

19   **SECOND AGREEMENT**.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 21.**

21       In addition to the general objections set forth above, which are incorporated herein by this

22   reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 21 as being overly broad

23   and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

24   information that does not appear to be reasonably calculated to lead to the discovery of admissible

25   evidence and, therefore, REQUEST FOR PRODUCTION NO. 21 is outside the scope of

26   permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

27   for the production of trade secret and confidential information. McKesson objects to this

28   REQUEST as calling for the production of attorney-client privileged and attorney work product

1 privileged materials.  Subject to the foregoing objections and without waiver of the General

2 Objections set forth above, there are no DOCUMENTS responsive to this REQUEST.

3 **REQUEST FOR PRODUCTION NO. 22.**

4       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

5 supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state any and all

6 **PRODUCTS** which were substituted for **PRODUCTS** that **FAMILYMEDS GROUP** ordered

7 from **YOU** pursuant to the **SECOND AGREEMENT**.

8 **RESPONSE TO REQUEST FOR PRODUCTION NO. 22.**

9       In addition to the general objections set forth above, which are incorporated herein by this

10 reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 22 as being overly broad

11 and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

12 information that does not appear to be reasonably calculated to lead to the discovery of admissible

13 evidence and, therefore, REQUEST FOR PRODUCTION NO. 22 is outside the scope of

14 permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

15 for the production of trade secret and confidential information.  McKesson objects to this

16 REQUEST as calling for the production of attorney-client privileged and attorney work product

17 privileged materials.  McKESSON will not be producing DOCUMENTS in response to this

18 REQUEST.

19 **REQUEST FOR PRODUCTION NO. 23.**

20       Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

21 supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state monthly

22 volume discount pricing adjustments under the **SECOND AGREEMENT**.

23 **RESPONSE TO REQUEST FOR PRODUCTION NO. 23.**

24       In addition to the general objections set forth above, which are incorporated herein by this

25 reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 23 as being overly broad

26 and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

27 information that does not appear to be reasonably calculated to lead to the discovery of admissible

28 evidence and, therefore, REQUEST FOR PRODUCTION NO. 23 is outside the scope of

1  permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

2  for the production of trade secret and confidential information. McKesson objects to this

3  REQUEST as calling for the production of attorney-client privileged and attorney work product

4  privileged materials. Subject to the foregoing objections and without waiver of the General

5  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

6  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

7  2008.

8  **REQUEST FOR PRODUCTION NO. 24.**

9      Any and all **DOCUMENTS**, including, without limitation, monthly summary and detailed

10  supporting reports prepared by **YOU**, which indicate, memorialize, reflect, and/or state the

11  quarterly rebates given by **YOU** to **FAMILYMEDS GROUP** for generic drug purchases under the

12  **SECOND AGREEMENT**.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24.**

14      In addition to the general objections set forth above, which are incorporated herein by this

15  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 24 as being overly broad

16  and burdensome. McKESSON further objects that the scope of this REQUEST seeks irrelevant

17  information that does not appear to be reasonably calculated to lead to the discovery of admissible

18  evidence and, therefore, REQUEST FOR PRODUCTION NO. 24 is outside the scope of

19  permissible discovery as set forth in Rule 26(b)(1). McKesson objects to this REQUEST as calling

20  for the production of trade secret and confidential information. McKesson objects to this

21  REQUEST as calling for the production of attorney-client privileged and attorney work product

22  privileged materials. Subject to the foregoing objections and without waiver of the General

23  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

24  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

25  2008.

26  **REQUEST FOR PRODUCTION NO. 25.**

27      Any and all **DOCUMENTS**, identified, referenced, and/or relied upon in **YOUR** response

28  to the First Set of Interrogatories of FAMILYMEDS GROUP, f/k/a Drugmax, Inc., a Nevada

1  Corporation.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25.**

3       In addition to the general objections set forth above, which are incorporated herein by this

4  reference, McKESSON objects to REQUEST FOR PRODUCTION NO. 25 as being overly broad

5  and burdensome.  McKESSON further objects that the scope of this REQUEST seeks irrelevant

6  information that does not appear to be reasonably calculated to lead to the discovery of admissible

7  evidence and, therefore, REQUEST FOR PRODUCTION NO. 25 is outside the scope of

8  permissible discovery as set forth in Rule 26(b)(1).  McKesson objects to this REQUEST as calling

9  for the production of trade secret and confidential information.  McKesson objects to this

10  REQUEST as calling for the production of attorney-client privileged and attorney work product

11  privileged materials.  Subject to the foregoing objections and without waiver of the General

12  Objections set forth above, McKESSON will produce copies of the OPEN INVOICES, related data

13  and FAMILYMEDS GROUP'S most recent summary statement for the month ending June 30,

14  2008.

