1  MARIA K. PUM (State Bar No. 120987)
   KRISTEN E. CAVERLY (State Bar No. 175070)
2  HENDERSON & CAVERLY LLP
   P.O. Box 9144 (all U.S. Mail)
3  16236 San Dieguito Road, Suite 4-13
   Rancho Santa Fe, CA 92067-9144
4  Telephone:    (858) 756-6342
   Facsimile:    (858) 756-4732
5  Email: mpum@hcesq.com

6  Attorneys for Plaintiff
   McKESSON CORPORATION

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  McKESSON CORPORATION, a Delaware<br>corporation,<br>11<br>           Plaintiff,<br>12<br>    v.<br>13<br>FAMILYMEDS GROUP, INC.,<br>  f/k/a Drugmax, Inc., a Connecticut corporation,<br>14<br>15<br>         Defendant. | Case No.4:07-cv-05715 WDB<br><br>**SUPPLEMENTAL DECLARATION OF<br>ANA SCHRANK IN REPLY TO<br>OPPOSITION TO MOTION FOR<br>SUMMARY JUDGMENT OR, IN THE<br>ALTERNATIVE, SUMMARY<br>ADJUDICATION BY McKESSON<br>CORPORATION** |
| 16  FAMILYMEDS GROUP, INC.,<br>  f/k/a Drugmax, Inc., a Connecticut corporation,<br>17<br>         Counterclaimant,<br>18<br>    v.<br>19<br>McKESSON CORPORATION, a Delaware<br>20  corporation,<br>21<br>         Counterdefendant. | Complaint Filed: November 9, 2007<br>Cross-Complaint Filed: December 17, 2007<br><br>Motion Date: August 20, 2008<br>Time: 1:30 p.m.<br>Place: Ctrm 4<br>      1301 Clay St., 3d Floor<br>      Oakland, CA |
| 22<br>23  FAMILYMEDS, INC.,<br>  a Connecticut corporation,<br>24<br>        Cross-Complainant,<br>25<br>    v.<br>26  McKESSON CORPORATION, a Delaware<br>corporation,<br>27<br>        Cross-Defendant. | |

28

1    I, ANA SCHRANK, declare that I have personal knowledge of the following facts and, if

2    called upon to do so, I could competently testify thereto:

3        1.    I am employed by McKESSON CORPORATION ("McKesson"). At all times

4    relevant to the events described in this declaration, my title was Vice President, Financial Services.

5    In January 2008, I became the Vice President of Investor Relations for McKesson.

6        2.    I am providing this Declaration to supplement the declaration that I signed on June

7    4, 2008 (the "Original Schrank Declaration") in support of the motion for summary judgment or in

8    the alternative summary adjudication filed and served by McKesson on that day (the "MSJ"). The

9    two declarations should be read together, such that, for example, any references to information

10   based on the Books and Records re FM Group, are prefaced by the paragraphs laying the

11   foundation for the exception to the hearsay rules that allows me to rely on the books and records of

12   McKesson that are kept in the ordinary course of McKesson's business. Capitalized terms not

13   otherwise defined in this declaration are defined in the Original Schrank Declaration.

14       3.    I am aware that in paragraph 18 of the declaration signed by Edgardo Mercadante

15   ("Mr. Mercadante") which was filed on July 30, 2008 in opposition to the MSJ (the "Mercadante

16   Declaration"), Mr. Mercadante testifies:

17       The Supply Agreement distinguishes between payment terms for products delivered to
         Familymeds' retail pharmacies as opposed to those delivered [sic] all categories of
18       Familymeds' pharmacies, as indicated in the First Amendment (which McKesson drafted
19       and negotiated). This was a bargained for distinction.

20   Mr. Mercadante's statement is inconsistent with the plain language of the Supply Agreement. The

21   statement is also belied by the pattern and practice and course of dealing of FM Group during the

22   10-month period that shipments were made under the Supply Agreement, over which period some

23   $60,000,000 in Merchandise was sold to FM Group.

24       4.    As is evident from the Supply Agreement, an unredacted copy of which was filed

25   with the Court and served upon FM Group on July 22, 2008, there was no distinction drawn in the

26   Supply Agreement as among sub-types of Pharmacies owned by FM Group. The prefatory

27   paragraph of the Supply Agreement reads in pertinent part:

28

2

> This Supply Agreement dated this 2 day of February, 2007 between Familymeds Group, Inc. (hereafter known as "Customer") and McKesson Corporation ("McKesson") shall be to establish a multi-year program for the supply of prescription drugs and other health and beauty care products by McKesson to retail pharmacies owned or operated by Customer (referred to herein as "Pharmacies" or "Stores").

The Supply Agreement regarded one hundred percent of the Pharmacies owned or operated by FM Group as "retail" Pharmacies.

5.    References to "retail Pharmacies" of a customer is the general term McKesson uses for its RNA (Retail National Accounts) supply agreements, and FM Group is part of this RNA group. The general term does not mean the payment terms only apply to "retail pharmacies" and not to "non retail locations;" no such distinction is recognized by McKesson or the Supply Agreement.

