1  MARIA K. PUM (State Bar No. 120987)                    **REDACTED**[1]
   KRISTEN E. CAVERLY (State Bar No. 175070)
2  HENDERSON & CAVERLY LLP
   P.O. Box 9144 (all U.S. Mail)
3  16236 San Dieguito Road, Suite 4-13
   Rancho Santa Fe, CA 92067-9144
4  Telephone:    (858) 756-6342
   Facsimile:    (858) 756-4732
5  Email:  mpum@hcesq.com

6  Attorneys for Plaintiff
   McKESSON CORPORATION
7

8                     UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10  McKESSON CORPORATION, a Delaware          Case No. 4:07-cv-05715 WDB
    corporation,
11
                          Plaintiff,           **REQUEST TO STRIKE AND
12       v.                                    OBJECTIONS TO FAMILYMEDS'
                                               PURPORTED STATEMENT OF
13  FAMILYMEDS GROUP, INC.,                    UNDISPUTED FACTS,
      f/k/a Drugmax, Inc., a Connecticut corporation,
14                                             AND
                          Defendant.
15                                             RECONCILIATION OF
    FAMILYMEDS GROUP, INC.,                    STATEMENTS OF UNDISPUTED
16    f/k/a Drugmax, Inc., a Connecticut corporation,  FACTS SUBMITTED IN SUPPORT OF
                                               (AND IN OPPOSITION TO) McKESSON
17                        Counter-Claimant,    CORPORATION'S MOTION FOR
                                               SUMMARY JUDGMENT OR, IN THE
18       v.                                    ALTERNATIVE, SUMMARY
                                               ADJUDICATION**
19  McKESSON CORPORATION, a Delaware
    corporation,                               Complaint filed: November 9, 2007
20                                             Cross-Complaint Filed:  December 17, 2007
                          Counter-defendant.
21                                             Date:  August 20, 2008
    FAMILYMEDS, INC.,                          Time: 1:30 p.m.
22  a Connecticut corporation,                 Place: Ctrm 4
                                                      1301 Clay St., 3d Floor
23                        Cross-Complainant,          Oakland, CA
         v.
24
    McKESSON CORPORATION, a Delaware
25  corporation,

26                        Cross-Defendant.

27  _____

28  ─────────────────────
    [1]  The redacting is consistent with what was redacted from the separate statement of undisputed facts submitted by
    FAMILYMEDS GROUP, INC.,  f/k/a Drugmax, Inc., a Connecticut corporation as permitted by Court Order.

1

2

### REQUEST TO STRIKE AND OBJECTIONS TO FAMILYMEDS' STATEMENT OF UNDISPUTED FACTS

3    On June 4, 2008, Plaintiff and Counter-defendant McKESSON CORPORATION

4    ("McKesson") filed and served a statement of undisputed facts (the "McKesson UF Statement") in

5    support of its "Motion for Summary Judgment or, In the Alternative, Summary Adjudication by

6    McKesson Corporation" (the "MSJ") which contained 23 material facts that McKesson believed

7    (and still maintains) were not the subject of a genuine dispute. As was explained in a Declaration

8    of Kristen E. Caverly, also filed and served on June 4, 2008 (the "Caverly Declaration") in support

9    of the MSJ, the McKesson UF Statement had to be submitted without the benefit of any

10    stipulations from Defendant and Counterclaimant FAMILYMEDS GROUP, INC., f/k/a Drugmax,

11    Inc. ("FM Group" or "Familymeds"), because FM Group neglected to respond to repeated

12    requests to discuss the contents of a draft joint statement of material undisputed facts that had

13    been sent to them a week before the MSJ was filed.  Therefore, a joint statement could not be filed

14    as is contemplated by this Court's Standing Order, ¶11, and Civil Local Rule 56-2(b).

15    On July 30, 2008, Familymeds filed and served their papers in opposition to the MSJ (the

16    "Opposition Papers").  Among the Opposition Papers was a purported "Separate Statement of

17    Disputed, Undisputed, and Additional Facts in Opposition to Motion for Summary Judgment or,

18    in the Alternative, Summary Adjudication by McKesson Corporation' prepared by Familymeds."

19    (the "Familymeds UF Statement").  FM Group made no attempt to contact counsel for McKesson

20    to attempt to meet or confer regarding a new statement of undisputed facts to be submitted by

21    Familymeds, nor to discuss agreeing upon a joint statement of material undisputed facts before

22    filing the Familymeds UF Statement.[2]  More critically, Familymeds made no effort to provide any

23    comments upon the draft McKesson UF Statement that McKesson provided to Familymeds'

24    counsel on May 28, 2008.  Caverly Declaration at ¶¶ 3-8. Familymeds' conduct warrants sanctions

25    against it under the provisions of Civil Local Rule 56-2(b) which provides:

26    _____

27        [2] See the "Declaration of Maria K. Pum in Reply to Opposition of Familymeds to Motion

28    for Summary Judgment or, in the Alternative, Summary Adjudication Filed by McKesson
Corporation" filed and served herewith at ¶¶8-9.

1

1   **b) Procedure if Joint Statement Ordered.** If the assigned Judge orders the
2   submission of a joint statement of undisputed facts, the parties shall confer and
    submit, on or before a date set by the assigned Judge, a joint statement of
3   undisputed facts. If the nonmoving party refuses to join in the statement, the moving
    party will nevertheless be permitted to file the motion, accompanied by a separate
4   declaration of counsel explaining why a joint statement was not filed. *Whether or*
    *not sanctions should be imposed for failure to file a joint statement of undisputed*
5   *facts is a matter within the discretion of the assigned Judge.*

6
7   (Italics added.)  The appropriate sanction for Familymeds' refusal to meet and confer with regard

8   to the original McKesson UF Statement is that the Familymeds UF Statement should be stricken

9   in its entirety and not considered by this Court.

10  ## RECONCILIATION OF STATEMENTS OF UNDISPUTED MATERIAL FACTS

11          In the event the Court determines it will consider the Familymeds UF Statement, the chart

12  below ("Chart 1") lists in the fist column, "Column A" each fact listed on the McKesson UF

13  Statement and the evidentiary support therefore.  In the second column, "Column B," the chart

14  states whether the fact is agreed to by Familymeds to be "Undisputed" or contended by

15  Familymeds to be "Disputed" and if so, why.  In the third column, Column C, Chart 1 lists certain

16  objections or responses by McKesson.  McKesson reserves the ability to modify or supplement

17  any objections or responses set forth herein.

