1  MARIA K. PUM (State Bar No. 120987)
   KRISTEN E. CAVERLY (State Bar No. 175070)
2  HENDERSON & CAVERLY LLP
   P.O. Box 9144 (all U.S. Mail)
3  16236 San Dieguito Road, Suite 4-13
   Rancho Santa Fe, CA 92067-9144
4  Telephone:   (858) 756-6342
   Facsimile:   (858) 756-4732
5  Email:  mpum@hcesq.com

6  Attorneys for Plaintiff and Counter-defendant
   McKESSON CORPORATION

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  McKESSON CORPORATION, a Delaware corporation, | Case No.4:07-cv-05715 WDB |
| 12               Plaintiff, | **REPLY TO EVIDENTIARY OBJECTIONS RAISED BY FAMILYMEDS GROUP, INC. IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION BY McKESSON CORPORATION** |
| 13       v. | |
| 14  FAMILYMEDS GROUP, INC., f/k/a Drugmax, Inc., a Connecticut corporation, | |
| 15               Defendant. | |
| 16 | |
| 17  FAMILYMEDS GROUP, INC., f/k/a Drugmax, Inc., a Connecticut corporation, | Complaint Filed: November 9, 2007<br>Cross-Complaint Filed: December 17, 2007 |
| 18               Counterclaimant, | Date:  August 20, 2008<br>Time:  1:30 p.m.<br>Place: Ctrm 4<br>       1301 Clay St., 3d Floor<br>       Oakland, CA |
| 19       v. | |
| 20  McKESSON CORPORATION, a Delaware corporation, | |
| 21               Counterdefendant. | Judge: Honorable Wayne D. Brazil |
| 22 | Trial Date: None Set |
| 23  FAMILYMEDS, INC., a Connecticut corporation, | |
| 24               Cross-Complainant, | |
| 25       v. | |
| 26  McKESSON CORPORATION, a Delaware corporation, | |
| 27               Cross-Defendant. | |
| 28 | |

McKESSON CORPORATION ("McKesson"), hereby responds to the evidentiary objections raised by Familymeds Group, Inc. ("FM Group") to the evidence McKesson submitted in support of its motion for summary judgment or, in the alternative, summary adjudication of issues.

I. <u>Declaration of Ana Schrank</u>

1. Schrank Declaration at ¶ 3(a) – As FM Group has admitted in response to Undisputed Fact 1 that the substance of Ms. Schrank's testimony is undisputed, Ms. Schrank's supporting testimony is unnecessary. In addition, as the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement itself as the best evidence of its content.

2. Schrank Declaration at ¶ 3(b) - As FM Group has admitted in response to Undisputed Fact 3 that the substance of Ms. Schrank's testimony is undisputed, Ms. Schrank's supporting testimony is unnecessary. In addition, as the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement itself as the best evidence of its content.

3. Schrank Declaration at ¶ 3(c) – As FM Group has admitted in response to Undisputed Fact 4 that the substance of Ms. Schrank's testimony is undisputed, Ms. Schrank's supporting testimony is unnecessary.

4. Schrank Declaration at ¶ 3(d) – As FM Group has admitted in response to Undisputed Fact 3 that the substance of Ms. Schrank's testimony is undisputed, Ms. Schrank's supporting testimony is unnecessary.

5. Schrank Declaration at ¶ 3(e) - As the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement's integration clause as the best evidence of its content.

6. Schrank Declaration at ¶ 3(f) – As to that portion of Ms. Schrank's testimony which is a quotation from the Supply Agreement, McKesson does not object to the Court relying upon the Supply Agreement as the best evidence of its content. As to Ms. Schrank's explanation of the abbreviations "EFT" and "ACH" used in the Supply Agreement, her testimony is based on her

1

personal knowledge, is not a conclusion of law, and is not vague, ambiguous or conclusory. Ms. Schrank is a senior level executive with McKesson who was intimately involved with FM Group's Supply Agreement and FM Group's failure to timely pay sufficient to give her personal knowledge of the contract meaning in the industry and as between the parties. Moreover, FM Group admits in response to Undisputed Fact 5 the substance of Ms. Schrank's testimony that payment was due within 7 days of invoice.

