UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| McKesson Corp., a Delaware Corp.,<br><br>    Plaintiff,<br><br>  v.<br><br>Familymeds Group, Inc., f/k/a Drugmax, Inc., a Connecticut corporation,<br><br>    Defendants.<br>_____/<br><br>Familymeds Group, Inc., f/k/a Drugmax, Inc., a Connecticut corporation,<br><br>    Counterclaimant<br>  v.<br><br>McKesson Corp., a Delaware corporation,<br><br>    Counterdefendant.<br>_____/ | No. C-07-5715 WDB<br><br>**ORDER AND MEMORANDUM OPINION RE MCKESSON'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION AND STATEMENT OF FACTS

Pursuant to contract, executed on February 2, 2007, McKesson Corporation was to supply prescription drugs and other health and beauty care products to pharmacies owned and operated by Familymeds Group, Inc., ("FMG"). We refer to this contract as the "Supply Agreement."

1

FMG pharmacies ordered products using McKesson's Supply Management Online computer system ("SMO"). Declaration of Leslie Morgan in Support of Motion for Summary Judgment, filed June 4, 2008, ("Morgan Decl."), at ¶¶4-6. McKesson immediately generated an invoice for each order placed and posted that invoice on the SMO system the following day. *Id*. FMG was able to access and pay its invoices online. *Id*.

The Supply Agreement obligates FMG to pay each invoice within seven days of the invoice date. Contracts Filed Under Seal, filed July 22, 2008, Ex. A ("Supply Agreement") at §4A. Moreover, the Supply Agreement requires FMG to pay the amount stated as due on each invoice in full within those seven days even if FMG disputes the amount owing. FMG may pay less than the invoiced amount only if it has secured written authorization from McKesson to do so. The Supply Agreement provides,

> Customer [FMG] agrees to render payment in full to McKesson on the applicable due date as specified in this Agreement without (i) making any deductions, short payments, or other accounts payable adjustments to such payment obligation; or (ii) seeking to condition such remittance on any demand for or receipt of proofs of delivery. Any accounts payable adjustments claimed by Customer shall require prior written authorization of McKesson and must be supported by accompanying detail documenting the basis for any such requested adjustments.

Supply Agreement at §4F.

On November 9, 2007, McKesson filed its Complaint for Breach of Contract alleging that FMG has failed to pay for merchandise sold and delivered under the Supply Agreement. According to McKesson, FMG owes McKesson $814,419.44 for unpaid invoices as well as for late fees and service charges assessed pursuant to the Supply Agreement. Supplemental Declaration of Leslie Morgan, filed August 7, 2008, ("Supp. Morgan Decl."), at ¶4.

On December 17, 2007, FMG filed counterclaims alleging (1) that the Supply Agreement encompasses an implied obligation for McKesson to provide

2

FMG with documentation sufficient to audit the invoices and (2) that, as a matter of equity, FMG is entitled to an accounting. FMG asserts that McKesson has charged FMG prices that exceed those contemplated by the Supply Agreement and/or that accounting methods used by McKesson have resulted in the erroneous assessment of late fees and service charges. Declaration of Edgardo Mercadante in Opposition to Motion for Summary Judgment, filed August 4, 2008, ("Mercadante Decl."); Declaration of Christian Tregillis in Opposition to Motion for Summary Judgment, filed August 4, 2008, ("Tregillis Decl.").[1]

On June 4, 2008, plaintiff filed its Motion for Summary Judgment. Plaintiff asks the Court to enter judgment in McKesson's favor and against FMG on McKesson's claim that FMG breached the Supply Agreement by failing to pay invoices within seven days and to find that FMG's breach has damaged McKesson in the amount $814,419.44. McKesson also asks the Court to adjudicate in McKesson's favor FMG's counterclaims for specific performance of an implied obligation to provide an accounting and for an accounting in equity. Motion at 16-21.

FMG opposes plaintiff's Motion and asks the Court to enter judgment in FMG's favor with respect to its counterclaims.

On August 20, 2008, the Court conducted a hearing in connection with plaintiff's Motion. At the hearing, the Court announced its tentative ruling and provided the parties with two weeks in which to discuss settlement. Having received no notification from the parties that the case has settled, the Court RULES as follows.

//
//

---

[1] Messrs. Mercadante's and Tregillis' declarations have been filed under seal. Defendant e-filed redacted versions of these declarations on July 30, 2008.