15

16  DATED: July 14, 2008                    HENDERSON & CAVERLY LLP

17

18                                          By: _____

19                                              Maria K. Pum
                                               Attorneys for Plaintiff McKESSON
                                               CORPORATION

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is Henderson & Caverly LLP, P.O. Box 9144, 16236 San Dieguito Road, Suite 4-13, Rancho Santa Fe, California 92067.

On July 14, 2008, I served the attached:

**OBJECTIONS AND RESPONSES TO THE FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS OF FAMILYMEDS GROUP, f/k/a DRUGMAX, INC., A NEVADA CORPORATION**

on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

Robert C. Gebhardt, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824

XX    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Henderson & Caverly LLP, Rancho Santa Fe, California, following ordinary business practices. I am familiar with the practice of Henderson & Caverly LLP for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal service the same day as it is placed for collection.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Rancho Santa Fe, California on July 14, 2008.

QUYNH NGUYEN

# EXHIBIT 7
# REDACTED

# EXHIBIT 8
# REDACTED

**EXHIBIT 9**

**Kenefick, Matthew**

| From: | Maria Pum [mpum@hcesq.com] |
|---|---|
| Sent: | Tuesday, July 15, 2008 6:34 PM |
| To: | Kenefick, Matthew |
| Cc: | Kristen Caverly; Gebhardt, Robert C. |
| Subject: | RE: Familymeds |

Matt--

We already agreed to move the date for the hearing once, which is why it is now pending for August 20.  We don't see the need to agree to your proposed continuance because your motion may well prove to be moot if the judge rules in our favor on our summary judgment motion.  If you are committed to bringing a motion seeking to leave to dismiss the cross-complaint, we would agree to having the matter heard on August 20--assuming the court's schedule would accommodate having both hearings on that date. That way the motion for summary judgment could be ruled upon and if the ruling on the motion for summary judgment does not dispose of the case, you could then argue your motion for leave to dismiss the cross-complaint without prejudice.

Maria K. Pum
Henderson & Caverly LLP
P.O. Box 9144 (all US Mail)
16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, CA  92067
Tel:  (858) 756-6342
Fax:  (858) 756-4732
Email:  mpum@hcesq.com

---

**From:** Kenefick, Matthew [mailto:MSK@JMBM.com]
**Sent:** Tuesday, July 15, 2008 3:52 PM
**To:** Maria Pum
**Cc:** Kristen Caverly; Gebhardt, Robert C.
**Subject:** RE: Familymeds

Will you then stipulate to continuing the hearing on the Motion for Summary Judgment to allow the Court sufficient time to decide Familymeds Inc.'s motion for an order authorizing Familymeds Inc. to dismiss its Cross-Complaint from the first action without prejudice?

thank you,
-Matt

Matthew Kenefick for
JMBM | Jeffer, Mangels, Butler & Marmaro LLP
Two Embarcadero Center, 5th Floor San Francisco, California 94111
(415) 984-9677 Direct
(888) 430-5785 Fax
MKenefick@jmbm.com

EXHIBIT 9

7/30/2008

JMBM.com

---

From: Maria Pum [mailto:mpum@hcesq.com]
Sent: Tuesday, July 15, 2008 3:41 PM
To: Kenefick, Matthew
Cc: Kristen Caverly
Subject: Familymeds


Matt:

I got the message you left yesterday requesting that we agree to allow Familymeds to dismiss the counterclaim and cross-complaint without prejudice.  We do not agree to such a dismissal, if it is without prejudice.