6.    The lack of any distinction between "retail" and "non-retail" Pharmacies is also evident from the chart of the pricing terms for Cost of Goods Pricing in Paragraph 5.C of the unredacted version of the Supply Agreement. The heading over the column for the applicable price adjustment for "Rx" and "OTC" states: "(Based on 7-day Payment Terms per Section 4.A.)"

7.    If the Supply Agreement distinguished between "retail" Pharmacies and "non-retail" Pharmacies as is stated by Mr. Mercadante, the Supply Agreement would have (a) created defined terms to distinguish between retail and non-retail Pharmacies which it did not, and (b) provided payment terms that applied to Pharmacies that did not fall within the classification of "retail" Pharmacies, which it did not.

8.    Each invoice that was issued to each and every Pharmacy owned or operated by FM Group for over $60,000,000 in sales of Merchandise provided that payment was due within seven days after the billing date of the invoice. This can be seen in the sample invoices attached as Exhibit "F" to the Compendium of Exhibits filed in support of the MSJ (the "Compendium"). Similarly, the May 30 Statement attached as Exhibit "E" to the Compendium (and each other

1   statement generated by the SMO System operated by McKesson) indicates for each invoice that the

2   due date was seven days after the billing date.  One hundred percent of the Pharmacies of FM

3   Group was subject to the identical, seven day billing terms.

4        9.     At no time during the entire $60,000,000 relationship under the Supply Agreement

5   did Mr. Mercadante or any other officer or employee of FM Group contend at any time that the

6   seven-day payment terms set forth in Paragraph 4.A pertained only to 41 of the 91 Pharmacies

7   subject to the Supply Agreement.   Nor did any representative of FM Group ever object at any time

8   to an invoice stating the only 41 of FM Group's Pharmacies were subject to seven-day payment

9   terms.  Had any such objections been made, I would have known about them in my then-capacity

10  as Vice President, Financial Services and because I was one of the principal officers at McKesson

11  engaged in seeking to collect past-due amounts from FM Group.

12       10.     The behavior of FM Group is completely inconsistent with any genuine belief that

13  the seven-day payment terms only applied to 41 out of the 91 Pharmacies.  On the one hand FM

14  Group was trying to stretch its payment terms as long as possible to meet its cash flow restrictions,

15  and on the other it was purportedly allowing more than half of its Pharmacies to pay on seven-day

16  terms when they allegedly did not have to because they were not "retail" pharmacies.  In fact, FM

17  Group attempted every day to pay 100% of the invoices dated seven days earlier.  No professed

18  distinction between retail and non-retail was ever made because none existed.

19       11.     Attached as Exhibit "4" to the Mercadante Declaration is a letter dated September

20  18, 2007 addressed to me and signed by James Searson, the Senior Vice President/Chief Operating

21  Officer of FM Group.  That letter demanded extensive documentation from McKesson so that it

22  could identify any discrepancies in pricing.   There is no mention in that letter of any claim that

23  only 41 out of the 91 Pharmacies owned or operated by FM Group were subject to seven-day

24  payment terms and were therefore unjustifiably being charged late charges or service fees by

25  McKesson.

26

27

28

12.    I am also aware that Mr. Mercadante testifies in Paragraph 14 of his declaration that "Paul C. Julian of McKesson executed both the First Amendment and the Supply Agreement."

13.    The so-called "First Amendment" was executed by Paul C. Julian in his capacity as President of D&K Healthcare Resources, Inc. "D&K"). The Supply Agreement was executed by Paul C. Julian in his capacity as Executive Vice President and Group President of McKesson.

14.    I am aware that in Paragraph 25 of the Mercadante Declaration, Mr. Mercadante testifies that "On September 17, 2007, Ana Schrank of McKesson informed Familymeds that McKesson was terminating the Supply Agreement." I did not inform Mr. Mercadante or any representative of FM Group that McKesson was terminating the Supply Agreement. McKesson advised FM Group that McKesson would no longer ship Merchandise to FM Group due to the invoices that remained unpaid and had been unpaid since they were due on March 5, 2007 and March 8, 2007, respectively.

15.    In preparing this declaration I realized that a typographical error had been made in the chart that appeared in Paragraph 13 of the Original Schrank Declaration. I do not know where the error came from, but I did not notice that the dates of certain invoices were incorrectly stated in that chart. The dollar amounts in the chart are not affected. The chart should have read:

| Invoice Date | Due Date | Gross Payment Owed | Amount initially billed because invoices presume FM Group will qualify for "timely payment" discount |
|---|---|---|---|
| 2/26/07 | 3/5/07 | 110,873.35 | 108,655.87 |
| 3/1/07 | 3/8/07 | 531,138.64 | 520,338.35 |
| 9/11/07 | 9/18/07 | 34,745.61 | 34,037.15 |
| 9/12/07 | 9/19/07 | 23,208.17 | 22,740.64 |
| 9/13/07 | 9/20/07 | 21,666.97 | 21,233.63 |
| 9/14/07 | 9/21/07 | 26,575.03 | 26,044.56 |
| 9/17/07 | 9/24/07 | 14,610.90 | 14,423.89 |

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3    Executed this _6th_ day of August, 2008 at _San Francisco_, California.

4

5    ANA SCHRANK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6