18  ## CHART 1:

19  ## RECONCILIATION TO McKESSON 'S UF STATEMENT

| Column A<br>**Facts From McKesson** | Column B<br>**Response by Familymeds** | Column C<br>**Objection or Response by McKesson** |
|---|---|---|
| 1.  On February 2, 2007, for fair and valuable consideration, McKesson and FM Group entered into a written contract entitled "Supply Agreement."<br><br>Supply Agreement at p.1 (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. ¶3a). | Undisputed | None. |
| 2.  Under the Supply Agreement, McKesson agreed to sell to FM Group, and FM Group agreed to buy, certain "Merchandise" described therein, | Undisputed | None. |

2

| | | |
|---|---|---|
| including prescription drugs, so called "caps" and "vials" used in the sale of prescription drugs, and other health and beauty care products.<br><br>Supply Agreement at p. 1 at ¶1A (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | | |
| 3. The Supply Agreement provides a term of three years commencing on December 28, 2006.<br><br>Supply Agreement at p. 1 at ¶2 (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | Undisputed | None. |
| 4. The Agreement was signed and executed by duly authorized representatives of both FM Group and McKesson.<br><br>Supply Agreement at p. 25 (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | Undisputed | None. |
| 5. Under the Supply Agreement, FM Group was required to make payment for Merchandise delivered to FM Group's retail pharmacies within seven days from the invoice date via Electronic Fund Transfer or Automated Clearing House.<br><br>Supply Agreement at p. 2 at ¶4A (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | Undisputed | None. |
| 6. Under the Supply Agreement, any payments made after the due date incurred a two percent (2%) (or the maximum amount permissible under applicable law, if lower) increase in the purchase price of the Merchandise.<br><br>Supply Agreement at p. 3 at ¶4E (Attached as **Exhibit A** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | Undisputed | None. |
| 7. Under the Supply Agreement, a one percent (1%) service charge (or the maximum amount permissible under applicable law, if lower) is imposed semi-monthly on all balances delinquent more than fifteen (15) days.<br><br>Supply Agreement at p. 3 at ¶4E (Attached as **Exhibit A** to the Compendium of | **Disputed**<br><br>The 2% price increase and the 1% service charge terms only applied to Merchandise delivered to | **Not a genuine dispute**.<br><br>There is no genuine contention that the Supply Agreement only imposed a payment deadline for payment on 41 out of 91 Pharmacies owned or operated by FM Group but |

3

| | | |
|---|---|---|
| Exhibits; Authenticated by Ana Schrank Decl. at ¶3a). | Familymeds' retail pharmacies.<br><br>See Declaration of Edgardo Mercadante in Opposition to [MSJ] (the **"Mercadante Decl."**) at ¶¶ 18-19; Supply Agreement attached as Exhibit A to the Compendium of Exhibits in Support of [MSJ] (the **"Compendium"**) (the "**Supply Agreement"**) at p.2, ¶4.A. | provided no deadline for the remaining 50 Pharmacies.<br><br>See, Supplemental Declaration of Ana Schrank filed and served herewith (the "Supp. Schrank Decl.") at ¶¶ 3-11; Reply, pp.10; lls.5-28; Supply Agreement, prefatory paragraph. |
| 8.  Under the Supply Agreement, FM Group agreed to render payment in full to McKesson on the applicable due date as specified in the Agreement without (i) making any deductions, short payments, or other accounts payable adjustments to such obligation; or (ii) seeking to condition such remittance on any demand for or receipt of proofs of delivery.<br><br>Supply Agreement at p. 3 at ¶4F (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | Undisputed | None. |
| 9.  Under the Supply Agreement, in addition to the 2% price increase and the 1% service charge, the price that FM Group must pay to McKesson for Merchandise increases as the volume of purchases decreases, and vice versa, across several levels of purchase volumes.<br><br>Ana Schrank Decl. at ¶3k. | **Disputed**<br>The 2% price increase and the 1% service charge terms only applied to Merchandise delivered to Familymeds' retail pharmacies.<br><br>See Mercadante Decl. at ¶¶ 18-19; Supply Agreement at p.2, ¶4.A. | **Not a genuine dispute**.<br><br>There is no genuine contention that the Supply Agreement only imposed a payment deadline for payment on 41 out of 91 Pharmacies owned or operated by FM Group but provided no deadline for the remaining 50 Pharmacies.<br><br>See, Supplemental Declaration of Ana Schrank filed and served herewith (the "Supp. Schrank Decl.") at ¶¶ 3-11; Reply, pp.10; lls.5-28; Supply Agreement, prefatory paragraph. |
| 10. Under the Supply Agreement, FM Group's failure to make any payment | **Disputed**<br>The Supply | **Not a genuine dispute** |

4

| | | |
|---|---|---|
| when due in accordance with the terms of the Agreement constitutes a material default.<br>Supply Agreement at p. 18 at ¶12A (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | Agreement provides that the "failure to make any payment when due in accordance with the terms of the Agreement shall constitute a default" - not a "material default."<br>Supply Agreement at p.18, ¶12A. | The parties do not genuinely dispute that nonpayment is a default under the Supply Agreement.  The terms used in the paragraph 18 of the Supply Agreement are "material breach" and default.  The parties agree that nonpayment is a "default" under the Supply Agreement. |
| 11. The Supply Agreement embodies the entire agreement between McKesson and FM Group and supersedes all prior agreements, understandings and representations with the exception of any promissory note, security agreement or other credit or financial related document(s) executed by FM Group or between FM Group and McKesson.<br>Supply Agreement at p. 22 at ¶17A (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | **Disputed**<br>The Court should imply into the Supply Agreement the reasonable term of the right to an accounting.  Civil Code § 1655; <u>Citron v. Franklin</u>, 23 Cal.2d 47, 57 (1943). | **Not a factual dispute**.<br><br>This is a contention of law, not fact as is indicated by its reference to legal authority and not underlying facts. |
| 12. The Supply Agreement provides that it shall be construed in accordance with the laws of the State of California without regard to the provisions of Section 1654 of the California Civil Code or the rules regarding conflict of laws.<br>Supply Agreement at p. 22 at ¶17E (**Exhibit A** to the Compendium of Exhibits; Ana Schrank Decl. at ¶3a). | Undisputed | None. |
| 13. There is no written provision in the Supply Agreement, which requires McKesson to provide an account to FM Group.<br>Ana Schrank Decl. at ¶3l. | **Disputed**<br>The Court should imply into the Supply Agreement the reasonable term of the right to an accounting.  Civil Code § 1655; <u>Citron v. Franklin</u>, 23 Cal.2d 47, 57 (1943). | **Not a genuine dispute.**<br><br>This is a contention of law, not fact as is indicated by its reference to legal authority and not underlying facts. |
| 14. McKesson has delivered the "Merchandise" that FM Group ordered pursuant to the terms of the Supply | **Disputed**<br>There are significant | **Not a genuine dispute.** |

5

| | | |
|---|---|---|
| Agreement.<br><br>    Ana Schrank Decl. at ¶4. | discrepancies and credits indicated in the Statement produced in discovery (the **"Statement"**), including 41 items in the form of Addbills, Pricing Corrections, Fee Billing, Invoices and Credits issued after 9/19/2007.<br><br><u>See</u> Declaration of Christian Tregillis in Opposition to [MSJ] (the **"Tregillis Decl."**) at ¶ 17, and Exhibit 7 attached thereto; the Statement attached as Exhibit 8 to the Declaration of Matthew S. Kenefick in Opposition to [MSJ] (the **"Kenefick Decl."**) | The contention that there are "discrepancies and credits indicated in the Statement produced in discovery" does not speak to whether the Merchandise that FM Group and its constituent Pharmacies ordered was <u>delivered</u> to FM Group and its Pharmacies. There is no genuine issue of fact concerning delivery of Merchandise. |