7. Schrank Declaration at ¶ 3(g) - As the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement's late payment provisions as the best evidence.

8. Schrank Declaration at ¶ 3(h) – As FM Group has admitted in response to Undisputed Fact 8 that the substance of Ms. Schrank's testimony is undisputed, Ms. Schrank's supporting testimony is unnecessary. In addition, as the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement itself as the best evidence of its content.

9. Schrank Declaration at ¶ 3(i) - As the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement itself as the best evidence of its content.

10. Schrank Declaration at ¶ 3 (j) - As the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement itself as the best evidence of its choice of law provision.

11. Schrank Declaration at ¶ 3(k) - As the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement itself as the best evidence of its pricing and default terms.

12. Schrank Declaration at ¶ 3(l) - As the Supply Agreement has been lodged under seal with the Court, McKesson does not object to the Court relying upon the Supply Agreement itself as the best evidence that the Supply Agreement does not contain an accounting obligation.

13. Schrank Declaration at ¶ 4 – FM Group's objections should be overruled. The Books and Records of FM Group which are referenced by Ms. Schrank are the Supply Agreement and May 30 Statement attached as Exhibits A (later filed in full under seal) and E to McKesson's

Compendium of Exhibits, which was served with the declaration. Ms. Schrank's testimony that FM Group never complained to her that product invoiced has not been delivered is a party admission, not vague or ambiguous, and is based upon her personal knowledge as stated. As McKesson's only obligation was to supply product ordered, those deliveries are evidenced by the May 30 Statement and Ms. Schrank has personal knowledge of that performance based on her personal dealings with FM Group and her review of the May 30 Statement.

14. Schrank Declaration at ¶ 5 - FM Group's objections should be overruled. The Books and Records of FM Group which are referenced by Ms. Schrank are the Supply Agreement and May 30 Statement attached as Exhibits A (later filed in full under seal) and E to McKesson's Compendium of Exhibits, which was served with the declaration. Further, the testimony of Ms. Schrank is based on her personal experience as set forth in the declaration with FM Group, including her personal efforts to collect past due amounts prior to litigation. The May 30 Statement itemizes each invoice past due and shows that the unpaid invoices at issue are dated February 26, 2007, March 1, 2007, and September 2007. As the Supply Agreement was executed in early February 2007, Ms. Schrank's testimony that the defaults began almost immediately accurately summarizes the May 30 Statement regarding unpaid invoices.

15. Schrank Declaration at ¶ 6 – FM Group's objections should be overruled. Ms. Schrank's testimony is fully supported by the late payment terms of the Supply Agreement, Exhibit A to McKesson's compendium, and Exhibit E, the May 30 Statement. In addition, Ms. Shrank has testified in the declaration regarding her personal involvement in the efforts to collect FM Group's delinquent account prior to litigation. The testimony is not vague, ambiguous or conclusory.

16. Schrank Declaration at ¶ 7 – FM Group's objections should be overruled. The May 30 Statement, Exhibit E to the Compendium, shows the "adder" payments testified to by Ms. Schrank, shows that $531,138.64 in March 1, 2007 invoices was not paid when due and remains unpaid, and FM Group does not dispute in response to Undisputed Fact 15 that McKesson has issued invoices in excess of $724,000 which remain unpaid.[1] Given that the May 30 Statement is itself tens of

---

[1] FM Group's dispute with Undisputed Fact 15 goes to whether the invoiced amount is correctly owed – a complaint first raised after litigation to collect the unpaid amount was filed.

3

pages, the Statement is a sufficient summary without resort to the underlying invoices which are all available to FM Group.

17. Schrank Declaration at ¶ 8 – FM Group's objection should be overruled. The testimony is based on Ms. Schrank's personal conversations and correspondence with FM Group and those of McKesson staff directed by Ms. Schrank and is not vague or ambiguous.

18. Schrank Declaration at ¶ 9 - FM Group's objection should be overruled. The testimony is based on Ms. Schrank's personal conversations and correspondence with FM Group and those of McKesson staff directed by Ms. Schrank and is not vague or ambiguous.