# STANDARD ON SUMMARY JUDGMENT

To succeed on a motion for summary judgment, the moving party must establish that, under facts that are not subject to genuine dispute, that party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In reviewing a motion for summary judgment, the Court considers the evidence in the light most favorable to the party against whom the judgment is sought.

# DISCUSSION

## I. Plaintiff's Claim for Breach of Contract

McKesson must demonstrate that there are no material disputes with respect to each of the elements of its breach of contract claim. To establish a claim for breach of contract McKesson must prove that the parties have an enforceable contract, that McKesson performed its obligations thereunder, that FMG breached the contract, and that FMG's breach caused McKesson damages.

### A. Elements of Breach of Contract

FMG does not dispute that the Supply Agreement is an enforceable contract or that McKesson performed its obligation to deliver products ordered by FMG pharmacies.[2]

FMG concedes that sections 4A and 4F of the Supply Agreement provide that FMG was to pay each invoice in full within seven days of the invoice date unless FMG obtained written authorization from McKesson to adjust the amount

---

[2] FMG appears to allege that McKesson did not perform its obligation under the Supply Agreement to charge accurate prices. However, as explained *infra*, even if true, pursuant to the terms of the Supply Agreement a failure to perform the obligation to charge accurate prices would not excuse FMG's obligation to pay the invoices by the due date.

paid.³ See FMG's Separate Statement of Disputed, Undisputed and Additional Facts, filed August 4, 2008, at No. 5 and 8.  Furthermore, FMG does not dispute that, to this day, it has not paid in full at least some of the invoices or obtained written authorization from McKesson to avoid payment on those invoices. Accordingly, it is undisputed that FMG has breached the terms of sections 4A and 4F of the Supply Agreement.

FMG asks the Court to deny McKesson's motion for summary judgment on the ground that there is a genuine dispute of material fact with respect to damages. Opposition at 8.  However, FMG does not appear to contend that it owes McKesson no money.  FMG's position is that there is a material dispute about the amount of McKesson's damages.  Opposition at 8:25-27.  There is, therefore, no dispute that McKesson has demonstrated that it has been damaged by FMG's breach.

Accordingly, McKesson has established all four elements of its claim for breach of contract.  The Court GRANTS plaintiff's motion for summary adjudication of its claim that FMG breached the Supply Agreement.  The Court will enter judgment in McKesson's favor and against FMG for that amount of damages as to which there is no genuine dispute of material fact.  Additionally, as explained on the record, at this juncture, entry of judgment is WITHOUT PREJUDICE.  McKesson may attempt to prove that FMG owes more than the amount of the incident judgment.  Similarly, defendant may attempt to prove that McKesson overcharged FMG during the course of performance and that FMG is, therefore, entitled to a judgment in its favor for established overcharges.

//

---

³Mr. Mercadante testifies that the seven day due date applied to less than half of the pharmacies subject to the Supply Agreement. Mercadante Decl., at ¶¶17-19. However, as noted *infra*, at the August 20, 2008, hearing counsel for FMG indicated that FMG concedes that this provision applied to all invoices regardless of the "type" of pharmacy invoiced.

### B. Amount of Damages Not Subject to Genuine Dispute

McKesson asserts that FMG currently owes $814,419.44.[4]  Supp. Morgan Decl., at ¶4.  This amount includes (1) the "gross payments" due from the unpaid invoices,[5] (2) service charges that are applied to late and unpaid payments at the rate of 1% every 15 days, (3) additional amounts due such as "add-bill" items, and (4) other price adjustments such as credits for products returned by FMG pharmacies.  *Id.*; Morgan Decl., at ¶9.

FMG contends that it has identified "significant accounting discrepancies, overcharges, and inconsistencies" that call into question the amount allegedly owed by FMG.  Opposition at 1.  In an effort to demonstrate that a genuine dispute of material fact exists with respect to the amount of McKesson's damages, FMG submitted the declarations of Edgardo Mercadante and Christian Tregillis.

Mr. Mercadante is the President, Chief Executive Officer, and Chairman of the Board of FMG.  In his declaration he describes various allegedly questionable pricing and/or accounting practices by McKesson that he states he has identified from information provided by McKesson.  In Mr. Mercadante's view, the issues he describes call into question the accuracy of McKesson's alleged damages.  The Court finds that Mr. Mercadante's declaration is not sufficient, as a matter of law, to establish a genuine issue of material fact as to the amount of damages owed McKesson.