Maria K. Pum
Henderson & Caverly LLP
P.O. Box 9144 (all US Mail)
16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, CA  92067
Tel:  (858) 756-6342
Fax:  (858) 756-4732
Email:  mpum@hcesq.com

# EXHIBIT 10

1    JEFFER, MANGELS, BUTLER & MARMARO LLP
     ROBERT C. GEBHARDT (Bar No. 48965), rcg@jmbm.com
2    MICHAEL A. GOLD (Bar No. 90667), mag@jmbm.com
     MATTHEW S. KENEFICK (Bar No. 227298), msk@jmbm.com
3    Two Embarcadero Center, Fifth Floor
     San Francisco, California  94111-3824
4    Telephone:    (415) 398-8080
     Facsimile:    (415) 398-5584

5

6    Attorneys for Defendant and Counterclaimant FAMILYMEDS
     GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation and
7    Cross-Complainant FAMILYMEDS, INC., a Connecticut
     corporation

8

9                UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                 OAKLAND DIVISION

| | |
|---|---|
| 12   MCKESSON CORPORATION, a Delaware corporation, | CASE NO.     CV07-5715 WDB |
| 13              Plaintiff, | **NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FAMILYMEDS, INC. LEAVE TO DISMISS CROSS-COMPLAINT WITHOUT PREJUDICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 14        v. | |
| 15   FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation, | |
| 16            Defendant. | **FRCP 41(a)(2)** |
| 17   FAMILYMEDS GROUP, INC., f/k/a DRUGMAX, INC., a Nevada corporation, | **Accompanying papers**: Kenefick Declaration; and (Proposed) Order |
| 18 | |
| 19             Counterclaimant, | Time:        August 20, 2008 |
|        v. | Date:        1:30 p.m. |
| 20   MCKESSON CORPORATION, a Delaware corporation, | Place:      Ctrm. 4 |
| 21 |             1301 Clay St., 3d Floor |
| |             Oakland, CA |
| 22            Counterdefendant. | Judge:      The Hon. Wayne D. Brazil |
| 23   FAMILYMEDS, INC., a Connecticut corporation, | |
| 24             Cross-Complainant, | |
| 25        v. | Complaint filed:      Nov. 9, 2007 |
| | Counterclaim filed:   Dec. 17, 2007 |
| 26   MCKESSON CORPORATION, a Delaware corporation, | Cross-Complaint Filed: Dec. 17, 2007 |
| | Trial date:           none set |
| 27 | |
| 28           Cross-Defendant. | |

JMBM   Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

752839v1

**EXHIBIT 10**

CV07-5715 WDB
MOTION FOR LEAVE TO DISMISS CLAIMS
WITHOUT PREJUDICE

**NOTICE OF MOTION**

1             PLEASE TAKE NOTICE: that on August 20, 2008, at 1:30 p.m., before the Honorable

Wayne D. Brazil in Court Room 4 of the above-referenced court located at 1301 Clay St., 3d Floor,

Oakland, California, Defendant and Counterclaimant Familymeds Group, Inc., f/k/a Drugmax, Inc.,

a Nevada corporation ("**FM Group**") and Cross-Complainant Familymeds, Inc., a Connecticut

corporation ("**FM Inc.**") (collectively, "**Familymeds**") will make a motion to this Court for an order

granting FM Inc. leave to dismiss its Cross-Complaint without prejudice.

**MOTION**

        Familymeds hereby make a motion to this Court for an order granting leave to dismiss from

the matter of *McKesson Corp. v. Familymeds etc.*, United States District Court, Northern District of

California Case Number CV07-5715 WDB, filed on November 9, 2007 (the "**First Action**") the

Cross-Complaint of FM Inc. against McKesson Corporation ("**McKesson**") for an accounting in

equity (the "**Cross-Complaint**") without prejudice pursuant to Federal Rule of Civil Procedure

41(a)(2) in light of this Court's Order Re May 5, 2008, Case Management Conference (the "**May 5**

**Order**") and the related matter of *Familymeds Inc. etc. et al. v. McKesson etc. et al.*, United States

District Court, Northern District of California Case Number *CV08-2850 WBD*, filed on June 6, 2008

(the "**Second Action**") (this "**Motion**").

///

///

///

CV07-5715 WDB
MOTION FOR LEAVE TO DISMISS CLAIMS
WITHOUT PREJUDICE

752839v1

1              **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**    **INTRODUCTION**

3       McKesson filed in the First Action a motion to dismiss, requesting this Court order FM Inc.

4 to either file a motion to join the First Action, or to re-file the claims asserted in the Cross-

5 Complaint as a second lawsuit. The invariable result of FM Inc. filing a second lawsuit would be

6 that FM Inc. would dismiss its Cross-Complaint from the First Action without prejudice.