| | | |
|---|---|---|
| 15. As of October 31, 2007, McKesson had issued invoices to FM Group totaling at least $724,574.80, which remain unpaid.<br><br>    Ana Schrank Decl. at ¶20. | **Disputed**<br>There are serious and irreconcilable discrepancies in the amount McKesson claims is due, there are substantial errors in the invoices produced by McKesson in discovery (the **"Unpaid Invoices"**), and the Statement contains multiple significant errors and overcharges.<br>    See Tregillis Decl. at ¶¶ 6-24, and Exhibits 2-9 attached thereto; the Unpaid Invoices and Statement attached as Exhibits 7 and 8 to Kenefick Decl. | **Not a genuine dispute.**<br><br>The contention that there are "discrepancies and credits indicated in the Statement produced in discovery" does not speak to whether McKesson had issued invoices to FM group totaling at least $724,574.80, which remains unpaid. Those invoices were issued. Fact No. 15 as written is not disputed. |
| 16. As of May 30, 2008, FM Group owes McKesson $814,419.44, excluding the earned volume discount, which is waived for purposes of McKesson Corporation's instant Motion for Summary Judgment or, in the alternative, Summary Adjudication.<br><br>    Ana Schrank Decl. at ¶21; May 30, 2008 Statement for Familymeds Group, Inc. attached as Exhibit E to the Compendium of Exhibits (Authenticated by Leslie Morgan Decl. at ¶10); Leslie Morgan Decl. at ¶¶ 1-22 (verifying invoiced amounts). | **Disputed**<br>There are serious and irreconcilable discrepancies in the amount McKesson claims is due, there are substantial errors in the Unpaid Invoices, and the Statement contains multiple significant errors and overcharges.<br>    See Tregillis Decl. at ¶¶ 6-24, and Exhibits 2-9 attached thereto; the Unpaid Invoices and Statement attached as Exhibits 7 and 8 to Kenefick Decl. | **Not a genuine dispute.**<br><br>In order to dispute a fact, FM Group must do more than make allegations or raise questions. The alleged "serious and irreconcilable discrepancies in the amount McKesson claims is due" are addressed in the Reply and supporting papers. |

7

| | | |
|---|---|---|
| 17. On December 28, 2004, Familymeds, Inc. ("FM Inc.") and Valley Drug Company South ("Valley Drug") entered into a written agreement entitled "Prime Warehouse Supplier Agreement" with D&K Healthcare Resources Inc. ("D&K").<br><br>Prime Warehouse Supplier Agreement at p.1 (Attached as **Exhibit B** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15). | Undisputed | None. |
| 18. On December 27, 2005, DrugMax, Inc. ("DrugMax") and FM Inc. entered into a written agreement entitled "First Amendment To Prime Warehouse Supplier Agreement" with D&K.<br><br>First Amendment To Prime Warehouse Supplier Agreement at p.1 (Attached as **Exhibit C** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15). | Undisputed | None. |
| 19. McKesson was not a signatory to the Prime Warehouse Supplier Agreement.<br><br>Prime Warehouse Supplier Agreement at p. 6 (Attached as **Exhibit C** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15); Ana Schrank Decl. at ¶15. | Undisputed | None. |
| 20. McKesson was not a signatory to the First Amendment To Prime Warehouse Supplier Agreement.<br><br>First Amendment To Prime Warehouse Supplier Agreement at pp. 13-14 (Attached as **Exhibit C** to the Compendium of Exhibits; Authenticated by Ana Schrank Decl. at ¶15); Ana Schrank Decl. at ¶15. | Undisputed | None. |
| 21. McKesson and D&K are separate corporate entities.<br><br>Ana Schrank Decl. at ¶14. | Undisputed | None. |
| 22. In August 2005, McKesson acquired the stock of D&K.<br><br>Ana Schrank Decl. at ¶14. | **Disputed**<br>The stock of D&K was acquired by Spirit Acquisition Corporation on August 30, 2005.<br><br>See Mercadante Decl. at ¶ 7, and Exhibit 2 attached thereto. | **Not a genuine dispute as to a material fact.**<br>Following the merger in 2005, McKesson owned the stock of the surviving entity called "D&K Healthcare Resources, Inc." |

8

| 23. On May 5, 2008, the Court dismissed FM Inc. as a party in this action.<br><br>"Order Re May 5, 2008, Case Management Conference" dated May 5, 2008 at p. 2: lines 5-6 (Attached as **Exhibit K** to the Compendium of Exhibits; Authenticated by Declaration of Kristen E. Caverly, dated June 4, 2008, at ¶ 2). | **Disputed**<br>The Court's Order Re May 5, 2008 (the "**May 5 Order**") did not dismiss FM Inc. as a party in this Action.<br><br><u>See</u> May 5, Order attached as Exhibit K to McKesson's Compendium. | **Stipulated.**<br>The Court has clarified that FM, Inc. has been dismissed. |

The chart below provides McKesson's response to the additional "facts" asserted by FM Group.  Where McKesson's response is listed as "Undisputed and not material" and/or "not material" and/or "undisputed", McKesson <u>does not dispute the fact and deems it not material for purposes of this motion solely</u>.

**CHART 2:**

<u>**RESPONSES AND OBJECTIONS OF McKESSON TO NEW "FACTS" LISTED BY FAMILYMEDS**</u>

| Column A<br>Facts from Familymeds | Column B<br>Response of McKesson | Column C<br>Objections |
|---|---|---|
| 24. FM Group is a reseller of pharmaceutical products.<br><br>Mercadante Decl. at ¶ 5. | Not material and therefore undisputed. | |
| 25. FM Inc. is a wholly owned subsidiary of FM Group and is the operating company for Familymeds.<br><br>Mercadante Decl. at ¶ 6 | Not material and therefore undisputed. | · |
| 26. Familymeds owned and operated a total of 91 pharmacies - 41 were retail pharmacies, 44 were clinic pharmacies, three (3) were long term care pharmacies, and three (3) were worksite pharmacies.<br><br>Mercadante Decl. at ¶ 17. | There is no genuine contention that the Supply Agreement only imposed a payment deadline for payment on 41 out of 91 Pharmacies owned or operated by FM Group but provided no deadline for the remaining 50 | (a) Relevance, including inadmissible parol evidence. |

9

| | | |
|---|---|---|
| | Pharmacies.<br><br>See, Supplemental Declaration of Ana Schrank filed and served herewith (the "Supp. Schrank Decl.") at ¶¶ 3-11; Reply, pp.10; lls.5-28; Supply Agreement, prefatory paragraph | |
| 27. D&K was a wholesale supplier of pharmaceutical products.<br>    Mercadante Decl. at ¶ 7. | Undisputed and not material. | |
| 28. D&K is a wholly-owned subsidiary of McKesson.<br>    Mercadante Decl. at ¶ 7, and Exhibit 2 attached thereto. | Undisputed. | |
| 29. D&K no longer exists as a corporation; on January 1, 2006, D&K converted into a Delaware limited liability company, with McKesson as its sole member.<br>    Mercadante Decl. at ¶ 7, and Exhibit 2 attached thereto. | Undisputed and not material. | |
| 30. McKesson is a wholesale supplier of pharmaceuticals.<br>    Supply Agreement at p.1. | Undisputed. | |
| 31. There were approximately $142,038,393.32 in invoices to Familymeds under the First Agreement - $1,071,723.72 of which were originated from McKesson.<br>    Mercadante Decl. at ¶ 20. | Not material or relevant and neither disputed nor undisputed. | (a) Relevance<br><br>(b)  Best Evidence Rule: Invoices at issue would be best evidence of what was charged and by whom.<br><br>(c) Lack of foundation. |