19. Schrank Declaration at ¶ 10 - FM Group's objection should be overruled. The testimony is based on Ms. Schrank's personal conversations and correspondence with FM Group and those of McKesson staff directed by Ms. Schrank. The testimony is not inadmissible hearsay as it is not offered for the truth of whether McKesson would or would not stop shipping; it is offered to show notice to FM Group and provide a context for FM Group's pre-litigation lack of complaint regarding the outstanding invoices.

20. Schrank Declaration at ¶ 11 - FM Group's objection should be overruled. The testimony is based on Ms. Schrank's personal conversations and correspondence with FM Group and those of McKesson staff directed by Ms. Schrank. FM Group's silence is an admission against interest which FM Group should not be permitted to now avoid by general assertions of discrepancies without any showing that pricing was in error or product was not shipped. The testimony is not vague and ambiguous.

21. Schrank Declaration at ¶ 12 - FM Group's objection should be overruled. The May 30, 2008 Statement, Exhibit E, supports that no payments have been made by FM Group to McKesson since last Fall as well as the testimony of how the payments and returns were credited to FM Group. The testimony as to what Ms. Schrank said out of court is not for the truth, it is for timing context and notice to FM Group.

22. Schrank Declaration at ¶ 13 - FM Group's objection should be overruled. The May 30 Statement, Exhibit E to the McKesson's Compendium, shows the numbers underlying Ms.

---

The Supply Agreement requires FM Group to pay the amount whether disputed or not. Further, FM Group has not set forth facts to demonstrate that a single charge or credit is incorrect.

4

1  Schrank's testimony. Each invoice is not necessary when a summary business record is available.
2  FM Group has the individual invoices, but has not provided any to show that the May 30 Statement
3  is not accurate.

4      23. Schrank Declaration at ¶ 14 - FM Group's objection should be overruled. The
5  testimony is based on Ms. Schrank's own personal knowledge and experience as an executive of
6  McKesson at the time of the acquisition. Moreover, in response to Undisputed Fact 21, FM Group
7  admits that D&K and McKesson are separate entities.

8      24. Schrank Declaration at ¶ 15 - FM Group's objection should be overruled. However, as
9  FM Group admits in response to Undisputed Facts 19-21 that McKesson is not a signatory to the
10 D&K Contract and that D&K and McKesson are separate corporate entities, the testimony is not
11 necessary to McKesson's motion.

12     25. Schrank Declaration at ¶ 16 - FM Group's objection should be overruled. The
13 testimony is made of Ms. Schrank's personal knowledge as an executive of McKesson.

14     26. Schrank Declaration at ¶ 17 - FM Group's objection should be overruled. The
15 referenced excerpts of the 10Q report are attached as Exhibit D to McKesson's Compendium as
16 required by Rule 56(e).

17     27. Schrank Declaration at ¶ 18 - FM Group's objection should be overruled. The
18 referenced excerpts of the 10Q report are attached as Exhibit D to McKesson's Compendium as
19 required by Rule 56(e).

20     28. Schrank Declaration at ¶ 19 - FM Group's objection should be overruled. The
21 testimony as to what Ms. Schrank said is offered for context and state of mind of FM Group when
22 they did not respond. The testimony is based on Ms. Schrank's personal interactions with FM
23 Group and is not vague or ambiguous.

24     29. Schrank Declaration at ¶ 20 - FM Group's objection should be overruled. The May 30
25 Statement, Exhibit E to the Compendium, are the referenced records as of May 30, 2008.
26 McKesson's electronic data can be viewed or called up for any particular date. In individual
27 invoices behind that Statement have been provided to FM Group during discovery.

28     30. Schrank Declaration at ¶ 21 - FM Group's objection should be overruled. The May 30
Statement, Exhibit E to the Compendium, are the referenced records. In individual invoices behind

1  that Statement have been provided to FM Group during discovery.

2    31. Morgan Declaration at ¶ 9 – FM Group's objection should be overruled. The Supply
3  Agreement is attached as Exhibit A to McKesson's compendium. Ms. Morgan is describing
4  McKesson's billing system and the May 30 Statement, Exhibit E to McKesson's Compendium,
5  from her personal knowledge.