Mr. Mercadante is not qualified to testify on matters of accounting, finance or statistics.  Mr. Mercadante functions as a custodian of records for FMG and has substantial experience "in the prescription health care, chain pharmacy and retail nutrition industries."  Mercadante Decl., at ¶3 and Ex. 1.  Absent from his

---

[4] FMG's debt continues to accrue service charges of 1% every 15 days.  Supply Agreement at ¶4E.

[5] Pursuant to the Supply Agreement, FMG received a 2% discount from product prices, as reflected by the "net payment" amount, when it paid an invoice by the due date.  If FMG failed to pay an invoice within seven days it would lose this discount and become obligated to pay the undiscounted cost -- the "gross payment" amount.  Supply Agreement at ¶4E.

declaration are any representations that he has any accounting, statistical, or other financial background.

Additionally, even if Mr. Mercadante had the requisite experience, he has not provided the Court with a description of his methodology sufficient to support an inference that his assertions are valid. Mr. Mercadante uses unspecified "market" statistics from what appears to be a trade organization. He also makes the conclusory pronouncement that he tested a "statistically significant" number of McKesson's invoices without describing how many invoices he tested.

It follows that Mr. Mercadante has not proffered competent evidence from which a rational trier of fact could find that there is a genuine dispute regarding the amount FMG owes.

We also feel constrained to comment on Mr. Mercadante's assertion that when the parties entered the Supply Agreement they intended to distinguish between FMG's "retail" and "non-retail" pharmacies and that the parties did not intend to subject FMG's fifty "non-retail" pharmacies to the seven day payment requirement. Mercadante Decl., at ¶¶17-19. According to Mr. Mercadante, there is a genuine dispute about the amount of damages owed McKesson because FMG should not have incurred service charges "for [FMG's] alleged failure to pay within seven (7) days for goods delivered to [FMG's] non-retail pharmacies." Mercadante Decl., at ¶19. This assertion (apparently made here for the first time since the inception of the Supply Agreement) is transparently implausible in light of the clear language of the contract and the parties' course of performance.[6] The Court finds that no rational trier of fact could credit this testimony. Moreover, the substantial implausibility of this testimony calls into serious question Mr. Mercadante's credibility and ethics, and this alone serves as a predicate for deeming the entire declaration incompetent.

---

[6] We note that counsel for FMG asserted at the August 20th hearing that FMG now acknowledges that all invoices were to be paid within seven days. Transcript of August 20, 2008, hearing.

1   The other evidentiary basis for challenging the amount of damages claimed
2   by McKesson is the declaration of Mr. Tregillis. Mr. Tregillis is a Certified Public
3   Accountant with significant experience in forensic accounting and data analysis.
4   Tregillis Decl., at ¶2 and Ex. 1. Having reviewed the unpaid invoices and
5   McKesson's monthly "statement" dated May 30, 2008, Mr. Tregillis testifies that
6   he has identified multiple errors and inconsistencies in the documents used by
7   McKesson to support its damages claim. Tregillis Decl., at ¶¶6-24.

8   McKesson has responded to each asserted error and discrepancy identified
9   by Mr. Tregillis. Supp. Morgan Decl., at ¶¶4-25. At this juncture, the Court will
10  not rule with respect to each asserted error. We note, however, that all but one of
11  McKesson's responses to the categories of charges questioned by Mr. Tregillis
12  appear to explain adequately the documentation supporting McKesson's claim for
13  damages. It is possible that while the documentation indicates that certain products
14  were designated as having been billed under the "Cost Plus" (or "Cost of Goods")
15  pricing method, those items actually were priced as "specially priced
16  merchandise." Tregillis Decl., at ¶9 and Ex. 2; Supp. Morgan Decl., at ¶14;
17  Transcript of August 20, 2008, hearing. Because, on the current record, we cannot
18  find with the requisite certainty that there is no genuine dispute with respect to this
19  category of charges, it is inappropriate to enter judgment with respect to the entire
20  amount of damages sought by McKesson.

21  Nonetheless, as explained at the August 20th hearing, the record supports
22  entry of judgment in favor of McKesson and against FMG in the amount
23  $747,474.09. The express terms of the contract require FMG to pay the invoiced
24  amounts in full <u>without deductions or adjustments</u>. Supply Agreement at 4F.
25  Moreover, the contract provided a procedure by which FMG could seek to protect
26  itself from pricing or other accounting errors. FMG agreed that any adjustments to
27  the amount it owed McKesson would be made only with prior written authorization
28  from McKesson. *Id*. Therefore, under the express terms of the contract, if FMG

8

did not pay an invoice within seven days and prior to the expiration of the seven days it had not sought and received written authorization from McKesson not to pay, then FMG breached the Supply Agreement and acquired a duty to pay the invoiced amount.