7       In ruling on McKesson's motion to dismiss, this Court directed FM Inc. to either file a

8 motion to join the First Action, or to file a separate lawsuit. FM Inc., therefore, filed its claims

9 against McKesson as a separate lawsuit. FM Inc. now seeks to dismiss the Cross-Complaint from

10 the First Action - the inevitable result of the relief requested by McKesson's motion to dismiss.

11 McKesson, however, will not stipulate to FM Inc. dismissing its Cross-Complaint without

12 prejudice, thereby necessitating this Motion.

13       By this Motion, Familymeds requests that this Court allow FM Inc. to dismiss the Cross-

14 Complaint from the First Action without prejudice so that the claims which were asserted therein

15 may proceed in the Second Action. This is the exact result McKesson requested in its motion to

16 dismiss, is the next step in effectuating this Court's May 5 Order, and will not prejudice McKesson.

17 **II.**    **BACKGROUND**

18      **A.**    **The First Action**

19      **The Complaint**. On November 9, 2007, McKesson filed in the First Action its Complaint

20 for Breach of Contract against FM Group to enforce amounts allegedly due and owing from FM

21 Group to McKesson (the **"Complaint"**). See Complaint attached as Exh. 1 to the Kenefick Decl.[1]

22      **The Counterclaim**. On December 17, 2007, Familymeds filed their Counterclaim for

23 Specific Performance of Contract and Accounting; Cross-Complaint for Accounting seeking an

24 accounting under contract and in equity (the **"Counterclaim"**). See Counterclaim attached as Exh.

25 2 to the Kenefick Decl. at ¶¶ 21-40, p.4, line 7 through p.6, line 3.

26  

27       [1] The accompanying Declaration of Matthew S. Kenefick and Request for Judicial Notice in Support of Motion for Order Granting Familymeds, Inc. Leave to Dismiss Cross-Complaint Without Prejudice (the **"Kenefick Decl."**).

28  

PRINTED ON
RECYCLED PAPER
752839v1
- 2 -
CV07-5715 WDB
MOTION FOR LEAVE TO DISMISS CLAIMS
WITHOUT PREJUDICE

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1      The Counterclaim includes, among other things, a Cross-Complaint by FM Inc. against

2   McKesson for an accounting in equity (the **"Cross-Complaint"**).  See Counterclaim ¶¶ 36-40, p.5

3   line 18 through p.6 line 3.

4      **The Motion To Dismiss**.  On January 14, 2008, McKesson filed its Motion to Dismiss

5   Counterclaim for Specific Performance of Contract and Accounting and Cross-Complaint for

6   Accounting (the **"Motion to Dismiss"**).  See Kenefick Decl. Exh. 3.  In the Motion to Dismiss,

7   McKesson requested the Court to order FM Inc. to either file its claims as a separate lawsuit or to

8   file a motion for FM Inc. to join the First Action:

9          ...If FM Inc. would like to sue McKesson, it can bring a lawsuit or
           move to intervene in this action...
10
           See Reply[2] at p.10 lines 15-16.
11

12      Thus, McKesson requested this Court to order FM Inc. to bring its claims in a second

13   lawsuit.  The invariable result of such an order is that FM Inc. would then need to dismiss its Cross-

14   Complaint from the First Action without prejudice.

15      **May 5 Order**.  On May 5, 2008, the Court heard and denied McKesson's Motion to Dismiss

16   without prejudice, and issued its May 5 Order which, as McKesson requested in its Motion to

17   Dismiss, directed FM Inc. to either file a motion to join the First Action, or to file a separate action.

18   See Kenefick Decl. Exh. 4.

19      **Motion For Summary Judgment**.  On June 4, 2008, McKesson filed its Motion for

20   Summary Judgment, or, in the Alternative, Summary Adjudication (the **"MSJ"**).  Kenefick Decl.

21   Exh. 5.  In the MSJ, McKesson seeks, among other things, adjudication of the Cross-Complaint.  Id.

22      **B.      The Second Action**

23      **Second Complaint**.  On June 6, 2008, Familymeds filed in the Second Action (the First

24   Action and Second Action are collectively referred to herein as the **"Actions"**) their Complaint for

25   Specific Performance of Contract and Accounting (the **"Second Complaint"**).  See Kenefick Decl.

26   ─────────────────────
        [2] The Reply of McKesson Corporation to Opposition to Motion Seeking to Dismiss
27   Counterclaim for Specific Performance of Contract and Accounting, and Cross-Complaint for
     Accounting attached as Exh. 3 to the Kenefick Decl.