| | | |
|---|---|---|
| 32. Following McKesson publically [sic] announcing its acquisition of D&K, in August 2005, McKesson informed Familymeds that the First Agreement would have to be amended to reflect McKesson pricing and payment terms.<br>    Mercadante Decl. at ¶ 11. | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |
| 33. The First Amendment was negotiated and drafted by McKesson's San Francisco corporate office and legal department.<br>    Mercadante Decl. at ¶ 13. | Not material or relevant and neither disputed nor undisputed. | (a) Relevance<br><br>(b) Hearsay |
| 34. The First Amendment was executed by Paul C. Julian.<br>    Mercadante Decl. at ¶ 14 | **Disputed and Not Material**<br>The First Amendment was executed by D&K Healthcare Resources Inc. ("D&K") and the President of D&K at the time was Mr. Paul C. Julian who executed the First Amendment on behalf of D&K.<br>    See, Supp Schrank Decl. at ¶13. | (a) Relevance |
| 35. The First Amendment provided that all notices were to be served on McKesson.<br>    See First Amendment to Prime Warehouse Supplier Agreement attached as Exhibit C to McKesson's Compendium (the **"First Amendment"**) at p.13, ¶ 14 (amending Section 24). | **Disputed and Not Material.**<br><br>See First Amendment to Prime Warehouse Supplier Agreement attached as Exhibit C to McKesson's Compendium (the **"First Amendment"**) at p.13, ¶ 14 (amending Section 24). | |
| 36. Beginning in February 2006, and until December 2006, McKesson sent to Familymeds all invoices under the First Amendment, and payment of those invoices was sent to McKesson.<br>    Mercadante Decl. at ¶ 15. | Not material or relevant and neither disputed nor undisputed. | (a) Relevance<br><br>(b) Best Evidence Rule: Invoices at issue would be best evidence of what was charged and by whom.<br><br>(c) Lack of foundation.<br><br>(d) Vague and ambiguous as to use of term "Familymeds." |

11

| | | |
|---|---|---|
| 37. Under the First Amendment, Familymeds was invoiced a collective amount of $155,337,001.69 - of which, $11,515,205.00 in invoices were originated from D&K and $143,821,796.69 were originated from McKesson.<br>    Mercadante Decl. at ¶ 20. | Not material or relevant and neither disputed nor undisputed. | (a) Relevance<br>(b) Best Evidence Rule: Invoices at issue would be best evidence of what was charged and by whom.<br>(c) Lack of foundation. |
| 38. The First Amendment required payment within fourteen (14) days from the date of invoice for products delivered to Familymeds' pharmacies.<br>    See First Amendment at p.6, ¶ 10 (amending Section 9.A). | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |
| 39. The First Amendment re-defined the "Cost of Goods" to have a base-line of the manufacturer's published acquisition costs, to be discounted based upon manufacturer pricing concessions.<br>    See First Amendment at p.3, ¶ 10 (amending Section 8.A). | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |
| 40. The First Amendment provided for a discount under Cost Plus pricing based on a graduated basis correlating to purchase volume,<br><br>    See First Amendment at pp. 3-4, ¶ 10 (amending Section 8.C). | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |
| 41. The First Amendment provided for Familymeds to receive<br><br>    See First Amendment at p.3, ¶ 10 (amending Section 8.A). | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |
| 42. The First Amendment carved out from<br><br>    See First Amendment at pp. 3-4, ¶ 10 (amending Section 8.C). | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |

Case No. 4:07-cv-05715 WDB
Request to Strike, Objection To and Reconciliation of Statements of Undisputed Facts

| | | |
|---|---|---|
| 43. The First Amendment required participation<br><br>See First Amendment at p.12, ¶ 12 (amending Section 11). | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |
| 44. McKesson invoiced Familymeds a total of $60,286,260.08 under the Supply Agreement.<br>Mercadante Decl. at ¶ 20 | Not material and neither disputed nor undisputed | · |
| 45. The Supply Agreement was negotiated and drafted by McKesson's San Francisco corporate office and legal department.<br>Mercadante Decl. at ¶ 13. | Not material or relevant and neither disputed nor undisputed. | (a) Relevance |
| 46. The Supply Agreement was executed by Paul C. Julian.<br>Mercadante Decl. at ¶ 14. | **Disputed.**<br>The Supply Agreement was signed by McKesson Corporation Mr. Paul C. Julian signed the Supply Agreement in his capacity as Executive Vice President, Group President of McKesson.<br>See, Supp. Schrank Decl. at ¶13. | |
| 47. McKesson sent invoices and received payments arising under the Supply Agreement.<br>Mercadante Decl. at ¶ 20. | Undisputed. | |
| 48. The Supply Agreement limited the expedited payment terms to FM Group's retail pharmacies.<br>See Supply Agreement at p.2, ¶4.A; Mercadante Decl. ¶¶ 18-19. | **Disputed.**<br>See, Supp. Schrank Decl. at ¶ ¶ 3-11; Reply, pp.10; lls.5-28; Supply Agreement, prefatory paragraph.<br>· | (a) Relevance, including inadmissible parol evidence. |
| 49. The Supply Agreement<br><br>See Supply Agreement at p.4, ¶5.B. | Undisputed and not material. | |

13

| | | |
|---|---|---|
| 50. The Supply Agreement Cost Plus structure provided for a discount on a graduated basis correlating to purchase volume,<br><br>   <u>See</u> Supply Agreement at pp. 4-5, ¶5.C. | Not material or relevant and neither disputed nor undisputed.. | |
| 51. The Supply Agreement also carved out<br><br><br>   <u>See</u> Supply Agreement at p.5, ¶5.C. | Undisputed and not material. | (a) Relevance. |
| 52. The Supply Agreement required participation in<br><br><br>   <u>See</u> Supply Agreement at p.12, ¶9. | Undisputed and not material. | (a) Relevance. |
| 53. McKesson only provided Familymeds with information pertaining to the Supply Agreement through the McKesson SMO.<br>   Mercadante Decl. at ¶ 14. | <u>**Disputed and Not Material.**</u><br>FM Group also (1) received invoices for each order that it made, (2) it had access to an account manager whom they could call with inquiries about billing, (3) it received monthly statements by email that were generated by the SMO System. | (a) Relevance. |
| 54. The SMO is a web-based application which is accessed through the Internet.<br>   Mercadante Decl. at ¶ 21. | Undisputed. | (a) Relevance. |
| 55. The SMO only provided Familymeds with the products it ordered and the prices extended - it did not provide Familymeds with any of the underlying information pertaining to how those prices were calculated and whether such calculations conformed to the formulas agreed upon in the Supply Agreement.<br>   Mercadante Decl. at ¶ 21. | Undisputed and not material. | (a) Relevance. |