6    32. Morgan Declaration at ¶ 9(a) – FM Group's objection should be overruled. Ms.
7  Morgan is describing McKesson's billing system and the May 30 Statement, Exhibit E to
8  McKesson's Compendium, from her personal knowledge.

9    33. Morgan Declaration at ¶ 9(b) – FM Group's objection should be overruled. Ms. Morgan
10 is describing McKesson's billing system and the May 30 Statement, Exhibit E to McKesson's
11 Compendium, from her personal knowledge.

12   34. Morgan Declaration at ¶ 9(c)[2] – FM Group's objection should be overruled. Ms.
13 Morgan is describing McKesson's billing system and the May 30 Statement, Exhibit E to
14 McKesson's Compendium, from her personal knowledge.

15   35. Morgan Declaration at ¶ 10 – FM Group's objection should be overruled. Ms. Morgan
16 is authenticated the May 30 Statement, Exhibit E to McKesson's Compendium. She has personal
17 knowledge of the Statement, how it is generated, and its accuracy as her job is to audit such
18 statements.

19   36. Morgan Declaration at ¶ 11 – FM Group's objection should be overruled. The point of
20 the testimony is the audit Ms. Morgan performed to test the invoices, not what the invoices reflect
21 which is summarized for all of the outstanding invoices on the May 30 Statement, Exhibit E to
22 McKesson's Compendium.

23   37. Morgan Declaration at ¶ 12 – FM Group's objection should be overruled. The
24 testimony is foundational.

25   38. Morgan Declaration at ¶ 13 – FM Group's objection should be overruled. The
26 testimony is foundational.

27   39. Morgan Declaration at ¶ 14 – FM Group's objection should be overruled. The

---

[2] FM Group's Evidentiary Objections at page 29:6-30:1 contain objections to what is described as Morgan Declaration at ¶ 9(c), but this is a duplicate of ¶ 9(a).

1  testimony is foundational and based on Ms. Morgan's own knowledge of how McKesson
2  calculates pricing for FM Group and other customers.

3  40. Morgan Declaration at ¶ 15 – FM Group's objection should be overruled. The
4  testimony is based on Ms. Morgan's own knowledge of how McKesson calculates pricing for FM
5  Group.

6  41. Morgan Declaration at ¶ 16 – FM Group's objection should be overruled. The
7  testimony is based on Ms. Morgan's own knowledge of how McKesson calculates pricing for FM
8  Group.

9  42. Morgan Declaration at ¶ 17 – FM Group's objection should be overruled. The
10 testimony is based on Ms. Morgan's own knowledge of how McKesson calculates pricing for FM
11 Group.

12 43. Morgan Declaration at ¶ 18 – FM Group's objection should be overruled. The
13 testimony is based on Ms. Morgan's own knowledge of how McKesson calculates pricing for FM
14 Group.

15 44. Morgan Declaration at ¶ 19 – FM Group's objection should be overruled. The
16 testimony is foundational, undisputed and based on Ms. Morgan's own knowledge of FM Group's
17 purchase history. The Mercadante Declaration submitted by FM Group admits that FM Group was invoiced more than $60,000,000 under the Supply Agreement.

18 45. Morgan Declaration at ¶ 20 – FM Group's objection should be overruled. The
19 testimony is based on Ms. Morgan's own knowledge of how McKesson purchase and invoice
20 system operates and does not reference any particular records.

21 46. Morgan Declaration at ¶ 21 – FM Group's objection should be overruled. The
22 testimony is based on Ms. Morgan's own knowledge and is not in this paragraph expert opinion.

23 47. Morgan Declaration at ¶ 22 – FM Group's objection should be overruled. The
24 testimony is based on Ms. Morgan's own knowledge. Ms. Morgan is an expert regarding

25 ///
26 ///
27 ///
28 ///

1  McKesson's invoice system as demonstrated in her declaration. The audited invoices are attached
2  to McKesson's Compendium as Exhibit F consistent with Rule 56(e).

3  DATED: August 6, 2008.                    HENDERSON & CAVERLY LLP

4
5                                             By: _____
6                                                 Maria K. Pum
                                                  Attorneys for MCKESSON CORPORATION,
7                                                 Plaintiff and Counter-defendant