The evidence supports a finding that the amount invoiced and, therefore, the amount that, absent prior written authorization from McKesson, FMG had a duty to pay within seven days regardless of any possible errors, is $747,474.09.[7]  Supp. Morgan Decl., at ¶5; Supp. Schrank Decl., at ¶15.  This amount represents the "net price" due and payable within seven days from the unpaid invoices as opposed to the 2% larger "gross price" payable when payment is not made by the due date. FMG has not demonstrated any factual basis for disputing that this amount was invoiced and was due and payable on the relevant due dates by virtue of the fact that FMG did not obtain prior written authorization to withhold payment.  There has been no proffer that FMG ever sought permission to withhold payment under section 4F or otherwise complained about the billed amounts until September 2007, after McKesson ceased shipping products to FMG.[8]  Accordingly, unless and until FMG proves that there are actual errors in McKesson's unpaid invoices FMG is obligated to remit, at a minimum, $747,474.09.

---

[7] Although the current record might support an inference that McKesson mislabeled the pricing method used with respect to some forty eight items identified by Mr. Tregillis, it currently does not support an inference that McKesson overcharged for the items. Stated another way, a rational trier of fact could find that McKesson's documentation listed the wrong pricing method, but, on this record, could not find that the actual price charged was the wrong price.

[8] Mr. Mercadante testifies that "during the course of the First Amendment and Supply Agreement, Familymeds made repeated inquiries to McKesson about pricing discrepancies, at multiple levels, as part of its regular and ordinary business routine, practice, habit, process and procedure." Mercadante Decl., at ¶24.  Mr. Mercadante's testimony fails to create a genuine dispute of material fact.  He does not identify any specific instance in which FMG made such an inquiry.  Similarly, he does not attach any correspondence evidencing these alleged inquiries and does not identify the person who made the inquiry, the subject matter of the inquiry, or the date on which it was made.  Furthermore, as explained supra, the Court has significant doubts about Mr. Mercadante's credibility.

9

Mr. Mercadante represents himself to be a sophisticated businessman in this arena. He was responsible for negotiating the Supply Agreement, and these are the terms to which he agreed.

The Court enters judgment in favor of McKesson and against FMG in the amount $747,474.09 <u>without prejudice</u> to either party's ability to prove that a subsequent judgment is warranted in that party's favor.

## II.   **Defendant's Counterclaims**

The Court DENIES without prejudice each party's request to enter judgment in its favor with respect to FMG's counterclaims.

As indicated on the record, the Court will permit FMG to amend its counter complaint to assert a claim for breach of contract alleging McKesson failed to charge accurate prices if FMG can do so consistent with Federal Rule of Civil Procedure 11. At least some of the information defendant seeks might be obtained through appropriate discovery in the event FMG amends its counter-complaint to assert such a claim. Accordingly, it is premature to rule with respect to the viability of FMG's specific performance and accounting claims.

Additionally, even if either of FMG's current counterclaims is viable as a matter of legal theory, FMG has failed to proffer evidence of potential pricing or accounting errors of sufficient scale to justify an accounting of the magnitude FMG seeks.

Therefore, neither party is entitled to summary judgment or equitable relief on these claims at this juncture.

## **CONCLUSION**

For the reasons stated above and on the record at the hearing on August 20, 2008, the Court GRANTS in part and DENIES in part McKesson's Motion for Summary Judgment.

The Court GRANTS McKesson's motion for summary adjudication of its claim for breach of contract and will enter judgment in the amount $747,474.09 in favor of plaintiff and against defendant.

The Court enters judgment WITHOUT PREJUDICE to either party's ability to seek a subsequent judgment in its favor.

The Court DENIES both parties' requests to rule with respect to FMG's counterclaims for specific performance and for an accounting.

**On September 17, 2008, at 3:00 p.m.**, the Court will conduct a case management conference in order to determine how to proceed with the parties' remaining allegations.

IT IS SO ORDERED AND ADJUDGED.

Dated: September 9, 2008

WAYNE D. BRAZIL
United States Magistrate Judge

Copies to: parties, wdb, stats

11