28

PRINTED ON
RECYCLED PAPER

752839v1

- 3 -      CV07-5715 WDB
           MOTION FOR LEAVE TO DISMISS CLAIMS
           WITHOUT PREJUDICE

JMBM | Jeffer Mangels
      Butler & Marmarou

1    Exh. 6. This is precisely what McKesson asked the Court to order in its Motion to Dismiss.

2         The Second Complaint includes a cause of action by FM Inc. against McKesson for an

3    accounting in equity. See Kenefick Decl. Exh. 6. Thus, as McKesson requested in its Motion to

4    Dismiss, and the Court ordered in its May 5 Order, FM Inc. brought its claims in a second lawsuit.

5    FM Inc. was then left to dismiss the Cross-Complaint from the First Action without prejudice to

6    effectuate the procedure contemplated by this Court's May 5 Order.

7         **C.      Motion To Consider Whether Cases Should Be Related**

8         On June 12, 2008, Familymeds requested McKesson stipulate to the First Action being

9    designated as related to the Second Action. Kenefick Decl. ¶ 8, Exh. 7. McKesson would not

10   stipulate. Id. Accordingly, on June 16, 2008, Familymeds filed its Administrative Motion to

11   Consider Whether Cases Should be Related (the **"Administrative Motion"**) on the ground that the

12   Actions involve common and overlapping issues of fact and law, and will involve common

13   evidence, witnesses, experts and parties. Id. On June 18, 2008, McKesson filed its opposition to

14   Familymeds' Administrative Motion. Id. On June 18, 2008, the Court entered its order granting

15   Familymeds' Administrative Motion, thereby designating the Actions as related and re-assigning the

16   Second Action to Judge Brazil. Id.

17        **D.      The Request For A Stipulation To Dismiss The Cross-Complaint**

18        FM Inc. had re-filed its claims in the Second Action, as McKesson requested this Court

19   order FM Inc. to do. FM Inc., therefore, sought to dismiss the Cross-Complaint without prejudice,

20   leaving the Second Action to proceed.

21        Accordingly, on July 14, 2008, Familymeds requested that McKesson stipulate to FM Inc.

22   dismissing the Cross-Complaint from the First Action without prejudice. Kenefick Decl. ¶ 9, Exh.

23   8. Even though McKesson requested in its Motion to Dismiss that this Court direct FM Inc. to file

24   the Second Action, McKesson refused to stipulate to the dismissal of the Cross-Complaint without

25   prejudice, thereby necessitating this Motion.

26        Because portions of the MSJ address the Cross-Complaint, Familymeds requested

27   McKesson continue hearing on the MSJ to allow sufficient time for the Court to address

28   Familymeds' request for leave to dismiss the Cross-Complaint without prejudice. Kenefick Decl. ¶

PRINTED ON
RECYCLED PAPER

752839v1

- 4 -    CV07-5715 WDB
MOTION FOR LEAVE TO DISMISS CLAIMS
WITHOUT PREJUDICE

1    10, Exh. 9. McKesson denied this request as well. Id. McKesson, however, agreed to have this

2    Motion heard concurrently with the hearing on the MSJ. Id.

3    **III.   LEGAL ARGUMENT**

4           A plaintiff has the absolute right and power to dismiss an action until the defendant serves

5    an answer or summary judgment motion. Federal Rules of Civil Procedure 41(a)(1) and 41(c).

6    Thereafter, the action may be dismissed at any time by stipulation of the parties. Federal Rule of

7    Civil Procedure 41(a)(1)(A)(ii); McCall-Bey v. Franzen, (7th Cir. 1985) 777 F.2d 1178, 1185. If,

8    however, the defendant will not stipulate to the dismissal, then the plaintiff may seek leave to

9    dismiss the action by motion to the court. Federal Rule of Civil Procedure 41(a)(2).