14

| | | |
|---|---|---|
| 56. On or about September 30, 2007, McKesson terminated Familymeds' access to the SMO.<br>　　Mercadante Decl. at ¶ 22. | **Disputed..**<br>See, Supplemental Declaration of Leslie Morgan filed and served herewith ("Supp. Morgan Decl.")at ¶9.<br>. | |
| 57. Familymeds had previously downloaded EDI files from the SMO; however, these files involve hyper-linked core files which would no longer work as a result of McKesson terminating Familymeds' access to the SMO.<br>　　Mercadante Decl. at ¶ 22. | Undisputed and not material.<br><br>McKesson does not know what Familymeds may have done. | (a)  Relevance. |
| 58. McKesson has exclusive possession and control of the information necessary to verify whether the prices extended to Familymeds were accurately calculated in accordance with the terms of the Supply Agreement.<br>　　Mercadante Decl. at ¶¶ 23-24. | **Disputed and Not Material.**<br>. | |
| 59. In September 2007, McKesson informed Familymeds that it was terminating the Supply Agreement.<br>　　Mercadante Decl. at ¶ 25. | **Disputed and Not Material.**<br>McKesson did not terminate the Supply Agreement; it stopped shipping product based on non-payment by FM Group.<br>See, Supplemental Declaration of Ana Schrank filed and served herewith at ¶14. | |
| 60. Following notice of termination of the Supply Agreement, Familymeds reviewed its records - a standard practice when concluding such a business relationship.<br>　　Mercadante Decl. at ¶ 25. | Undisputed and not material.<br><br>McKesson did not terminate the Supply Agreement. McKesson does not know what Familymeds may have done. | |
| 61. Using the limited information available to Familymeds, Familymeds investigated the transactions under the | Undisputed and not material | (a) Relevance.<br>(b) Lack of Foundation. |

15

| | | |
|---|---|---|
| Supply Agreement as well as those which occurred under the First Amendment following McKesson's acquisition of D&K (the "**Audit**").<br>Mercadante Decl. at ¶ 26. | McKesson did not terminate the Supply Agreement McKesson does not know what Familymeds may have done. | |
| 62. In the Audit, Familymeds examined the average generic deflation in prices during time periods relevant to the Supply Agreement, and determined that McKesson had most likely improperly delayed extending the resulting deflation amounts to Familymeds on an average of approximately 14 days.<br>Mercadante Decl. at ¶ 26(a). | **Disputed and Not Material.** | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert.<br><br>(b) Mr. Mercandante's investigation does not rise to the level of an "Audit."<br><br>(c) Mr. Mercadante's opinions are not admissible evidence.<br><br>(d) Hearsay – including because Mr. Mercadante's opinions rely on data he claims to have obtained from third parties such as the National Association of Chain Drug Stores and on other "research" he performed that he does not provide.<br><br>(e) Relevance.<br><br>(f) Lack of foundation. |
| 63. Generics accounted for approximately 12% (or $7,234,351.25) of all of Familymeds' purchases under the Supply Agreement.<br>Mercadante Decl. at ¶ 26(a). | Not material or relevant and neither disputed nor undisputed. | (a)  Relevance<br><br>(b)  Lack of foundation<br><br>(c)  Hearsay |
| 64. The improper 14 day delay in extending to Familymeds deflation price reductions equated to an estimated $47,746.72 in overcharges under the Supply Agreement.<br>Mercadante Decl. at ¶ 26(a). | Not material or relevant and neither disputed nor undisputed. | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert.<br><br>(b) Mr. Mercandante's investigation does not rise to the level of an "Audit."<br><br>(c) Mr. Mercadante's |

16

| | | |
|---|---|---|
| | | opinions are not admissible evidence. |
| | | (d) Hearsay – including because Mr. Mercadante's opinions rely on  data he claims to have obtained from third parties such as the National Association of Chain Drug Stores and he relies on data from the SMO and does not provide copies of that data. |
| | | (e) Relevance. |
| | | (e) Lack of foundation |
| | | (f) Assumes facts not in evidence.. |
| 65. In the Audit, Familymeds examined products which McKesson categorized as Specially Priced.<br>    Mercadante Decl. at ¶ 26(b). | **Disputed and Not Material.**<br><br>McKesson does not know what Familymeds may have done. | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert. |
| | | (b) Mr. Mercandante's investigation does not rise to the level of an "Audit." |
| | | (c) Mr. Mercadante's opinions are not admissible evidence. |
| | | (d) Hearsay – including because Mr. Mercadante's opinions rely on data he claims to have obtained from from the SMO and he provides none of the data. |
| | | (e) Relevance. |
| | | (e) Lack of foundation. |
| 66. Familymeds discovered that McKesson had categorized approximately 6.5% (or $3,918,606.92) of all non-generic drug purchases under the Supply Agreement as Specially Priced. | **Disputed and Not Material.**<br><br>What Mr. Mercadante may have discovered is not a fact. | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an |

17

| | | |
|---|---|---|
| 1 Mercadante Decl. at ¶ 26(b). | | expert. |
| 2 | | (b) Mr. Mercandante's investigation does not rise to the level of an "Audit." |
| 3 | | |
| 4 | | (c) Mr. Mercadante's opinions are not admissible evidence. |
| 5 | | |
| 6 | | (d) Hearsay – included because Mr. Mercadante's opinions rely on data he claims to have obtained from the SMO and he provides none of the data. |
| 7 | | |
| 8 | | |
| 9 | | (e) Relevance. |
| 10 | | (e) Lack of foundation. |
| 11 67. Familymeds also discovered that McKesson had previously invoiced Familymeds for many of the same exact products under the Cost Plus pricing structure. | **Disputed and Not Material.** | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore: |
| 12 | | |
| 13     Mercadante Decl. at ¶ 26(b). | What Mr. Mercadante may have discovered is not a fact. | (a) Mr. Mercadante is not qualified to testify as an expert. |
| 14 | | |
| 15 | | (b) Mr. Mercadante's investigation does not rise to the level of an "Audit." |
| 16 | | |
| 17 | | (c) Mr. Mercadante's opinions are not admissible evidence. |
| 18 | | (d) Hearsay – including because Mr. Mercadante's opinions rely on  data he claims to have obtained from the SMO and he provides none of the data.. |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | (e) Relevance. |
| 23 | | (e) Lack of foundation. |
| 24 68. McKesson invoiced Familymeds, on the average, 2.3% more per line extension under Specially Priced than it previously had for that same merchandise under Cost Plus. | **Disputed and Not Material.** | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore: |
| 25 | | |
| 26 | | (a) Mr. Mercadante is not qualified to testify as an expert. |
| 27     Mercadante Decl. at ¶ 26(b). | | |
| 28 | | (b) Mr. Mercadante's investigation does not rise to |

18

| | | |
|---|---|---|
| | | the level of an "Audit." |
| | | (c) Mr. Mercadante's opinions are not admissible evidence. |
| | | (d) Hearsay – including because Mr. Mercadante's opinions rely on data he claims to have obtained from the SMO and he provides none of the data.. |
| | | (e) Relevance. |
| | | (e) Lack of foundation. |
| 69. McKesson had not provided Familymeds with any explanation, notice, or reasoning for its change in billing categories for these items.<br>Mercadante Decl. at ¶ 26(b). | **Disputed and Not Material.** | (a) Relevance. |
| 70. This equated to an estimated $90,127.96 in possible overcharges under the Supply Agreement.<br>Mercadante Decl. at ¶ 26(b). | **Disputed and Not Material.** | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert.<br><br>(b) Mr. Mercandante's investigation does not rise to the level of an "Audit."<br><br>(c) Mr. Mercadante's opinions are not admissible evidence.<br><br>(d) Hearsay – including because Mr. Mercadante's opinions rely on data he claims to have obtained from the SMO and he provides none of the data.<br><br>(e) Relevance.<br><br>(f) Lack of foundation. |
| 71. In examining invoices for products billed under the Cost Plus pricing structure under the Supply Agreement, Familymeds discovered that the manufacturer pricing rebates and pricing incentives which were to be extended to Familymeds pursuant to the Supply | Not material or relevant and neither disputed nor undisputed.<br><br>McKesson does not know what Familymeds may have done. | The Mercandante Declaration contains no admissible evidence that would support this alleged fact. Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert. |