10          The primary purpose of requiring a court order for a dismissal following the service of a

11   motion for summary judgment is to prevent voluntary dismissals which unfairly affect the other

12   side. See Alamance Industries, Inc. v. Filene's, (1st Cir. 1961) 291 F.2d 142, 146. Thus, courts

13   generally allow dismissals without prejudice, unless the defendant will suffer "some plain legal

14   prejudice" as a result thereof. See Hamilton v. Firestone Tire & Rubber Co., Inc., (9th Cir. 1982)

15   679 F.2d 143, 145; Fisher v. Puerto Rico Marine Management, Inc., (11th Cir. 1991) 940 F.2d

16   1502, 1503; Brown v. Baeke, (10th Cir. 2005) 413 F.3d 1121, 1123.

17

18          **A.      Familymeds Appropriately Seeks Leave To Dismiss Its Cross-Complaint To
                       Effectuate This Court's May 5 Order And The Relief McKesson Requested In
19                     Its Motion To Dismiss**

20          In the May 5, Order, this Court directed FM Inc. to either file a motion to join its claims in

21   the First Action, or to file a separate action containing those claims. This is the result McKesson

22   requested in its Motion to Dismiss. FM Inc. did the latter with the Second Action. FM Inc. now

23   seeks the practical remedy of dismissing the Cross-Complaint from the First Action without

24   prejudice to clean-up the pleadings. This is the next step in effectuating this Court's May 5 Order.

25   This is entirely appropriate and will allow the First Action and Second Actions to proceed in the

26   manner that McKesson requested in its Motion to Dismiss.

27   ///

28   ///

PRINTED ON
RECYCLED PAPER

752839v1

- 5 -

CV07-5715 WDB
MOTION FOR LEAVE TO DISMISS CLAIMS
WITHOUT PREJUDICE

1    **B.   Granting FM Inc. Leave To Dismiss The Counter-Claim Without Prejudice Will Not Prejudice McKesson**

2

3    Granting this Motion will not prejudice McKesson.  The First Action is still in its early

4 stages, discovery has only been open for approximately two (2) months, and McKesson has not

5 even filed an answer in the Second Action.  Any litigation of the issues in the Cross-Complaint will

6 directly transfer to the Second Action.  Further, McKesson requested in its Motion to Dismiss that

7 this Court order FM Inc. to file the Second Action, which invariably involved FM Inc. dismissing

8 the Cross-Complaint from the First Action.  McKesson therefore should not be allowed to argue

9 that it is prejudiced by the very result it requested.

10  **IV.  CONCLUSION**

11    McKesson requested that this Court order FM Inc. to re-file its claims against McKesson as

12 a separate lawsuit.  This request invariably required FM Inc. to dismiss its Cross-Complaint from

13 the First Action without prejudice.  In ruling on McKesson's Motion to Dismiss, this Court directed

14 FM Inc. to do as McKesson requested and file a separate lawsuit.

15    FM Inc. now seeks to dismiss its Cross-Complaint from the First Action without prejudice.

16 This is the exact result that McKesson requested in its Motion to Dismiss, and what was

17 contemplated by this Court's May 5 Order.  McKesson, however, will not stipulate to this, and

18 therefore, Familymeds was required to bring this Motion.

19    This Court has the discretion to allow FM Inc. to dismiss the Cross-Complaint without

20 prejudice, and given the circumstances involved, should do so.  This is the practical next step to

21 effectuating this Court's May 5 Order and the relief McKesson requested in its Motion to Dismiss.

22 McKesson will not be prejudiced by FM Inc. dismissing the Cross-Complaint without prejudice and

23 should not be allowed to argue otherwise because this is the precise result it requested in its Motion

24 to Dismiss.

25    Accordingly, this Court should grant Familymeds' Motion and should allow FM Inc. to

26 dismiss the Cross-Complaint from the First Action without prejudice.

27

28

JMBM | Jeffer Mangels Butler & Marmarou

PRINTED ON
RECYCLED PAPER

752839v1

- 6 -

CV07-5715 WDB
MOTION FOR LEAVE TO DISMISS CLAIMS
WITHOUT PREJUDICE

1

DATED:  July 16, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT C. GEBHARDT
MICHAEL A. GOLD
MATTHEW S. KENEFICK

By:  /s/  Robert C. Gebhardt
      ROBERT C. GEBHARDT
Attorneys for FAMILYMEDS GROUP, INC., f/k/a
DRUGMAX, INC., a Nevada corporation and
FAMILYMEDS, INC., a Connecticut corporation

PRINTED ON
RECYCLED PAPER

752839v1

- 7 -

CV07-5715 WDB
MOTION FOR LEAVE TO DISMISS CLAIMS
WITHOUT PREJUDICE