19

| | | |
|---|---|---|
| Agreement were not indicated in the invoices to Familymeds.<br>Mercadante Decl. at ¶ 26(c). | | expert.<br>(b) Mr. Mercandante's investigation does not rise to the level of an "Audit."<br>(c) Mr. Mercandante's opinions are not admissible evidence.<br>(d) Hearsay – including because Mr. Mercadante's opinions rely on data he claims to have obtained from the National Association of Chain Drug Stores and from the General Accounting Office, and he relies on data from the SMO and does not provide copies of that data.<br>(e) Relevance.<br>(f) Lack of foundation. |
| 72. In the Audit, Familymeds examined McKesson's invoices under the Supply Agreement to determine if McKesson had properly charged Familymeds under the Contract Products pricing structure.<br>Mercadante Decl. at ¶ 26(d). | Not material or relevant and neither disputed nor undisputed.<br><br>McKesson does not know what Familymeds may have done. | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. Furthermore:<br>(a) Mr. Mercadante is not qualified to testify as an expert.<br>(b) Mr. Mercandante's investigation does not rise to the level of an "Audit."<br>(c) Mr. Mercandante's opinions are not admissible evidence.<br>(d) Hearsay – including because Mr. Mercadante's opinions rely on data he claims to have obtained from the National Association of Chain Drug Stores and from the General Accounting Office, and he relies on data from the SMO and does not provide copies of that data.<br>(e) Relevance.<br>(f) Lack of foundation. |
| 73. Familymeds determined that McKesson had not honored the bid price | **Disputed and Not Material.** | The Mercadante Declaration contains no admissible evidence that would support |

| | | |
|---|---|---|
| arranged by contracts that Familymeds entered through GPO's, which affected an estimated $53.5 million in product.<br>Mercadante Decl. at ¶ 26(d). | What Mr. Mercadante claims Familymeds determined is not a fact. | this alleged fact.<br>Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert.<br><br>(b) Mr. Mercadante's investigation does not rise to the level of an "Audit."<br><br>(c) Mr. Mercadante's opinions are not admissible evidence.<br><br>(d) Hearsay – including because Mr. Mercadante's opinions apparently rely on data he claims to have obtained from the SMO and does not provide copies of that data.<br><br>(e) Relevance.<br><br>(f) Lack of foundation. |
| 74. Familymeds then determined that McKesson most likely overcharged Familymeds approximately 0.5% on these purchases by failing to ($267,500.00).<br>Mercadante Decl. at ¶ 26(d). | **Disputed and Not Material.**<br><br>What Mr. Mercadante claims Familymeds determined is not a fact. | The Mercadante Declaration contains no admissible evidence that would support this alleged fact.<br>Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert.<br><br>(b) Mr. Mercadante's investigation does not rise to the level of an "Audit."<br><br>(c) Mr. Mercadante's opinions are not admissible evidence.<br><br>(d) Hearsay – including because Mr. Mercadante's opinions apparently rely on data he claims to have obtained from the SMO and does not provide copies of that data.<br><br>(e) Relevance.<br><br>(f) Lack of foundation. |
| 75. This Audit was conducted using the limited information McKesson had provided to Familymeds. | **Disputed and Not Material.**<br><br>What Mr. Mercadante | The Mercadante Declaration contains no admissible evidence that would support this alleged fact. |

21

| | | |
|---|---|---|
| Mercadante Decl. at ¶ 26. | used to complete his "Audit" is unknown to McKesson; it is not a fact. | Furthermore:<br><br>(a) Mr. Mercadante is not qualified to testify as an expert.<br><br>(b) Mr. Mercandante's investigation does not rise to the level of an "Audit."<br><br>(c) Mr. Mercadante's opinions are not admissible evidence.<br><br>(d) Hearsay – including because Mr. Mercadante's opinions apparently rely on data he claims to have obtained from the SMO and does not provide copies of that data.<br><br>(e) Relevance.<br><br>(f) Lack of foundation. |
| 76. Familymeds requires the underlying documentation from McKesson to fully ascertain the full extent of McKesson's overcharges under the Supply Agreement.<br>Mercadante Decl. at ¶ 26; Tregillis Decl. at ¶¶ 4-5. | **Disputed and Not Material.** | This is argument; not a fact. |
| 77. In a letter dated September 18, 2007, and addressed to Ana Schrank of McKesson, James E. Searson, a Familymeds officer and director, requested documentation pertaining to prior account statements, Specially Priced Products, charges, credits, pricing adjustments, and payments.<br>Mercadante Decl. at ¶ 27, and Exhibit 4 attached thereto. | Undisputed and not material. | |
| 78. Familymeds' September 18, 2007 request was refused.<br>Mercadante Decl. at ¶ 27. | Undisputed and not material. | |
| 79. On November 9, 2007, McKesson filed its Complaint for Breach of Contract to enforce amounts allegedly due under the Supply Agreement.<br>See Complaint for Breach of Contract attached as Exhibit G to McKesson's Compendium. | Undisputed. | |

22

| | | |
|---|---|---|
| 80. On December 17, 2007, Familymeds filed their Counterclaim, which includes the Cross-Complaint.<br>See Counterclaim for Specific Performance of Contract and Accounting; Cross-Complaint for Accounting attached as Exhibit H to Compendium. | Undisputed. | |
| 81. On January 14, 2008, McKesson filed its Motion to Dismiss, wherein, McKesson requested the Court to order FM Inc. to file a separate lawsuit or to file a motion for FM Inc. to join the First Action.<br>See Amended Notice of Motion, Motion, Memorandum of Points and Authorities of McKesson Corporation Seeking to Dismiss: (1) Counterclaim for Specific Performance of Contract; and (2) Cross-Complaint for Accounting attached as Exhibit J to McKesson's Compendium. | **Disputed and Note Material.**<br><br>The Motion to Dismiss, which was filed on January 14, 2008 sought a dismissal of the Counterclaim and Cross-Complaint (sometimes referred to as the Cross-Complain and Counterclaim.) | |
| 82. On March 12, 2008, this Court held the initial case management conference for this action and ordered that discovery would be stayed and that the parties were to conduct an informal accounting conference.<br>See Exhibit 1 to Kenefick Decl. | **Disputed and Not Material.**<br><br>The order issued following the March 12 hearing required the parties, before April 30, 2008, to "exchange information about the disputed accounts and must meet to discuss settlement of the parties' claims." It was not an "accounting conference." | |
| 83. On May 5, 2008, the Court heard and denied McKesson's Motion to Dismiss without prejudice, directing FM Inc. to either file a motion to join the First Action, or to file a separate action, and lifted the stay on discovery.<br>See May 5 Order attached as Exhibit K to McKesson's Compendium. | **Disputed and Not Material.**<br><br>The May 5 Order did deny the Motion to Dismiss without prejudice and it did lift the stay on discovery, but it did not direct FM Inc. to either file a motion to join the First Action, or to file a separate action. It stated that "Familymeds Group may, using an | |

| | | |
|---|---|---|
| | appropriate procedural device, seek to add Familymeds Inc., and/or D&K as a party in this or a separate lawsuit." | |
| 84. In the MSJ, McKesson seeks an adjudication that it is entitled to $814,419.44 in damages, plus additional service charges and interest accrued thereon under its breach of contract claim.<br>    <u>See</u> Notice of Motion; Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation; and Memorandum of Points and Authorities (the "**Memorandum of Points and Authorities**") at p.4, Line 17. | <u>**Disputed and Not Material.**</u><br><br>In the MSJ, McKesson seeks "not less than $814,419.44, [footnote omitted] plus additional service charges as continue to accrue from and after May 31, 2007, plus pre-judgment interest from and after November 9, 2007 when the Complaint was filed, plus attorneys' fees and costs, and determining that the claims alleged by Familymeds in their [Counterclaim & Cross-Complaint] have no merit. | |
| 85. This amount is based on invoices and service charges thereon as indicated in the Statement.<br>    <u>See</u> Declaration of Leslie Morgan in Support of Motion for Summary Judgment or, in the Alternative, Summary Adjudication by McKesson Corporation (the "**Morgan Decl.**") at ¶ 10. | <u>**Disputed and Not Material.**</u><br><br>The $814,419.44 was based on the May 30 Statement. | |
| 86. McKesson also seeks its attorneys' fees.<br>    <u>See</u> Memorandum of Points and Authorities at p.21, Line 25. | Undisputed. | |
| 87. In the MSJ, McKesson seeks an adjudication that FM Group is not entitled to an accounting from McKesson under the Supply Agreement in equity or under contract.<br>    <u>See</u> Memorandum of Points and Authorities at p.22, Line 1-2. | Undisputed. | |
| 88. In the MSJ, McKesson seeks an adjudication that FM Inc. is not entitled | Undisputed. | |

| | | |
|---|---|---|
| to an accounting in equity.<br>See Memorandum of Points and Authorities at p.22, Line 1-2. | | |
| 89. The Statement was later produced in discovery.<br>See Exhibit 8 to Kenefick Decl. | Undisputed. | |
| 90. McKesson also produced in discovery the Unpaid Invoices.<br>See Exhibit 7 to Kenefick Decl. | Undisputed (to the best of our knowledge) | |
| 91. On June 6, 2008, Familymeds filed its Complaint for Specific Performance of Contract and Accounting, which includes a cause of action by FM Inc. against McKesson for an accounting in equity.<br>See Exhibit 2 to Kenefick Decl. | Undisputed and not material. | |
| 92. On June 18, 2008, the Court entered its order granting the Administrative Motion to Consider Whether Cases Should be Related of Familymeds, thereby designating the First Action and Second Action as related and re-assigning the Second Action to Judge Brazil.<br>See Exhibit 3 to Kenefick Decl. | Undisputed and not material. | |
| 93. On July 14, 2008, Familymeds requested McKesson stipulate to FM Inc. dismissing the Cross-Complaint without prejudice. McKesson refused this request.<br>Kenefick Decl. ¶ 18, Exhibit 9 attached thereto. | Undisputed. | |
| 94. Familymeds requested McKesson continue hearing on the MSJ to allow sufficient time for the Court to address Familymeds' request for leave to dismiss the Cross-Complaint without prejudice - McKesson denied this request as well.<br>Kenefick Decl. ¶ 18, Exhibit 9 attached thereto. | **Disputed and not material.**<br><br>McKesson had already granted Familymeds a two-week extension (which Familymeds finally accepted), so the hearing on the MSJ had already been postponed once. McKesson was not willing to agree to serial extensions of the hearing on the MSJ.<br>*See* Exhibit 19 to the Kenefick Decl. (email from Maria K. Pum to | |

25

| | | |
|---|---|---|
| | Matthew Kenefick). | |
| 95. On July 16, 2008, Familymeds filed its Dismissal Motion.<br>    Kenefick Decl. ¶ 19, Exhibit 10 attached thereto. | Undisputed and not material. | |
| 96. Discovery was stayed until the parties conducted their Federal Rule of Civil Procedure 26(f)(1) conference on January 23, 2008.<br>    Kenefick Decl. ¶ 5. | Undisputed and not material. | |
| 97. On June 11, 2008, Familymeds served on McKesson its Written Discovery.<br>    Kenefick Decl. ¶¶ 6-7, Exhibits 4-5 attached thereto. | Undisputed and not material. | |
| 98. On June 30, 2008, Familymeds requested McKesson to continue the hearing on the MSJ for sixty (60) days to allow Familymeds sufficient time to review and analyze McKesson's responses to the Written Discovery, as well as to conduct follow-up discovery, including depositions.  McKesson rejected this request.<br>    Kenefick Decl. ¶ 8. | Undisputed and not material. | |
| 99. Following repeated requests from Familymeds, McKesson finally agreed to continue the hearing on the MSJ for two (2) weeks until August 20, 2008.<br>    Kenefick Decl. ¶ 8. | **Disputed and Not Material.**<br><br>During the very first call during which Familymeds requested a 60-day postponement of the hearing on the MSJ, McKesson offered Familymeds a one- or two-week extension.<br>    See the Declaration of Maria K. Pum filed and served herewith at ¶10. | |
| 100.    On July 17, 2008, Familymeds received McKesson's Responses to the Written Discovery which are primarily comprised of objections.<br>    Kenefick Decl. ¶ 9, Exhibit 6 attached thereto. | **Disputed and Not Material.**<br><br>McKesson has no ability to know when the responses to discovery were received; McKesson does not agree that the responses consisted primarily of | |

26

| | | |
|---|---|---|
| | objections. | |
| 101.    In connection with the Responses, McKesson supplied a cd-rom with [sic]containing certain spreadsheets.<br>        Kenefick Decl. ¶ 11. | Undisputed. | |
| 102.    These spreadsheets, while containing tens of thousands of line entries, lack key data fields which would enable Familymeds to discern the accuracy of the Unpaid Invoices and Statement.<br>        Kenefick Decl. ¶ 15. | **Disputed.** | |
| 103.    McKesson converted these spreadsheets to .pdf format before production, thereby rendering the spreadsheets virtually unusable.<br>        Kenefick Decl. ¶ 12. | **Disputed and Not Material.**<br><br>The spreadsheets were converted to pdf format so that they could be bates labeled and the data could not be altered.  No request for a different format was made.  Apparently Familymeds' experts used the spreadsheets adequately, as was expected when the spreadsheets were produced. | |
| 104.    The "Total Net Invoice" amount indicated in the Unpaid Invoices is $634,726.<br>        See Tregillis Decl. at ¶ 6; Unpaid Invoices attached as Exhibit 7 to the Kenefick Decl. | **Disputed.**<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶11. | |
| 105.    McKesson claims this amount is $747,470 in its MSJ.<br>        See Memorandum of Points and Authorities at p.11, Lines 3-11. | **Disputed.**<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶5-6. | |

27

| | |
|---|---|
| 106.    McKesson, at another point in the MSJ, states this amount is $724,574.<br>_See_ Memorandum of Points and Authorities at p.5, Line 11. | **Disputed.**<br><br>_See_, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶6. |
| 107.    The Statement indicates this amount as $707,879.<br>_See_ Tregillis Decl. at ¶ 6; Statement attached as Exhibit 8 to the Kenefick Decl. | **Disputed.** |
| 108.    The Statement contains 41 line items entered after September 19, 2007 (some as late as May 30, 2008) - when Familymeds stopped making purchases from McKesson.<br>Tregillis Decl. at ¶ 17, and Exhibit 7 attached thereto. | Undisputed and not material. |
| 109.    The Statement contains unexplained and irreconcilable positive adjustments totaling $32,045 and negative adjustments in the amount of $35,363.<br>Tregillis Decl. at ¶ 17, and Exhibit 7 attached thereto. | **Disputed.**<br><br>The adjustments are all adequately explained and are justified.<br>_See_, Supplemental Declaration of Leslie Morgan filed and served herewith ("Supp. Morgan Decl.")at ¶¶3-8. |
| 110.    McKesson concedes that the amount it seeks in the MSJ is not accurate.<br>_See_ Memorandum of Points and Authorities at p.4, Lines 26-28. | **Disputed.**<br><br>The purported fact cites a footnote in which McKesson offers to waive its claim for purposes of the MSJ only to damages due to volume discounts taken by FM Group but not earned. |
| 111.    The sampling methodology used by McKesson to verify the validity of the Unpaid Invoices and Statement fail all standards of accounting practice.<br>Tregillis Decl. at ¶¶ 25-29. | **Disputed and Not Material.** |

| | | |
|---|---|---|
| 112.    The Unpaid Invoices include significant overcharges and pricing errors under the Cost Plus pricing structure which compromise the validity of the Unpaid Invoices as a whole.<br>    Tregillis Decl. at ¶¶ 8-14, 24, and Exhibits 2-6 attached thereto. | **Disputed.**<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith, passim. | |
| 113.    Under the Cost Plus structure, Familymeds was to receive<br><br>    See Supply Agreement at pp. 4-5, ¶ 5.C. | **Disputed.**<br><br>This is only true for products that are priced using the Cost Plus pricing structure. | |
| 114.    For 945 of the line items in the Unpaid Invoices, Familymeds was charged the WAC, with absolutely no discount extended.<br>    Tregillis Decl. at ¶ 9, and Exhibit 2 attached thereto. | Undisputed and not material.<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶13. | |
| 115.    For 48 line items in the Unpaid Invoices, the price charged to Familymeds actually exceeded the WAC.<br>    Tregillis Decl. at ¶ 9, and Exhibit 2 attached thereto. | Undisputed and not material.<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶14. | |
| 116.    For 34 line items, the WAC is different for the same product on the same date.<br>    Tregillis Decl. at ¶ 14, and Exhibit 6 attached thereto. | **Disputed.**<br><br>These are not identical items.<br>    See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶20. | |
| 117.    300 line items in the Unpaid Invoices, representing an aggregate net invoice amount of $59,145, were designated as Contract Price.  These line items list 16 various contracts.<br>    Tregillis Decl. at ¶ 10, and Exhibit 3 attached thereto. | Undisputed. | |

29

| | | |
|---|---|---|
| 118. 155 line items exist where the Contract Price was higher than the Cost Plus pricing, and 20 line items where the Contract Price exceeded the WAC. These constitute improper overcharges.<br>Tregillis Decl. at ¶ 11, and Exhibit 4 attached thereto. | **Disputed.**<br><br>When a customer such as FM Group negotiates a contract price for an item with a particular vendor, the customer gets that price. The do not get "the lesser of Cost of Goods or Contract Price."<br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶15. | |
| 119.<br><br><br>Tregillis Decl. at ¶ 11. | **Disputed.**<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶15. | |
| 120. In the Unpaid Invoices, McKesson seeks $43,440 for NSP and Net Billed products, which equates to $1,055 more than under the Cost Plus pricing structure for the very same products.<br>Tregillis Decl. at ¶ 13, and Exhibit 5 attached thereto. | **Disputed.**<br><br>These are not identical items.<br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶18. | |
| 121. 12 line items are invoiced as Net Billed in certain invoices, yet are also invoiced on the same day under the Cost Plus pricing structure in other invoices.<br>Tregillis Decl. at ¶ 13, and Exhibit 5 attached thereto. | **Disputed.**<br><br>These are not identical items.<br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶18. | |
| 122. The Statement fails to offset credit and debit balances on a chainwide level; rather, McKesson treated each branch pharmacy as a different customer.<br>Tregillis Decl. at ¶ 18. | Undisputed and not material.<br><br>McKesson performed in accordance with the Supply Agreement.<br>See, Supplemental | |

30

| | | |
|---|---|---|
| | Declaration of Leslie Morgan filed and served herewith at ¶22. | |
| 123.    This fails general accounting principals and resulted in $36,677 in negative balances at branch level, which would have otherwise been resolved at chainwide level, causing $6,200 in improper service/late charges.<br>    Tregillis Decl. at ¶ 18, and Exhibit 8 attached thereto. | **Disputed and not material.**<br><br>McKesson performed in accordance with the Supply Agreement<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶22. | This is argument, not fact. |
| 124.    The majority of service/late fees were first assessed on September 17, 2007 - when McKesson terminated the Supply Agreement, and continued to accrue at 1% every 15 days thereafter.<br>    Tregillis Decl. at ¶ 20. | Undisputed and not material—except that McKesson did not terminate the Supply Agreement.<br><br>McKesson performed in accordance with the Supply Agreement. | |
| 125.    Several of the service/late service fees are neither 1% nor 2% (the rates specified in the Supply Agreement) - thus, are in arbitrary and unexplained amounts.<br>    Tregillis Decl. at ¶ 21, and Exhibit 9 attached thereto. | **Disputed and not material.**<br><br>McKesson performed in accordance with the Supply Agreement<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶24. | |
| 126.    A sample of service/late fees reveals that McKesson improperly assessed service/late fees when there were no outstanding invoices due.<br>    Tregillis Decl. at ¶ 20. | **Disputed and not material.**<br><br>McKesson performed in accordance with the Supply Agreement<br><br>See, Supplemental Declaration of Leslie Morgan filed and served herewith at ¶¶22-24. | |
| 127.    McKesson also improperly assed Familymeds $64,923 in service/late fees for non-retail locations, in direct contradiction of the terms of the Supply | **Disputed;**<br><br>(No genuine dispute on the part of Familymeds) | |

31

| | | |
|---|---|---|
| Agreement.<br><br>Tregillis Decl. at ¶ 22; Mercadante Decl. at ¶¶ 18-19. | Familymeds)<br><br>There is no genuine contention that the Supply Agreement only imposed a payment deadline for payment on 41 out of 91 Pharmacies owned or operated by FM Group but provided no deadline for the remaining 50 Pharmacies.<br><br>See, Supplemental Declaration of Ana Schrank filed and served herewith (the "Supp. Schrank Decl.") at ¶¶ 3-11; Reply, pp.10; lls.5-28; Supply Agreement, prefatory paragraph | |
| 128.    In its complaint and MSJ, McKesson seeks recovery of its attorneys' fees.<br><br>See Complaint for Breach of Contract attached as Exhibit G to McKesson's Compendium at p.4, ¶30. | Undisputed. | |
| 129.    The Supply Agreement does not contain a prevailing party attorneys' fees provision.<br><br>See Supply Agreement. | Undisputed. | |
| 130.    McKesson fails to provide in its complaint or its MSJ the basis for its attorneys' fees prayer.<br><br>See Complaint for Breach of Contract attached as Exhibit G to McKesson's; Memorandum of Points and Authorities. | **Disputed.**<br><br>McKesson requests such relief as is just and proper. | |

DATED: August ___, 2008.

HENDERSON & CAVERLY LLP

By: _____
Maria K. Pum
Attorneys for McKesson Corporation

32